**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                            ) | Criminal No. 19-CR-369 (APM) |
| ) | |
| ) | |
| TERRELL ARMSTEAD,             ) | |
| ) | |
| ) | Judge Amit P. Mehta |
| Defendant.         ) | |
| ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO MODIFY PROTECTIVE ORDERS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this opposition to the Defendant's motion to modify the protective orders governing the discovery materials involved in the above-captioned matter (the "Motion"). *See* ECF No. 124. For reasons stated below, the government submits that the Motion should be denied. In support, the government relies on the following factual and legal authority, as well as any that may be offered at a hearing on this motion.

**PROCEDURAL HISTORY**

The Defendant, Terrell Armstead (aka "Rell" or "Supreme 16"), was charged by Criminal Complaint in the District of Columbia with two counts of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591; one count of sex trafficking a minor in violation of 18 U.S.C. § 1591(a)(1), (2), and (b)(2); one count of conspiracy to sex traffic minors in violation of 18 U.S.C. § 1594(c); one count of coercion and enticement in violation of 18 U.S.C. § 2422; one count of transportation with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a); one count of interstate travel/instrumentality in aid of racketeering – sex

trafficking enterprise in violation of 18 U.S.C. § 1952; and one count of obstruction of justice in violation of 18 U.S.C. § 1591(d).  *See* ECF No. 1.  He was arrested and made his initial appearance on May 2, 2019, at which point the Court granted the government's motion requesting that the Defendant be detained pending trial.

On July 30, 2019, the Government filed an Unopposed Motion for Protective Order. *See* ECF No. 14.  The Court granted this Motion on August 1, 2019. Paragraph 8 of this Protective Order provides:

> If the defendant is incarcerated by the District of Columbia Department of Corrections (hereinafter "DCDOC"), defense counsel is authorized to provide a copy of the materials to the DCDOC Office of General Counsel so that the defendant can view the materials pursuant to DCDOC's alternative viewing procedure. Nothing in this Order relieves the defendant or the legal defense team of its obligation to execute a waiver, or to comply with any other requirements established by the DCDOC's Procedures for Attorney Visitation and Discovery/Surveillance Review policy.

*See* ECF No. 14 Ex. 1 ¶ 8.

On November 1, 2019, the Grand Jury returned an Indictment charging the Defendant with two counts of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591; one count of sex trafficking a minor in violation of 18 U.S.C. § 1591(a)(1), (2), and (b)(2); one count of conspiracy to sex traffic minors in violation of 18 U.S.C. § 1594(c); one count of coercion and enticement in violation of 18 U.S.C. § 2422; one count of transportation with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a); one count of interstate travel/instrumentality in aid of racketeering – sex trafficking enterprise in violation of 18 U.S.C. § 1952; and one count of obstruction of justice in violation of 18 U.S.C. § 1591(d).  *See* ECF No. 23. On November 8, 2019, the Defendant was arraigned and entered a plea of not guilty on Counts One through Eight.

On January 6, 2020, the Government filed another Unopposed Motion for Protective Order regarding discovery of PPMS/CADRPTS materials. *See* ECF No. 46. The Court granted this order on January 6, 2020. *See* ECF No. 47.

On February 25, 2020, the Government filed a Motion *In Limine* to preclude the use of victim's last names during the course of trial. *See* ECF No. 76. Specifically, the Government requested that the victims and witnesses previously identified as S.J., M.C., J.J., E.G., O.S., and S.B. be allowed to testify using only their first names, and that counsel for the Defendant refrain from using their last names during cross-examination and argument. *See* ECF No. 76. The Court granted this motion *in limine* on February 26, 2020.

The Defendant remained in custody prior to and during trial, which began on February 26, 2020. The trial concluded on March 6, 2020. The jury began deliberating on March 9, 2020 and returned a verdict on March 16, 2020. The jury found the Defendant guilty on Count 2, but did not reach a verdict on the remaining counts. The Court declared a mistrial on Counts 1 and 3-8. The Defendant remains in custody following his conviction, and is awaiting sentencing on Count 2 of the Indictment, and on a separate case in which he pled guilty to conspiring to defraud the United States and to possessing a firearm as a prohibited person. *See* ECF No. 121 at p. 1 ("Defendant Terrell Armstead is before the court in two cases. In 18-cr-357, he pled guilty to one count of conspiracy to commit an offense against the United states, 18 U.S.C. § 371, and one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1); he is awaiting sentencing in that matter. In 19-cr-369, a jury found Defendant guilty of one count of sex trafficking by force, fraud, and coercion, 18 U.S.C. § 1591, but was unable to reach a verdict on the remaining seven counts.").

On April 3, 2020, the Defendant filed a Motion for Bond Review, seeking release in both cases, citing the COVID-19 pandemic and its spread within the D.C. Department of Corrections facilities. *See* ECF No. 119. The Government filed its Opposition on April 6, 2020. *See* ECF No. 120. The Court denied the Defendant's Motion on April 10, 2020. *See* ECF No. 121.

On May 4, 2020, the Court set a Status Conference or June 3, 2020. A jury trial has been set for October 14, 2020. The parties are still attempting to negotiate a resolution to avoid a retrial. *See* ECF No. 118.

The Defendant filed this Motion on May 13, 2020, asking the Court modify the protective orders governing the discovery materials involved in this case and permit certain materials to be provided to the Defendant. *See* ECF No. 124. For the reasons outlined below, the Court should deny the Motion.

## **RELEVANT FACTUAL BACKGROUND**

In May of 2018, the Defendant's Instagram account, in which he bragged and boasted about the "lifestyle" he enjoyed by sexually abusing and exploiting women, caught the attention of the joint Metropolitan Police Department and Federal Bureau of Investigation's Child Exploitation and Human Trafficking Task Force. Not only did the Defendant use his Instagram account to brag about his illegal "business" that made money off of the sexual exploitation of women, but he also used the direct messaging feature as a tool to recruit vulnerable, young women, including the victim this Court now knows as Olga. Through a series of messages, the Defendant repeatedly attempted to induce, entice and persuade Olga to travel from Ohio to the District of Columbia in order to get her to engage in prostitution for his financial benefit. The Defendant promised Olga that he knew "all the upscale sites" and that she could earn more money from wealthier clients.

After repeatedly encouraging her to pack her belongings and leave Ohio, on June 19, 2018, Olga agreed to travel from Cleveland, Ohio to meet and work for the Defendant in the commercial sex trade. On June 23, 2018, Olga left Cleveland, Ohio and drove to the Defendant's home in Baltimore, Maryland.

A mere four days later, on June 27, 2018, the Defendant posted a picture on his Instagram account of himself, Olga, and another woman, who the Court now knows as Sadie. In this post, the Defendant bragged, "I put pressure on my bitches .. if they don't fold .. they turn into diamonds." As the months went by, the Defendant posted several other pictures and videos of Sadie and Olga, wearing provocative clothing and in various stages of undress. The Defendant also enjoyed posting pictures of himself surrounded by firearms. For example, on July 23, 2018, the Defendant posted a picture of himself holding a semi-automatic firearm while he was in Southeast D.C. There were several other pictures posted by the Defendant in which he, other males, Olga and Sadie are holding firearms – despite the fact that, as a convicted felon, the Defendant is prohibited from possessing a firearm.

As the government proved during trial, the Defendant used a variety of methods to exert control over Olga. He pointed guns at her, and held a gun to her head. In fact, at trial, the government introduced an extremely disturbing photograph that the Defendant took in which he is pointing a gun at Sadie while she is sitting up in bed. The Defendant edited this picture and added the following text: "What do you mean slow night?" While defense counsel tried to portray the Defendant's actions as a joke, the Court heard testimony from law enforcement that, in the District of Columbia, pointing a gun at someone is a felony. Additionally, at trial, the jury heard testimony from both Sadie and Olga that the Defendant sexually assaulted Sadie. On one

occasion, while the Defendant was having sex with Sadie, he pointed a gun at her face. The Defendant instructed Sadie to open her mouth. Even after Sadie shook her head no, and said no, the Defendant continued to demand that Sadie open her mouth while pointing a gun at her face. When Sadie opened her mouth, the Defendant put the gun in Sadie's mouth and called her a "good little bitch."

In addition to acts of physical violence, the Defendant exerted control over Olga by taking her social security card, identification card, and her car keys. He also prohibited her from going anywhere alone. The Defendant's aggressive, assaultive and controlling behavior caused Olga to live in fear that she would be physically harmed if she did not make her daily quota, or if she tried to leave the Defendant. It took Olga months to figure out an exit plan in order to leave the Defendant. She made that decision to leave in September of 2018. Olga was not permitted to take any of the money she earned, nor any of the clothing that the Defendant purchased for her using the money that Olga and Sadie made through commercial sex. While she packed her bags to leave, the Defendant paced around the house holding a loaded, semi-automatic weapon. He continued to look out the windows, fearful that he was finally going to be arrested for his ongoing assaultive, exploitative, criminal conduct. Olga was able to leave the Defendant's home. Shortly thereafter, the Defendant began serving a six month sentence for his Human Trafficking conviction in Montgomery County.

Despite the fact that the Defendant pled guilty in the Montgomery County case, and admitted to repeatedly transporting Sadie and another woman, identified in these proceedings at Erica, to multiple hotels in Maryland for the purposes of prostitution, the Defendant blamed the victims for the fact that he was held accountable for his crimes. In recorded jail calls, the

Defendant can be heard telling Sadie that if she had "just kept her mouth shut" or "told them what I told you to" he would have never had to go to jail in the first place. While the Defendant was in jail, he called Sadie repeatedly – often several times a day. He did so knowing that Sadie was on probation, and that a condition of her probation was that she not have any contact with the Defendant. The Defendant didn't care about that. As the Court is now well-aware, the Defendant was fixated on controlling Sadie and attempting to ensure that he would not be held accountable for his crimes. For example, when the Defendant learned that Sadie had been subpoenaed to appear before the grand jury, the Defendant instructed her on what to tell prosecutors, and how she should testify. During a call on March 24, 2019, Sadie informed the Defendant that she was meeting with the prosecutor the following day. The Defendant instructed Sadie, "Let them people know that I am not with no prostitution. I never took nobody nowhere for no prostitution or nothing like that. That I'm just your boyfriend." The Defendant's efforts succeeded, at first. On March 25, 2019, Sadie came to the United States Attorney's Office and falsely claimed that while the Defendant drove her from Maryland to locations in D.C., he did not know that she was going to engage in prostitution. As a result, Sadie was arrested and charged with Conspiracy to Commit Sex Trafficking and Attempting to Obstruct, Interfere and Prevent the Enforcement of the Sex Trafficking by Force, Fraud and Coercion Statute.

The Court now knows that, even after Sadie was arrested, and in the months leading up to his trial, the Defendant refused to stop contacting Sadie. Despite it being a clear violation of jail rules, the Defendant and his mother organized daily calls with Sadie, so that the Defendant could continue to maintain control over her, and attempt to persuade her either not to testify or to perjure herself for his benefit. As this Court is aware, the Government filed a Motion for an Order of

Protection for Sadie, in an effort to stop this ongoing conduct. When Sadie and the Defendant's phone privileges were restricted by the jail, he began sending her messages using the jail's commissary kiosk. These messages turned threatening and, in the weeks leading up to trial, the Defendant sent Sadie a message which read, "Stop fucking playing with me."

This Court is also aware that this Defendant used his transportation to and from Court, and his contact with other inmates, in an effort to get information about Sadie's whereabouts and whether or not she was willing to testify against him. Even during trial, and despite the fact that the Government ensured that there was a separation order in place to prevent the Defendant from having any contact with Sadie, the Defendant was yelling out to Sadie from the holding cell, mere moments before she was going to testify as a witness before the Court. Even in the presence of U.S. Marshalls, the Defendant continued his brazen, shameless, efforts to intimidate the vulnerable victims in this case. He has demonstrated that – to this day- he is a danger to the victims and witnesses who may be called again to testify against him in the retrial of the remaining counts.

## ARGUMENT

### I. Legal Standard

Courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1); *see also United States v. Flynn*, 411 F. Supp. 3d 15, 29 (D.D.C. 2019); *United States v. Libby*, 429 F. Supp. 2d 18, 21 (D.D.C.), *opinion amended on reconsideration,* 429 F. Supp. 2d 46 (D.D.C. 2006). "The protective order and its management by the district court reflect an appropriate balancing of interests in the relevant case-specific context." *United States v. Celis*, 608 F.3d 818, 831 (D.C. Cir. 2010). "[D]isclosures the government would be required to make under Rule 16 . . . turn[ ] on a balancing of interests." *United States v. Williams*

*Cos.*, 562 F.3d 387, 395 (D.C. Cir. 2009). The government need not "demonstrate to the court in the first instance on a document-by-document basis that each item [subject to a protective order] should be protected[;]" however, it must make a "threshold showing of good cause" to restrict the defense's access to discovery. *United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 74–75 (D.D.C. 2019) (internal citations and quotations omitted).

"The burden of showing 'good cause' is on the party seeking the order, and 'among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.' " *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citations and alterations omitted). Good cause for a protective order "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (internal quotation marks omitted); *see also United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013). If the government makes this showing, "the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Jimmy Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018); *see also United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast").

## II. There is No Good Cause To Modify The Protective Orders

Citing no legal authority within the two-page Motion, other than citing Fed. R. Crim. P. 16, the Defendant asserts that the existing protective orders should be modified to allow the Defendant to receive physical copies of discovery materials and trial exhibits at the D.C. Jail because the COVID-19 pandemic has made it "unsafe and unrealistic" for defense counsel to visit

the D.C. Jail to review documents with the Defendant. *See generally* Motion. While the Government acknowledges that there is currently a public health crisis, the existence of a novel virus does not alter the analysis under Rule 16 and other relevant authority regarding whether the Court should modify the protective orders governing discovery materials in this case. The Court should deny the Motion.

The Defendant places great emphasis on the limitations on his ability to communicate with counsel. Though limited, communication with counsel is still available. Furthermore, at the present time it is unclear whether or not there was be a retrial in this matter, as the parties have been attempting to reach a resolution in this matter. Furthermore, trial is not scheduled to begin until October 14, 2020, and the expectation remains that prior to that date, restrictions on in person communication will have eased. *See* ECF No. 118. Presently, Defendant has not shown that contact visits are necessary for, or that other limits are impeding, preparation of his defense at this time. *See United States v. Chandler*, 316 Fed. App'x 676, 677 (9th. Cir. 2009) (affirming denial of continuance of trial because "extensive face-to-face contact between [defendant] and defense counsel was not necessary to prepare for trial and counsel could have consulted with [defendant] by other means, including by telephone"). The D.C. Jail allows for telephone calls, and the Defendant is able to speak with attorneys, defense investigators, and any experts. There is no indication that the D.C. Jail would restrict such access in reaction to COVID-19, or that if there were some limits, these limits would be anything but temporary.[1] Indeed, all criminal defendants

---

[1] As detailed in the Government's Opposition to the Defendant's Motion for Bond Review, *see* ECF No. 120, the United States Attorney's Office has been in consultation with the D.C. Department of Corrections (DOC) to obtain relevant information as to its handling of the public health crisis. The office continues to get daily updates about what DOC has done and continues to do to ensure the safety of its incarcerated population. *See* ECF No. 120.

in custody face some limitations on their meetings with counsel, if only because business and visiting hours are not unlimited.

The Defendant claims that there is "minimal risk associated with allowing defendant to retain these materials for review." *See* Mot. at p. 2. Nothing could be further from the truth. The Defendant's ongoing behavior in the months leading up to the trial, and his brazen and shameless behavior during trial, illustrate the fact that there remains a serious danger and risks inherent in the Defendant's request to modify the protective orders to allow him to retain copies of discovery, including trial exhibits, at the D.C. Jail. The trial exhibits, for example, contain highly sensitive information about these victims. For example, Government's Exhibit 1 is Sadie's birth certificate. The advertisements posted on Backpage.com also constitute a large number of exhibits. These advertisements show the victims and witnesses in this case in various states of undress, and posed provocatively, including photographs of Sadie when she was a minor. Providing copies of these to an incarcerated individual, like the Defendant, to have unfettered access to inside a correctional facility violates the victim's rights to dignity and privacy under the Crime Victims' Rights Act. *See* Title 18 U.S.C. §§3509 and 3771(a)(1) and (a)(8). Similar photos are found in the Defendant's Instagram and Facebook accounts, which were also admitted as evidence during the trial. Other documents admitted as evidence at trial contain the victims and witnesses first and last names and other identifying information, which similarly should not be circulated around the DC jail.

This Defendant has demonstrated time and time again that he is willing to use any tool at his disposal in an effort to control, threaten, and intimidate Sadie. There can be no doubt that he will use unfettered access to the discovery materials and trial exhibits for this same purpose. For

these reasons, there is no good cause to modify the current protective orders governing discovery in this case, and the Defendant should not be permitted to review and retain discovery materials outside of the bounds of the current protective orders.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the Defendant's Motion.

Respectfully submitted,

TIMOTHY SHEA
UNITED STATES ATTORNEY

 /s/ Amy E. Larson
Amy E. Larson, N.Y. Bar Number 4108221
Kenya K. Davis, D.C. Bar Number 502305
Elizabeth A. Hutson, D.C. Bar No. 1024845
Assistant United States Attorneys
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7863
Email: Kenya.Davis@usdoj.gov
Amy.Larson2@usdoj.gov
Elizabeth.Hutson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the GOVERNMENT'S OPPOSITION was duly served upon the Defendant by electronic means via the Court's ECF system.

This 18th day of May, 2020.

    /s/ Amy E. Larson
Amy E. Larson, N.Y. Bar Number 4108221
Kenya K. Davis, D.C. Bar Number 502305
Elizabeth A. Hutson, D.C. Bar No. 1024845
Assistant United States Attorneys
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7863
Email: Kenya.Davis@usdoj.gov
Amy.Larson2@usdoj.gov
Elizabeth.Hutson@usdoj.gov