UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.

TERRELL ARMSTEAD

          Defendant

Crim. No. 18 CR OO357-01 (APM)
          19 CR OO369-01(APM)

Sentencing July 15, 2022
Judge Amit P. Mehta

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant is before the court for sentencing in two cases that have been joined for sentencing. For ease of reference, they will be referred to as the Firearms Case and the Prostitution case.  Defendant pleaded guilty in the firearms case and went to trial in the prostitution case.   The prostitution case consisted of nine counts. After a relatively lengthy trial lasting over 2 weeks[1] and a week-long deliberation the defendant was convicted of one count, but the jury was not able to reach a unanimous verdict on the other 8 counts. Mistrial was declared on those 8 counts.  The prosecution has elected to proceed to sentencing without retrying the 8 counts on which the jury did not reach verdict.

---

[1] The defense notes that during trial undersigned counsel had prepaid travel plans with family which required that the case be submitted to the jury by a certain date. The court and opposing counsel graciously agreed to longer trial days in order to accommodate those plans.  Undersigned counsel remains appreciative of that accommodation.

As part of the disposition agreement in the firearms case the prosecution agreed that whatever sentence is imposed in the firearms case may be served concurrently with whatever sentence is imposed in the prostitution case. Defendant has little quarrel with what sentence is imposed in the firearms case. Defendant requests that the court honor the agreement reached in the firearms case and impose both sentences concurrently. Defendant requests that the court grant a variance from the recommended guideline sentence in the Prostitution case. Sentencing guidelines are "advisory." The Court has great discretion to fashion a sentence that balances all factors applicable in 18 USC Sec. 3553 (a). The defense suggests that imposition of the applicable mandatory minimum sentence of 15 years concurrent is sufficient and appropriate in this case.

## THE FIREARM CASE

There is little dispute in the firearms case. Although this case was charged and defendant pleaded guilty to conspiracy, it is clear his role was essentially only a purchaser. Co-conspirators traveled out of state using a straw purchaser to "lawfully" purchase guns that were transferred illegally to purchasers in the District of Columbia and elsewhere. Defendant coordinated with charged co-conspirators to obtain 2 firearms for his use. He was not involved in any of the additional transactions that coconspirators conducted.

2

As noted in the PSR, the defense questions the applicability of two of the enhancement the PSR writer applied. (PSR pg. 44, 45) The enhancement for "obliterated serial number" was applied. It was established defendant played no role in obliterating the serial number nor had he made any request that it be obliterated. Rather a co-conspirator decided to obliterate the serial number without any input or knowledge of defendant. Similarly, an enhancement was applied because the firearms had "high capacity magazines." The magazines are apparently standard issue for these .22 caliber firearms. Defendant never requested high-capacity magazines nor is there any indication he was aware that the firearms were equipped with high-capacity magazines when agreeing to purchase the firearms.

## THE PROSTITUTION CASE

As noted, the defendant was charged in a nine count indictment with numerous charges involving allegations of his involvement in sex trafficking, including charges alleging his sex trafficking a minor, conspiracy, interstate transport, obstruction, etc. ( PSR ¶ 16) After more than a week of deliberation the jury convicted on one count and deadlocked on all others. Mistrial was entered for all other counts. It should be noted this occurred on March 16, 2020, the date on which much of the country, including many courts, were shutting down because of the Covid pandemic. It is difficult to assess what role if any the imminent "shut

down" and fear of the pandemic played in encouraging jurors who apparently were previously deadlocked to come to a compromise verdict.

The jurors convicted defendant of Sex Trafficking by Force, Fraud or Coercion in relation to OS[2] but were unable to reach verdict on any of the other counts. The bulk of the evidence at the trial consisted of evidence relating to defendant's involvement with persons other than OS. The prosecution claimed the alleged conspiracy lasted from March 2015 until May of 2019, (PSR ¶ 18 ), a period over 4 years. Evidence at trial covered defendant's alleged activity during that entire period with multiple alleged prostitutes. Similarly, the representations covered in the Prosecution's sentencing materials also covered all that period including defendant's alleged involvement with numerous other prostitutes. But defendant's involvement with OS was relatively short lived. She left Cleveland on June 23, 2018, to join with defendant and posted with defendant on June 27, 2018. (Gov sent memo, p.3) She left defendant sometime in September 2018, (Gov sent memo, p.5) She apparently was with defendant for slightly more than 2 months. As her testimony made clear, much of that time she spent dancing in "strip clubs" where she also claimed to arrange dates as part of her prostitution services. However, as revealed in the text messages introduced during trial her complaints

---

[2] The parties have agreed to use the initials of the alleged prostitutes involved to protect privacy concerns.

regarding how hard she was working and how she was physically sore focused on her work as a dancer. Although her work as a dancer might have been exploited by defendant, the dancing in and of itself was not prostitution[3].

It is difficult to ascertain what was the basis for the jury to conclude that defendant was guilty of sex trafficking[4] by force, fraud or coercion given that OS's testimony contradicted that theory. This was not a case where OS was fraudulently tricked into a situation where she would be forced into prostitution. To the contrary, OS was actively involved in prostitution with another pimp when she had her first contact with defendant.   She was unhappy with that pimp, who was abusive, denied her food and basically mistreated her.  She was interested in pursuing a pimp who would be better to her. (TR. 2/28/20 p. 64 – 68; p. 141.) She knew that if she went with Armstead it would be to work as a prostitute. (Tr. 3/2/20 p. 9,10) Armstead never threatened nor used violence to get OS to Maryland to work as a prostitute.  (Tr. 3/2/20 p. 10) Armstead never used force or violence to get OS to participate in prostitution or to have "dates." (Tr. 3/2/20 p. 11) When OS decided to leave defendant never said that she could not leave, never pointed any

---

[3] The prosecution's claim for restitution is similarly built on "shaky ground."  OS drew no distinction in segregating what she was paid for dancing vs prostitution services.  It is impossible to conclude that the prosecution's claim for restitution adjusts for this.

[4] Defendant never contested that he was involved in prostitution with OS. Rather, what was challenged was that he did not do so by Force, fraud or coercion.

weapons at her nor threatened her to not leave or pressured her to stay[5]. (Tr.
2/28/20 p. 141-2,145) Given her testimony which refutes that defendant used
"Force, Fraud or Coercion" it is difficult to understand how the jury found beyond
a reasonable doubt that he did so.

It is respectfully suggested that given the overwhelming and unchallenged
evidence that defendant had been involved in the prostitution business for more
than 4 years, exploiting numerous prostitutes, there was an understandable desire
to not allow him to go free and unpunished.  The jury was not presented with an
option to convict the defendant of that which he was admittedly guilty of:
pandering of prostitution.  They had to choose between acquitting him of all
charged counts notwithstanding overwhelming and unchallenged evidence that he
was involved in prostitution.  Given the context, coupled with what was an
impending shut down of the courts due to Covid, it appears the jury compromised
on the instant offense notwithstanding the testimony of the purported victim, OS,
that although she had a pimp/prostitute relationship with defendant she entered into

---

[5] OS decision to leave was in part because she was unhappy but also because she
anticipated that they were likely to be arrested or raided. She wanted to avoid that.
((Tr. 3/2/20 p. 22,23)

the relationship knowingly and voluntarily without any "Force, Fraud or Coercion."[6]

The prosecution spends a large portion of their sentencing memo recounting alleged activity involving defendant with other prostitutes, particularly one they refer to as MV.[7]   Much of the trial evidence related to allegations of defendant's relationship with MV.  Defendant was not convicted of any offenses involving MV. At trial it was conceded that once MV became an adult there was an ongoing relationship between Defendant and MV that lasted many years as both boyfriend/girlfriend and pimp/prostitute.  Notwithstanding that defendant was not convicted of anything involving MV, the prosecution has introduced a statement from MV under the guise of it being a Victim Impact statement.  Considering that the only conviction for which defendant can be sentenced involved OS, not MV, it

---

[6] It is clear that OS ultimately was not happy with the relationship and chose to leave.  Although defendant was not pleased with her decision, he did not use force or threats of violence to dissuade her. Rather, he allowed her to leave. Although OS was disappointed that the life she had with Defendant was not what she had hoped for when she "chose" to work with Defendant, it cannot be construed that his representations rise to the level of fraud:  he made clear and she knew she was entering into a pimp/prostitute relationship.

[7] MV is an abbreviation for Minor Victim.

is not clear how appropriate it is for the prosecution to rely on MV's statement in fashioning a sentence in this case.[8]

## THE DEFENDANT

The activities in this case began in March 2015.  At that time defendant was only 23 years old.  As the evidence at trial established, prior to his involvement in this case, he had no prior involvement in prostitution.  Significantly, his prior involvement in criminal conduct generally did not involve violence[9] nor financial gain.  His prior convictions were primarily traffic and weapon's possessions. Given the lack of violence, he is not the type of person whose incarceration is

---

[8]   MV's victim impact statement was apparently more nuanced than the prosecution wished in that she did not portray defendant in a completely disfavorable light. She did not view her relationship with him as completely "negative." She admitted that when she met defendant she was on a "rough, rough road."  He helped her by helping her to get off drugs, taking her to doctors, taking care of her body, protecting her from unprotected sex, etc.. She opines that were it not for her relationship with Defendant she likely would have been "an opiate abuser and a disease ridden being."  Apparently not satisfied with MV's statement, the prosecution also introduced a statement from MV's lawyer which presented a much more devious portrayal of defendant. Defendant was not convicted of any offense involving MV.  It is unclear how a statement from her lawyer should be regarded as a victim impact statement, the lawyer is clearly not a "victim," nor is there any indication that MV has asked her to speak on her behalf in this context. Notably, the lawyer's letter makes clear that although Defendant was present, it was Gray not Defendant that introduced MV to prostitution when she was a minor.

[9] There was a robbery case when defendant was 18, (PSR ¶ 24.)  There was also a prior Human Trafficking charge from 2017 (PSR ¶103) but as the PSR writer noted that conviction was part of the overlapping conduct in the instant case. (PSR ¶ 199)

necessary to protect the community.  Similarly, based on his past it does not seem he is likely to be someone to pursue criminal activity for financial gain.

As the letters submitted by the mother of Defendant's children demonstrate, notwithstanding the defendant's involvement in this case, he is a loving and supportive father to those children.  The mother's sister corroborates this point. Although he and the mother have separated, Terrell continues to be a supportive father to the children. This includes his biological child as well as her child from another relationship which preceded defendant.  Defendant essentially adopted the child, including supporting the child after his romantic relationship with the mother ended.

Both women, as well as the PSR investigation, indicate Terrell has a history of making his living through honest lawful employment. It was only when he lost his job and despite best efforts, was unable to find other lawful employment, he started to earn his livelihood from criminal activity.  There is strong reason to expect that upon serving whatever sentence is imposed the Defendant will not resume a criminal lifestyle. Rather, he is likely to pursue lawful employment as he has in the past.  If the proposed 15-year sentence is imposed the defendant will be in his mid-forties when released, an age at which most offenders "age out" of a criminal lifestyle.

Given defendant's moderate criminal past it is clear defendant is not oriented toward supporting himself through criminal conduct.   There is strong reason to expect he will resume a lawful lifestyle.  If this does not occur, he will be on supervised release subject to quick revocation.

CONCLUSION

18 U.S.C. §3553(a) requires that the court impose "a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in § 3553(a). It is respectfully suggested that defendant's proposed sentence of 15 years achieves that objective. It is adequate punishment to deter similar conduct.  It reasonably assures protection of the public because upon release the defendant is less likely to reoffend.  It is respectfully suggested that a sentence in excess of that period of incarceration would be imposing a sentence that is "greater than necessary" in this case.[10]

WHEREFORE, for the foregoing reasons as well as any that appear at the sentencing hearing,[11] defendant requests that the court impose a sentence of 15

---

[10] The prosecution has requested a sentence of 30 years in the prostitution case. That is the mandatory minimum and traditional sentence imposed in 1st Degree Murder cases in the District of Columbia. The defense acknowledges that some period of incarceration is warranted in this case.  However, it is not commensurate with the punishment warranted for Pre Meditated Murder. Their requested sentence is "greater than necessary."

[11] Defense counsel notes that he has not discussed this memorandum nor the prosecution's sentencing memorandum with the defendant. He has met in person to

years concurrent in the prostitution with whatever conditions and period of

supervised release the court believes is warranted.

Respectfully submitted,


\_\_\_*/s/*_____
Jonathan Zucker, #384629
37 Florida Avenue, NE, #200
Washington, DC  20002
202-624-0784
jonathanzuckerlaw@gmail.com

*Counsel for Defendant*


## CERTIFICATE OF SERVICE

I certify that on this July 7, 2022.I caused the foregoing to be electronically filed with the court using the CM/ECF system that will electronically serve the following registered users:

Amy Larson
Kevin Rosenberg
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20017

---

discuss the Pre Sentence Report.  Defendant has been transferred out of the DC Department of Corrections and is in the Bureau of Prisons. Contacting defendant in the BOP is problematic depending on what facility he is in and who his counselor is.  Arranging phone calls is frequently difficult since some BOP facilities do not answer phones nor pass on requests for phone calls.

11

Elizabeth A. Hutson
US Department of Justice
150 M Street NE
Washington, DC 20002
Elizabeth.Hutson@usdoj.gov

                                          __/s/_____
                                            Jonathan Zucker