IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )      CR Nos. 18-357
                                   )              19-369
                                   )      Washington, D.C.
     vs.                           )      July 15, 2022
                                   )      3:40 p.m.
TERRELL ARMSTEAD (1),              )
                                   )
        Defendant.                 )
_____)


TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Amy E. Larson
                             Elizabeth Hutson
                             U.S. ATTORNEY'S OFFICE - DC
                             555 Fourth Street, NW
                             Washington, D.C. 20017
                             (202) 252-7059
                             Email: amy.larson2@usdoj.gov

For the Defendant:           Jonathan S. Zucker
                             LAW OFFICES
                             OF JONATHAN ZUCKER
                             37 Florida Avenue, NE
                             Suite 200
                             Washington, D.C. 20002
                             (202) 624-0784
                             jonathanzuckerlaw@gmail.com

APPEARANCES CONTINUED:

Probation Officer:          Kelli Willett

Court Reporter:             William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            E. Barrett Prettyman CH
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            (202) 354-3249

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

COURTROOM DEPUTY:  All rise.  The Honorable Amit P. Mehta presiding.

THE COURT:  Please be seated, everyone.

COURTROOM DEPUTY:  Good afternoon, Your Honor. This is a sentencing in Criminal Case Nos. 18-357 and 19-369, the United States of America versus Terrell Armstead.

Amy Larson and Elizabeth Hutson for the government.

Jonathan Zucker for the defense.

Kelli Willett on behalf of the Probation Office.

The defendant is appearing in person for these proceedings.

THE COURT:  All right, Counsel, good afternoon.

Mr. Armstead, good afternoon to you, sir.

Okay.  So we're here for sentencing this afternoon.  Let me first ask Mr. Zucker whether you are prepared to proceed today.  You had dropped a footnote in your sentencing memo that suggested you perhaps had not had enough time to talk to Mr. Armstead prior to sentencing.  So I want to confirm that you have done so and are prepared to proceed today.

MR. ZUCKER:  I think that's a fair assessment.

I think what I noted was that we couldn't -- we

had plenty of time to meet and speak to review the Presentence Report, and, I think, one other occasion, but subsequent to filing, there was no time to meet.  And upon receipt of the government's sentencing memorandum, we haven't met since then; however, we're ready to proceed. I don't think there's anything -- and I think he will agree with me -- we don't want to delay it at all.  He's shaking his head yes.  And we've had sufficient time to talk since then.  Thank you.

THE COURT:  I just wanted to confirm that.  Sure.

So with that, why don't we turn to the task at hand.

So let me begin, just lay out what we're going to do.  I'll first just say what I've received and gone through and reviewed in connection with the sentencing.  There are then a number of preliminary matters to take up that the parties have raised in connection with the Presentence Report, and then we'll go to the allocutions and take it from there.

So let me just go first, just put on the record what I've received and reviewed.  That's the Presentence Investigation Report at ECF 102, the Probation Office's recommendation at ECF 103, government's memorandum in aid of sentencing at 146, sealed victim impact statements at 145, defendant's memorandum in aid of sentencing at 148, which

includes a letter from Mr. Armstead's -- mother of his children, and then a letter that was submitted as part of 148-1.

So is there anything else that I should have received that I didn't already mention?

MS. LARSON:  Not from the government, Your Honor.

MR. ZUCKER:  Subsequent to submission of the sentencing memorandum, there were a series of letters and emails I got from family that were submitted as supplements. The most recent one was, frankly, this afternoon; I received a letter earlier today and last night.

THE COURT:  Maybe I didn't see it.

The last thing I received, at least that I know I looked at, was ECF 1-0 -- let me get these numbers right; I think may have misstated somebody's.

MR. ZUCKER:  I wouldn't know the numbers, but, Judge, there were three supplements, the most recent being this -- I think this afternoon, frankly.  Regrettably, I just got it.

THE COURT:  Just give me a second.

MR. ZUCKER:  And I apologize for the delay.

THE COURT:  No.  That's okay.

All right.  So there were just two additional letters; is that right, Mr. Zucker?

MR. ZUCKER:  Today, there were two.  There was,

6

I think, one filed yesterday.

THE COURT:  Okay.  All right.

So then I've read that now as well.  And so I think maybe there was just some confusion in terms of which case it was filed under.  I think that's where some of the confusion may lie.

But the sentencing memorandum that was filed yesterday, and I think your sentence -- the letter that was filed yesterday was filed under the gun docket, and I think this one was also filed under the gun docket.  And so has the government seen both of these?

MS. LARSON:  We have not, Your Honor.

THE COURT:  So why don't we take a moment so that the government can take a look at the letters that were filed.  I can give you the letter that was filed at 107-1.  And then can you just print out what was done today or just print them both out and provide them to government counsel?

(Pause)

THE COURT:  Just so we're clear, I think what we have here is there was a letter filed at ECF 149, which is on the trafficking docket.  And then there were two additional filings in the gun docket, at ECF 107 and 108, right.  Okay.

(Pause)

MS. LARSON:  We're ready, Judge.

THE COURT:  So we now are clear on the docket what I've received and reviewed and both sides have received and reviewed.

Let me just ask, I know there are a number of issues already raised with the PSR that I'll get to in a moment, but is there anything else that is not already reflected in the presentence investigation report that I ought to be aware of?

MS. LARSON:  Not from the government, Your Honor.

MR. ZUCKER:  No for the defense.

THE COURT:  All right.

So let's just begin then.

And I'm happy to hear argument or I'm happy to simply rule based upon the parties' submissions.

And that's the first thing is that the government is asking, that a two-level enhancement be included for a vulnerable victim.  Does either side want to be heard on that?

MS. LARSON:  Thank you, Your Honor.

Judge, I think our objection to the PSR lays out the relevant case law here.  It's clear from the testimony that came out at trial that Olga was, in fact, a vulnerable victim.

She was unusually vulnerable.  This is a woman that was born in Russia, was adopted, came over here,

I believe, when she was eight.  She was living in a situation that was extremely toxic.  She had no access to any money.  She wasn't able to eat.  She had no access to food.  And essentially she was defrauded by this defendant, who promised her the world; that he would introduce her to all sorts of people, she would make a ton of money.  Of course, that's not at all what happened.

So for all the case law that we cited in our brief, this defendant's success depended on the victim's desperation.  They were lacked in education, they were poor, they were from unstable homes.

For all of these reasons, we are asking for the two-level enhancement.  That would change his total offense level to 38, not 36.  And his Guidelines would be 360 to life, not 292 to 365.

THE COURT:  Ms. Larson, I just want to make sure I didn't miss anything.

Obviously I read your sentencing memo, but you suggested that there was cases that you had cited to support the proposition.  I want to just make sure I know what you're talking about.

MS. LARSON:  In the objections to the PSR, Judge.

THE COURT:  Oh, okay.  In the objections.

So you will forgive me, but I did not -- hold on.  I need to read this.  I hadn't received it.  There's a

document I was just handed that is more in the order of a pleading that's titled "Government's objections to the PSR."

Have you seen this, Mr. Zucker?

MR. ZUCKER:  I have.

And incredibly, I adopt the analysis by the Presentence Report writer that there was not the unusually vulnerable victim as defined in the Sentencing Guidelines.

THE COURT:  Right.  Okay.

So I mean, I had only seen the government's objection in connection with the objections that were appended to the Presentence Report, the final report. I didn't have this or hadn't seen that.

Were these documents provided to you in advance of your finalizing the report, is that what I now have my hands on?

PROBATON OFFICER:  That is correct, Your Honor. We received those from opposing counsel.  Then we summarized them for the Presentence Report and then provide those documents to the Court as part of the receipt and acknowledgment process prior to sentencing.

THE COURT:  These?

PROBATION OFFICER:  That's correct.

THE COURT:  Okay.

PROBATON OFFICER:  Yes.

THE COURT:  So I was supposed to have received

these from --

PROBATION OFFICER:  They're provided to the courtroom clerk on the date of sentencing, Your Honor.

THE COURT:  Oh.

PROBATION OFFICER:  Yes.

THE COURT:  Maybe we should fix that process. I don't think it makes a lot of sense to do it that way. This is the first time in seven and a half years I've gotten something like this on the day of.

All right.  Everybody, please just bear with me, I need to take look at this.

(Pause)

THE COURT:  All right.  Anything else you want to add, Ms. Larson, to what you submitted?

MS. LARSON:  No, Your Honor.

THE COURT:  Okay.

So for purposes of subsection, for the particular enhancement, for vulnerable victim, the term "vulnerable victim" means, A, a person -- a person, A, who's a victim of the offense of conviction and any conduct for which the defendant is accountable under 1B1.3, and, B, who is unusually vulnerable due to age, physical or mental condition or who is otherwise particularly susceptible to criminal conduct.

The commentary says that subsection B applies to

offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability.

You know, I will note the following; that as part of my preparation for this, there are -- you're right that there are Circuits that treat this somewhat differently. And, in fact, there are two, the Ninth Circuit and the First Circuit, a case called *United States versus Castaneda*, 239 F.3d at 978, and *United States versus Sabatino*, at 943 F.2d at 94, both of which stand for the general proposition that, for purposes of Mann Act prosecutions, and this is, I know, not a Mann Act prosecution strictly speaking. And those courts have held that based upon the legislative history of the Mann Act, that economic hardship of the victim is not -- does not make that victim unusually vulnerable.

And I think that's a fair assessment of where we are here. You know, without getting into the legislative purpose of the Mann Act, et cetera, I mean, judging from the circumstances that we know Olga was in, it's not clear to me that while she was -- let's put it this way, while she was undoubtedly vulnerable, I don't think the circumstances she was in were unusually vulnerable, given that she was voluntary -- well, she was already in the trade, if you will, in Ohio, she was in a bad situation, and her -- and

Mr. Armstead convinced her to come to this area.

I think the other important thing to keep in mind here is that the defendant needs to know what the vulnerable circumstances are.

And based on the trial evidence -- and I will tell you I went back and read all of Olga's testimony, which included some exhibits that were read into evidence about the back and forth between Mr. Armstead and Olga, that convinced her to come to this area. And I can't remember word for word, but there wasn't much in that evidence that described with particularity the circumstances she found herself to be in.

Now, she did testify at trial, but that doesn't necessarily mean that Mr. Armstead was aware of those precise circumstances at the time she was -- at the time she came to Washington -- to the Washington area. So for those two reasons, I'm not going to apply the vulnerable victim enhancement. I don't think it's applicable in this case, so I'm not going to include the two-level enhancement.

All right. So then there is the issue in paragraph 199, the suggestion made by the Probation Office that perhaps a variance might be warranted because Mr. Armstead's 2018 human trafficking conviction in Maryland overlaps with this case to some degree in terms of the people involved, and it involves essentially a course of

conduct that overlapped -- that involved a number of years and some of the same women.

Anybody else want to be heard on that issue?

MS. LARSON:  No, Your Honor.  I believe we included that in our objection to the PSR rationale for that.

THE COURT:  Right.

Mr. Zucker.

MR. ZUCKER:  Nothing except to note that that's a fair assessment and completely overlapped in time and place and persons.

THE COURT:  Yeah.

So I think you have two out of three right.  It did completely overlap in time and place but not persons.

And the Maryland conviction involves, arguably, two -- at least one and certainly two -- I think, two victims.  There's Erica, and then there's Sadie.

I mean, this case doesn't involve a conviction of an offense with Sadie for Mr. Armstead, and she was one of the victims involved in Maryland.

And so while the events are approximate in time and location and sort of modus operandi, if you will, there are different women involved who were the subject of the trafficking.  And so I don't think it is appropriate to vary for that reason, because I think it essentially would erase

the victimhood of the women that were trafficked as part of the 2018 conviction, okay?

All right.  Then there are the factual objections that the defendant has raised.  Mr. Zucker, do you want to be heard on that any further or I can simply just rule?

MR. ZUCKER:  If you're prepared to rule, I don't think there's anything I'm going to say that's going to change your mind.

THE COURT:  Well, there might be.  You can be very convincing.

MR. ZUCKER:  I think, in all candor, I would just be repeating what's already in the pleadings and nothing additional.

THE COURT:  Okay.

MR. ZUCKER:  If there's any additional questions the Court wants me to address, I'd be glad to.

THE COURT:  No, I don't have any questions.

So let me just go through this.

Paragraph 39, there's an objection to the statement that Defendant Armstead insisted that Olga and Sadie make at least 1,000 per night.

I went back into the testimony.  Sadie did testify that Mr. Armstead would make her feel bad if less than $1,000 a night was brought back.  This is at ECF 106, page 135.

Olga said that there would be fights if they, combined, did not earn $1,000.  That's at ECF 102 at 80. At the same time, she also said that there was not a minimum amount.  That was her testimony at page 73.

So what I'm going to ask Probation to do is just change this sentence slightly.  And instead of "Mr. Armstead insisted that Olga and Sadie make at least $1,000 per night," to just change it to, "Defendant Armstead would get upset if Olga and Sadie made less than $1,000 per night." So we'll just change that slightly to make it consistent with what the testimony was.

Then there's an objection to paragraph 39, and that involves the issue of what rules Mr. Armstead had, in particular, speaking to African-American men.  Mr. Armstead objects to the inclusion of that, and I'm going to overrule that objection.  Olga very clearly, at ECF 102, page 73, enumerated that as one of the rules, and so I do think there's a factual basis for that description.

Paragraph 40, Mr. Armstead denies the paragraph in its entirety.  As I said, I went back and I looked at the testimony.  And I do think, looking at the testimony, it perhaps is more than the testimony supports.

In Olga's testimony, in her direct examination, pages 78 to 79, she does describe a choking incident.  She testifies about that choking incident after talking about

the rules.

But it's not clear that the choking incident occurred because of a violation of the rules.  The testimony was ambiguous as to that, and the description in the Presentence Report makes a much more causal connection than I think the testimony reasonably read allows.

At page 108, 109, she describes a gun being put to Sadie's head.  But -- then in her mouth later on in connection with observing Mr. Armstead and Sadie having sex.

At page 106 -- excuse me, at page 120 of Sadie's testimony at ECF 106, Sadie did say that Mr. Armstead had put a gun to her head, but she didn't specify that that was in connection with any particular rule-breaking by her.

So I'm going to ask Probation to simply change that paragraph to read something very simply as follows, which is:  "Sometimes, as a way to exert control, a defendant would aim or place a gun either to Olga's or Sadie's head" and just leave it at that.

And then there is paragraph 43, and Mr. Armstead doesn't really have an objection to it factually, he just simply wants to clarify that Mr. Gray was really the one who was teaching, if you will, in that circumstance, and I don't think the paragraph needs to be changed to reflect that fact.

Okay.  There is also an objection to the two-level

enhancement -- the two-point addition -- I'm sorry, I'm not there yet -- the two-level enhancement as part of the criminal history calculation for the obstruction enhancement.

Probation has recommended two points be added because of a phone call that Mr. Armstead made to Sadie with respect to what she ought to say to law enforcement while he was incarcerated. And you've objected to that two-point enhancement, Mr. Zucker. Do you want to be heard on that any further?

MR. ZUCKER: I think it was just that because obstruction of justice was one of the charges that the jury did not reach a verdict on, the level of proof or the level of merit that should be given to that testimony is somewhat undercut as to whether or not it was really an attempt to obstruct justice.

THE COURT: Okay.

So I am going to include the two-point -- or two-level enhancement there. There's no dispute, as a factual matter, as it's described in the Presentence Report, that Mr. Armstead, on March the 24th of 2019, while he was prosecuted -- excuse me, while he was incarcerated, called Sadie and told her, "Let them people know that I'm not with no prostitution, never took nobody nowhere for no prostitution or nothing like that, that I'm just your

boyfriend."

And it is then true Sadie came to the U.S. Attorney's Office the next day and made false statements about Mr. Armstead and her relationship, as well as her own role in those affairs.

And it's quite clear to me that the intention of that statement by Mr. Armstead was to influence what she said to law enforcement. The objection that's actually made in the presentence -- excuse me, in defendant's memorandum is that because Mr. Armstead wasn't convicted of the obstruction count -- and, frankly, I don't own remember, was there an obstruction count?

MS. LARSON: There was.

THE COURT: There was. Okay.

Since he was not convicted of that, it shouldn't -- there shouldn't be the two-point enhancement.

But I do think by a preponderance of the evidence, there clearly isn't a warranted application of that two-point enhancement.

Of course, he doesn't need to be convicted for the enhancement to apply. And, in fact, it's not at all unusual for an enhancement to apply even if there's no actual obstruction count of conviction. So I will include that and overrule that objection.

Next thing is, there is an objection concerning

the two-point increase and Criminal History score for the commission of the offense while Mr. Armstead was on supervision.

Mr. Zucker, do you want to add anything more to that?

MR. ZUCKER:  Yeah.  I think there was a misunderstanding in the response by the Presentence Report writer.

They cited to -- I'm trying to remember how it was -- oh, they cited to the proposition that if a probationary or a supervised release period is extended as a result of the warrant, then it still has occurred -- I'm trying to remember how it is -- give me a second; let me try and remember what they said.

THE COURT:  That's okay.  Let me just ask you this.  I guess I don't -- I understood what the Probation Office was saying, but it seems to me to be a little less complicated, which is, you know, Mr. Armstead, this is the conviction in paragraph 100 for possession of a firearm by a convicted felon, indicates he was released from custody on September 16th of 2016, he was sentenced to a term that included two years of supervised probation.

That supervision would have concluded on September 16th of 2018.

MR. ZUCKER:  Right.

THE COURT:  And we know it's -- Mr. Armstead has been convicted of conduct that occurred from June 2018 through September of 2018.  So within the period he was under supervision.  So it seems relatively straightforward to me that the two points would be added for that reason.

MR. ZUCKER:  I'm looking at it now, and I think the issue was that the warrant for the conduct had issued after the probationary period.

THE COURT:  Right.  Even if that's true, I'm not sure it makes a difference.

MR. ZUCKER:  All right.  Very well.

THE COURT:  Okay.  So for those reasons, we'll include the two points in terms of the criminal history calculation.

All right.  Then there's restitution.  Anybody want to be heard on restitution?

MS. HUTSON:  Thank you, Your Honor.

I think that we can rely on what we submitted in the government's sentencing memorandum regarding restitution, but happy to answer any questions that you had about those calculations.

THE COURT:  No, I don't have any questions.

MS. HUTSON:  Thank you.

THE COURT:  Mr. Zucker, do you want to add anything?

21

MR. ZUCKER:  I'm inclined to rely on what we submitted as well, which essentially was that during the period that O.S. was working with Mr. Armstead, at a certain point, they shifted from -- or the allegation is they shifted from straight-up prostitution to dancing, and that the majority of their work was dancing.

And that money was essentially combined.  Whatever they made dancing was combined with whatever they made from prostitution acts and given to Mr. Armstead.  So when they failed to distinguish between those two, you can't amalgamate -- the dancing money was legal money, it wasn't prostitution money, and you can't amalgamate the two and come up with a daily figure.

THE COURT:  Okay.  Ms. Hutson.

MS. HUTSON:  Just briefly, Your Honor, to respond to that.

The statute makes clear that restitution is mandatory under 2429.  And the language specifically says that restitution should be calculated, including by looking at the gross income or value to the defendant of the victim's services.  It makes very clear that it doesn't matter that commercial sex is illegal or the legality of anything, it doesn't matter.

Olga had testified back in trial that she worked for the defendant from June to September of 2018, she

clearly testified that she worked seven days a week during that time.  She did say she got one week off during that time period.

THE COURT:  Can I ask you if you have that specific testimony, because I will tell you, what I read of that quoted portion was not quite what the government has said, because --

MS. LARSON:  So I have Sadie's testimony here, which, I think, is ECF 10.

THE COURT:  This is Sadie's testimony you're relying on?

MS. LARSON:  Well, no.  Also Olga's.  But if I could just start with Sadie's on ECF 106.  And then starting at, I think, page 52 of that docket, Sadie's talking about how she made $1,200 that first weekend, and talking about how -- going back to what we just previously discussed about how that was a minimum or the defendant would get upset if they didn't make that amount together, so that's the calculation for the $500 per night.

I don't have the specific cite for Olga and her testimony.  But I do know that she had testified to that during trial.  And then she's also been working with our victim witness advocate preparing for sentencing and has reiterated that calculation to her, in addition to the additional charges that were outlined in the sentencing

memorandum.

THE COURT:  Okay.

So let me just go ahead and tell you where I ended up on restitution.  It is the government's burden to establish a restitution amount by a preponderance of the evidence.  I went back and looked at the testimony to see what Olga said specifically.  And the government in its brief on page 24 says that she also testified that she worked for defendant in his commercial sex business until approximately September 2018.  During this period of time, O.S. testified that she worked "every day of the week, seven days," but did get one week off.

That testimony is, at least I think where it's coming from is page 138 of her direct examination, which is not actually her testimony but something that was part of a text-message chain between Mr. Armstead and Olga and which they were going back and forth about how much she was working.

And let me just read the part that's relevant. She says, "I do think of you.  See, I'm not used to working this hard and this late.  I wish you could just see the work I put into dancing."

And then he writes "five days on, five days off isn't a lot of work honestly.  And you've been partying harder than normal.  It's just not dancing whether you

willing to let me know or not."

She responds, "Daddy, we started here Sunday and it's Saturday.  That's every day of the week, seven days, not five."

He responds, "Sunday to Friday, Russia.  Then y'all work from 7 to 2 most every day but yesterday. So what are you really trying to say, Russia?"

And then it goes on from there.

So that really is -- and I went back and I looked. She was not asked specifically during her direct examination about how many days a week she worked and in what capacity, how many days a week she would have these -- engage in commercial sex acts.

This was really it.  And so I do not think it quite says what the government is suggesting, which is that she actually worked every day with, perhaps, a week off from the period of June -- late June to September 2018.  And, again, this is the government's burden to establish by a preponderance of the evidence.

So where I come out on this is as follow.  I take Mr. Armstead's admission that what she was doing was working five days on and five days off.  And so how I come out with this calculation is as follows; that there was a video -- excuse me, a photograph that Mr. Armstead posted with him and Olga on June the 27th of 2018.  That, at a minimum, is

sort of the first day when she arrives in the area.

She then testifies that at some point, she leaves in September of 2018, we're not quite sure when, she doesn't specify. But, you know, if we roughly say that it's September 15th as a midpoint, and we say, you know, how many days between June 27th and September 15th, that's 80 days. And if she works five days on, five days off over the course of 80 days, that's working for 40 days.

40 days at -- and what she testified to is that one of her dates would be $500 and that it was -- I mean, the import of the testimony was certainly that she was expected to have a date each night of the dancing, in addition to whatever she was making for dancing. It's not clear to me that the money was all combined and given to Mr. Armstead, maybe it was, maybe it wasn't. But she did specifically say it was $500 that she charged for each commercial sex act.

So 40 days at $500 a day is $20,000. So it's $20,000, plus the expenses that she's outlined that are in the government's memo: 1,200 for a new phone, 800 for a new laptop, $3,000 for clothing that was purchased in connection with the conduct, $3,012 for therapy, and $632 in travel expenses. And if you add that up to $20,000, it comes out to 28,644, and so that'll be the restitution order with respect to Olga.

Yes, Mr. Zucker.

MR. ZUCKER:  Yeah.  Are you making a finding that -- my recollection of the testimony was that the money was combined, both from dancing and from sex acts, and I do not recall -- and it could be just the lapse of memory, it's been a while, but I do not recall that there was testimony that she had sex acts -- had prostitution services rendered on each day.

It seems my recollection from the testimony was that she was complaining mainly about how tired she was from dancing, which admittedly was explorative, but I don't think that is part of the basis for a restitution finding, the money that was made from dancing.

THE COURT:  I agree.  And I understood her to -- well, let me take that back.

It's not -- I don't think the testimony was clear on -- in the way that you've suggested.  I mean, again, I went back and I read it.  And maybe I missed it, but I did not hear her explicitly say that what she was giving to Mr. Armstead on a nightly basis was a combination of whatever she was earning from commercial sex acts and from dancing.  Maybe that was happening but she didn't make that clear in her testimony.

What she did testify to is that each of her commercial sex acts, she would charge $500, which is what

she did in Ohio, and that's what she continued to do while she was here.  She also said that if there was a combined sex act with Sadie, they would charge $1,000.

So, you know, I'm doing a general estimate here on the -- based upon her testimony that for the days she worked, if there was a commercial sex act performed on that day, it was valued at $500.  She also said sometimes it was more, so I'm using the low-end figure.  And maybe there was more than one on one day, I don't know.  But that's where I'm getting to -- that's how I got to the calculation I got to.

MR. ZUCKER:  All right.

And I'm not sure she was specifically asked the question, but certainly the tenor of her testimony was that all money was given to Mr. Armstead, save maybe expenses, and included with that was the dancing money.

THE COURT:  Right.

And that may be.

And at the end of the day if the government is right in terms of its interpretation, then I'm actually undercounting it, right?

I mean, if the estimate -- is the assumption is $500 a night, plus dancing money, I'm actually underestimating what the restitution amount would be, because presumably, she made more than $500 a night from

28

both.

MR. ZUCKER:  I guess my objection, and it's just repetitive, is that you can't -- the money made dancing shouldn't have been counted in.  And that she was -- Mr. Armstead would be disappointed if they didn't show up with a certain amount of money each night and that she was not distinguishing between those two -- fees for both services.

THE COURT:  Okay.

Well, look, as I said, the testimony is clear that she was -- her charge was $500 for each commercial sex act, and that that money was certainly given over to Mr. Armstead.  And so whether the dancing money would be covered as restitution or not, the record ought to be clear that I'm not -- the $500 that I'm estimating or using doesn't include dancing money, period.  All right.  So that'll be the restitution amount.  Okay.

All right.  So with that, is there any other -- are there any other preliminary matters either side wants to raise before we turn to the allocutions?

MS. LARSON:  No, Judge.

THE COURT:  Mr. Zucker?

MR. ZUCKER:  Nothing further then.

THE COURT:  All right.

Ms. Larson, I'll hear from you.

MS. LARSON:  Your Honor, I know that you have had the opportunity to read our sentencing memo, as well as the victim impact statements that were submitted in this case, so I don't intend to repeat everything in that memo.  I'll simply try to hit some highlights and respond to some of the arguments that the defense counsel made in his sentencing memo.

We are seeking a sentence of 360 months, to be followed by lifetime of supervised release, and you've already addressed the restitution issue.

Now, Probation's recommendation was 292 months, and I believe their recommendation was for that to run consecutive with the gun case.  My understanding of the plea agreement, however, is that those sentences would run concurrently.

THE COURT:  Right.

MS. LARSON:  Defense counsel is asking for 15 years here.  That is the mandatory minimum.  It is well below the Guidelines and half of what we're asking for in this case.

THE COURT:  Yeah.

And to be clear, I think Probation's recommendation is 264, correct?

I'm just looking at ECF 103, which says that the recommended sentence for Count 2; and the sex trafficking

case, the recommended sentence is 264.

PROBATION OFFICER:  Your Honor, we recommended that consecutive to --

THE COURT:  Right.

PROBATION OFFICER:  -- the other case, for a total aggregate term of 348 months.

THE COURT:  Correct.

PROBATION OFFICER:  Right.

THE COURT:  Okay.

Ms. Larson, I thought I heard you say 290-something.

MS. LARSON:  I did, Judge.  Sorry.  I misspoke.

THE COURT:  That's okay.

MS. LARSON:  So a review of the 3553 factors here clearly indicates that a sentence of 15 years is insufficient in this case.

I want to stress that this is not a prostitution case.  That was repeatedly said in the defense sentencing memo.  We're not here for that.  He was not convicted of prostitution.  He was convicted of sex trafficking by force, fraud, or coercion.  And if he was just simply convicted of prostitution or if this was a prostitution case, he wouldn't be facing a 15-year mandatory minimum, with life being the statutory maximum.

To call the victims in this case prostitutes is

reprehensible. First of all, there's a minor victim. She can't, by law, consent, she cannot be a prostitute. She was a victim of child sexual abuse. That's what happened.

And, as you heard the testimony of the other four women, they were all extremely vulnerable victims.

THE COURT: Ms. Larson, if I could interrupt you for a moment.

What is your view of -- I know what the Guidelines say and that I can consider any information essentially that is relevant to the considerations of sentencing.

And to be clear, the Guidelines calculation that I ultimately will adopt will have to do with this conviction and this conviction alone. I'm not -- we're not enhancing it for any other conduct as to which he was acquitted.

But with respect to Olga, and please do not at all take this to diminish the conduct, I'm not, but it's a three-month period from June of 2018 to September of 2018. So if that's the offense conviction conduct, you're essentially asking me to sentence him to ten years for each month in which he trafficked her.

MS. LARSON: With all due respect, Judge, I disagree with that, because what we know is that, in addition to the offense conduct, you're allowed, as you correctly stated, without limitations, to consider everything you know about this defendant's background and

character.

So what we know is that he was trafficking a minor, as well other women, for a period of four years. So all of that is relevant conduct. It's all part of the same common scheme and plan that this offender had. So I'm not simply looking at that three months, I'm looking at everything in his background, his criminal history, et cetera.

THE COURT: I agree with that. I mean, I know that's what you're asking me to do.

I just -- there's no magic formula here, I know. But to what extent, in fashioning a sentence, should the offense conduct of conviction be the driving factor in the sentence relative to the other conduct. And in this case in particular as to which he was ultimately not convicted, I mean, there's certainly -- I heard all of it -- and I'm trying to piece together how this ought to come together in terms of convicted conduct versus everything else we know about Mr. Armstead's behavior.

MS. LARSON: True.

He's also being sentenced here today on the gun charges as well. So it's not simply --

THE COURT: Right.

MS. LARSON: Whatever the Court's ultimate sentence is, recognizing they will run concurrently, that is

part of this package.

THE COURT:  Agreed.  Okay.

MS. LARSON:  I was going to start off by correcting some of the factual inaccuracies that were in the defense memo, but I think that we took care of a lot of them by your colloquy earlier today.

I am not sure what testimony Mr. Zucker was referring to in his sentencing memo, that there was not forced used against Olga.  As you mentioned earlier, he choked Olga to the point of her passing out.  She said she was scared.  There was a time where he left a bruise on her arm holding her down, slapped her across the face, and that was -- they're talking about arguments about money and about her not making enough money.

There was also extensive testimony about the abuse she witnessed perpetrated by Mr. Armstead against Sadie.  That included pointing guns at both of their heads.  And as this Court's aware, there was a rather heinous incident where the defendant was having sex with Sadie, she said no twice, but he insisted on putting a gun inside her mouth.

This is one of the guns that we're talking about, and this is the other.

Judge, you may recall that during the testimony --

THE COURT:  Can I interrupt you for a moment?

Just to be clear, the guns that were at issue in

this case, they're not the same guns that are at issue in the conspiracy felon in possession case, right?  I think it's two separate guns.  These are sort of the Russians, the twins, being called the twins.

MS. LARSON:  Exactly.

THE COURT:  So we're talking about at least four guns.

MS. LARSON:  Correct.

These were the guns that were introduced into evidence.  Olga identified them when she was testifying.

You may recall that the jurors were so uncomfortable with them sitting on our prosecution table, they asked them to be removed and I think we gave them back to the DEA agent at the time.

And if the Court remembers, it's not just about the testimony of these girls.  The defendant posts this on Instagram.  Here's Sadie sitting in bed and the defendant's pointing a gun at her.  You may remember Detective Jeremiah Johnson said that pointing a gun at a person in the District of Columbia is a felony.  And he captioned it, "What do you mean slow night?"

This is Sadie.  This is Sadie when she was 16 years old.  This is how she looked when the defendant found her.  Here she is again.

So what we know is that when she's 16 years old,

the defendant drives her and another woman --

MR. ZUCKER:  I apologize for the interruption. I just want to -- I think Ms. Larson just made a mistake. I thought we're not supposed to use the actual names.  That was --

THE COURT:  I think we --

MR. ZUCKER:  I don't really care.

THE COURT:  We're all sort of -- it's all on the public record now, and I think they were used in the sentencing memos.

MS. LARSON:  And they testified first names only at trial.

THE COURT:  Right.

MS. LARSON:  So we know that he drove this 16-year-old girl and another one named Mary to -- from Lusby, Maryland, to a hotel in Virginia repeatedly.

He allowed this 16-year-old girl to be advertised to random strangers for sex for his own financial benefit.

Here she is.  That's Sadie, 16 years old, partially undressed.  And he repeatedly posted these on the Internet.

Now, I'm not going to display all of these dozens and dozen of ads that were posted offering the 16-year-old girl up for commercial sex all for his benefit, but I am going to show the Court one of these advertisements.

And this is from April of 2015.  This is a picture that the defendant took of Sadie.  That's about as close as you can get to child pornography without it being child pornography.  She's 16 years old.  That's what he's putting out there on the Internet.

This is Mary.  She testified that she was with Sadie on four of those occasions.  We know it from her testimony, we know it from all those ads that were posted.

And we know it, of course, from the Red Roof Inn records, where he had -- all of these records have a different woman's name on it, because he wouldn't put his own name on those records because he was trying to evade law enforcement detection.

The nature and the circumstances of this offense, Judge, calls out for a severe sentence, and that is why we're asking for 360 months.  This is an offender who violated and exploited a minor, as well as other women, who were extremely vulnerable for various reasons, drug addiction, homelessness, lack of familial support, prior sex abuse, and he did so for years.

In June of 2015, the defendant was arrested, he was in a hotel, police responded because of calls of prostitution.  And when they arrived, they found cocaine and a gun in the defendant's hotel room.

THE COURT:  This was the 2017 in Manassas, right?

MS. LARSON: Yes, 2015, I believe.

THE COURT: 2015.

MS. LARSON: So what's also happening is, when he's being held on that case, he's talking to Laura Gray, who's the mother of his child.

Now, we heard a lot in the sentencing memo and in some of the letters about what a good father the defendant is. And I'd like to remind the Court that when Laura Gray gave birth or was going into labor to give birth, that the defendant was at the Red Rood Inn with Sadie, a 16-year-old girl.

This is what they're talking about. This is Laura Gray saying that the, little bitch probably going to come there. She need to go sell whatever she got and she need to put some money on my phone, repeatedly calling the 16-year-old girl a little bitch.

They go on to talk about it, and the defendant says, I wish she could link up with Mal right now and go to work.

The conversation ends up with Laura Gray saying, uh-huh, I'm like, she needs to be out putting some money on my phone. He like, ah, he don't want no part of that.

THE COURT: That was a transcript from a jail call when?

MS. LARSON: That was in 2015.

THE COURT:  Okay.  That was in connection with -- all right.

MS. LARSON:  So that's the first arrest.

You also know that he gets arrested in June of 2015 because he's trafficking this woman.  This is Jessica Jones.  And you may remember that law enforcement enacted an undercover sting because they saw this advertisement, and they were concerned that she was a minor.  She was 19 years old at the time, drug addicted, when the defendant brought her from Maryland and was prostituting her in various hotels all over Northern Virginia.  And we know that because when they arranged that undercover operation and law enforcement responded to this ad, it was the defendant who drove her there.

Now, he gets a slap on the wrist at this point because Jessica decides not to go forward, which we know happens a lot in these cases.  So he ends up with a disorderly conduct.

But that's not really what he did.  He was already prostituting and commercially sexually exploiting at least three women by this point in 2015.  And we know that he was exploiting Jessica for months because we see this ad from March of 2015.  And in one of these pictures, there's Jessica with Sadie.  Again, Sadie is 15 years old at this point.

The abuse doesn't stop there. We know he has a 2018 conviction for human trafficking involving Sadie and Erica. Here's advertisements that he posted of them.

And what else is he doing at this point? He's all over Instagram flashing large sums of cash that he's making off of these two women. Erica was also very vulnerable. The defendant has Sadie recruit her in the months after her mother died.

The 2018 case stemmed from months and months of surveillance, where they were watching the defendant take Sadie and Erica to various hotels in Montgomery County.

At that point, as you said, Judge, he is convicted in 2018, he goes to jail.

But what is he doing when this case was pending? Well, he's lured Olga from Ohio to his home in Maryland and he's working her and Sadie. And he's also posting a ton of offensive things on Instagram, such as, "A bottom bitch is not a girlfriend. News you can use."

I think the Court referred to this post earlier. Again, this is while his human trafficking case is pending, he's advertising Sadie and Olga.

And this is his comment. "Fresh out of the joint on pandering charge." First of all, it's not pandering, it was human trafficking. "But feeling blessed. Got some nice plans, all good stuff. Stay safe you feel especially with

the new laws they got going on."

More flashing of cash, referring to himself as a snow bunny pimp, because he's working white girls exclusively at this point.

He's having them get tattoos. We talked about this at trial; I believe we heard from the expert. This is a way of marking these women as property.

When we're talking, again, about this offender's characteristics, here's how much respect he has for the law. This is him while that human trafficking case is pending, standing outside the Montgomery County Circuit Court, giving the finger, and he's posting it on Instagram.

As you're aware, he's also a convicted felon. He really likes to post pictures of himself on social media holding guns that he is prohibited from having.

There he is with friends, again, showing off guns.

And, again, this is how he refers to the victims in this case. "Squirrels follow their heart. Real hoes follow instructions."

We have a defendant here who never learned from his prior arrests. As I said, in 2015, he had a slap on the wrist, a disorderly conduct.

2018, the human trafficking case, five-year sentence, all but four months, I believe, suspended. As soon as he gets out from that, he is back to working Olga

and Sadie.

And he also, as this Court's aware, while being incarcerated, repeatedly called Sadie, there were a number of jail calls that were introduced at trial, threatening her, trying to control what she said, arguing about how much money she was making.

For all of those reasons, a sentence of 15 years, which is the mandatory minimum, with a man that has this type of extensive violent criminal record, these two prior law enforcement contacts for the same crime, we know of at least four victims of his, and we know from the minor victim in this case that she has long-lasting harm that this defendant caused her.

I don't think 15 years is enough to deter this defendant; he needs a substantially longer sentence.  Again, look what we just learned that he was doing while he was waiting to be sentenced on his last human trafficking case, still out there having Olga and Sadie work for him.  He referred to Sadie as a cash cow.

And, again, he called her repeatedly from jail. He used his mother to do that when he was not allowed to call her.  And when the jail restricted his privileges, he was using the kiosk at the jail to send her threatening messages.

In fact, Judge, you'll remember that during trial

in the moments leading up to Sadie's testimony, he's in the back with officers, with marshals, and he's still yelling out "Sadie" moments before she came out to take the stand.

A 30-year sentence is important here to protect the community.  We know that he has a violent past, we know that he was pointing guns at these women, at Sadie, putting a gun in her mouth.  Olga testified that she was terrified that the gun would accidentally go off and kill her.

The victims in this case, Judge, are still so fearful of the defendant that they couldn't even bring themselves to speak to you today.  They are still struggling to rebuild their lives, and it's a miracle that the five women that testified in this trial have gotten out of the life.  They did that for themselves, no thanks to the defendant.

Again, this is Sadie when the defendant found her.  And that's what she looked like after the defendant had used and abused her for two years.  She's been arrested twice because of the criminal lifestyle that this defendant has chosen to live his entire adult life.

For all those reasons, Judge, we are asking for a sentence of 360 months, to be followed by lifetime supervised release.  Thank you.

THE COURT:  Thank you, Counsel.

Mr. Zucker.

MR. ZUCKER:  Thank you, Judge.

It's interesting to note that, kind of like their sentencing memorandum, the allocution here focused primarily on conduct that the defendant was not convicted of and spent much less time, comparatively less time on conduct he was convicted of.

And I understand there's controversial interpretations or perspectives regarding relevant conduct. But in this case, that seems to be all or the principal allegations the government is seeking to hold the defendant accountable for is stuff that was acquitted.

And they conveniently ignore Sadie -- okay, the name is being used now -- I thought we were using S.B. during the trial.  But anyway, Sadie, interestingly, had a much more nuanced response when asked to give a victim statement.  She said, my life with Mr. Armstead was not completely negative; I don't view it completely negative. Were it not for him, I would have been an opioid ridden or opiate used and diseased person.  And he got her off of drugs.  She acknowledged that.  He taught her to protect herself.

And, yes, obviously, it was an exploitive relationship, but it was also more than that, and there was some caring for her within that.  And I'm sure the government's response will be, yeah, he cared for her the

way he would care for property that was producing income. And there may be some truth to that; these motives are frequently mixed.

But it was interesting because even her lawyer, who gave -- and I'm still not sure the propriety of having someone who isn't even the victim of conviction give a victim impact statement and then having her lawyer author something. Because apparently the government wasn't satisfied with what Sadie said because it was much more -- it was somewhat positive of Mr. Armstead, and they choose to ignore that.

The Court has already focused in -- what he was convicted of here was prostitution, and the government charged it as force, fraud, and coercion. And there clearly was, I guess, incendiary aspects of the relationship between Olga and Mr. Armstead.

But she very clearly said the force, the violence, that was not part of causing her to be involved in prostitution. She made that choice.

I cited to it in the sentencing memorandum, but I specifically asked him, when he threatened you, was it to get you to be involved with prostitution? Oh, no. When the guns were being pointed at people -- yes, I agree with the government, it's reprehensible to put a gun in someone's mouth when they're having sex, okay? But was that part of

the prostitution or was that part of the relationship between Mr. Armstead and the person we're referring to, which had some unusual aspects to it.

But I think the bottom line here is, Sadie -- not Sadie, the victim, Olga, in no uncertain terms when asked, were you forced, was there violence ever threatened if you refused to be involved in prostitution, she said absolutely not; she was unambiguous about that.  And yes, she was frightened when she left.  But when she chose to leave, was there any force used against her?  No.  Was there any threats made about her leaving?  No.  Was there any coercion used?  No.

I know the Court is bound because the conviction here, it has a mandatory minimum of force, fraud of 15 years.

And I think the prosecution correctly characterized my sentencing memorandum and my interpretation of the facts in this case; that this was, as far as the victim who's the subject of the conviction, this was prostitution.  This was one prostitute who was with a pimp, who was more abusive, who she wanted to get away from, and she chose another pimp.

Did he make promises that were somewhat exaggerating?  Well, arguably, that's true.  You know, people will say all sorts of things in terms of making a

sale.  But that's really what it was, it was puffery.

And was she given a better life when she got here than she was subjected to in Ohio?  I think she acknowledged that she was.  Was it disappointing?  Of course it was.  Was it the paradise or the pyramid that she had hoped for?  Of course it wasn't.  And that's why she chose to leave and she did leave without any flack, without any resistance from Mr. Armstead.

So I think the correct way to view this case is, at least as to Olga, it was a short-term prostitution relationship.  And I really believe, based on the evidence in the case, the government -- not the government, the jury entered into a compromised verdict here, because the only thing charged in relation to Olga was force, fraud, and coercion.  Had there been a charge, but we don't have it in federal court, of just simple pandering, that would have been the verdict here.  And I think --

THE COURT:  I'm not sure why you say that.

MR. ZUCKER:  Because there was --

THE COURT:  Because presumably they agreed unanimously on each element of the offense, which included the element of fraud, coercion, or force.

MR. ZUCKER:  But because -- and I say that because -- I didn't mean to cut you off.

THE COURT:  No.  It's all right.

MR. ZUCKER:  I say that because when asked directly, was force used to get you to be involved in prostitution?  She said no.  Was violence used?  No.  Were threats of violence used?  No.

THE COURT:  Well, Mr. Zucker, I don't want to have to quibble about this, and "quibble" is not even the right word, but you know as well as I do that there doesn't need to be a direct threat necessarily, there does not need to necessarily be an actual use of force in order to compel women in their situations to engage in commercial sex acts.

I agree with you in the following sense.  I don't think she was defrauded into coming here.  I don't.  I think she came here with eyes wide open.  I don't think she signed up to have guns pointed at her.  I don't think she signed up to be choked.  I don't think she signed up to be slapped. I don't think she signed up for any of that.  And the jury found him guilty of doing those things in connection with keeping her as a commodity.

MR. ZUCKER:  As a prostitute.

THE COURT:  As a commodity.  Not a prostitute, as a commodity.

MR. ZUCKER:  I understand that.

THE COURT:  He bought and sold her like some people sell stocks and bonds.  She was a commodity.

MR. ZUCKER:  I don't dispute that, but that's what

prostitution is.

THE COURT:  I understand.

I understand.

MR. ZUCKER:  We never contested the fact that there was a pimp-prostitute relationship here.  What we contested is she claimed two charges --

THE COURT:  No, I know what you contested, and the jury disagreed with you.  I mean, that is something I am certainly bound by.

MR. ZUCKER:  All right.  Well --

THE COURT:  A 15-year mandatory minimum.  So the question is, is it worse than that?  I mean, my hands are tied on that.

MR. ZUCKER:  I'm not -- yes, I agree they are.

And that's what I'm asking you, is to recognize --

THE COURT:  Are you asking me to recognize his beneficence?

MR. ZUCKER:  There is some of that, but that's not the overwhelming mitigating factor here.

I think the more mitigating factor is, there was violence in the relationship, but I think Olga and the other person involved both acknowledge that that was part of the relationship between them, there were other intimate relations that were going on at the same time.  Was it part and parcel of the same thing?  Yeah, it was probably

interrelated.  But there was not violence or force to say, you're going out and committing prostitution acts for my benefit; and if you don't, you're going to get beat; if you don't, you're going to get shot.

Even S.B. acknowledged that the whole thing about slow night, you know, pointing the gun on the bed and slow night, I forget exactly what it was, slow night or -- something about slow night was kind of a joke to her, she didn't take that seriously.  And he posted it as kind of a joke.  And for the government to try and misrepresent to the Court that that was a real threat, that she was only involved in prostitution for fear of being shot is just to misrepresent the truth here to.

I know the Court has seen -- as with many people, you know, there's people who commit criminal acts that are more than just the commission of the act, and I think a lot of that came through in the letters from the family, and there are family here to support Mr. Armstead.

Despite whatever shortcomings he had and his involvement in this case and involvement in prostitution, he was a loving, devoted, supportive father to his children. That comes through, across clear.

I was particularly touched by the letters that talked about how he had been hardworking and lost the job and it was only when he lost the job and became depressed

that he seems to have gotten involved in criminal activity and fast money.  And then that was not -- I guess it was a choice, but it was a choice made under, for lack of a better word, duress, and obviously it went too far.

For all those factors and because I think based on his past -- I mean, admittedly, his criminal involvement was long here, but it was -- prior to that, there was none.  And so I think we have a fair sense that he's somebody who's likely, after serving 15 years, to not be involved in criminal conduct, to return to being a law-abiding citizen, to return to being a supportive parent, as he had been throughout.  And I guess because of that -- or that's one of the factors.

And because I, frankly, was troubled by the verdict in this case.  The one thing that when Olga said that there was not -- the force, the fraud, the violence was not connected with the prostitution, that she made a choice to enter into it.

THE COURT:  You keep saying that, and I keep telling you that's not accurate because --

MR. ZUCKER:  Well --

THE COURT:  -- the jury said otherwise beyond a reasonable doubt.

I mean, just for example, she testified that he choked her in connection with arguments about how much money

she did or did not make on a particular night.  He slapped her in connection with how much money she did or did not make on a particular night.

Did he choke her and say, you need to go out tonight and make us some money?  No, you're right, there was no such testimony.  But I'm not sure --

MR. ZUCKER:  But also when she asked were the threats, was the violence directed to getting you to be involved in prostitution?  She said no, he never threatened me to be involved in prostitution.  There might have been dispute about money and fights about money.

THE COURT:  You know the interesting thing about her?  You know, I'd be curious what your thoughts are because you've been doing this for a very long time.

MR. ZUCKER:  Not these kind of cases.

THE COURT:  I know.

But I've never seen a witness as hollowed out as she was.  And that's the only way I can describe her.  She was hollowed out.  She had flat affect.  She was -- couldn't answer simple questions.  I mean, she was a shell of a human being.

Now, I'm not saying it was all attributable to Mr. Armstead, I'm not suggesting that at all, because he only knew her for three months.  She had had a past.  I don't know what happened to her in her childhood, et

52

cetera.  But it was really quite striking.

And, again, I want to be clear that I understand that their relationship was only three months long.

MR. ZUCKER:  Right.

THE COURT:  But it was striking to anybody that sat there and listened to this testimony, what had become of this woman.

MR. ZUCKER:  What I was struck by, frankly, was like a persistent tremor.  She seem to be shaking the entire time she was in the courtroom.

THE COURT:  Right.

MR. ZUCKER:  I don't disagree with that.

But what that reflects, I'm not sure.  But as you've pointed out, whatever happened with him had happened years before and was only a small part of her life that made her that way.

She also seemed to be remarkably accomplished. I mean, she was the one that went on and got a degree and was getting an advanced degree in some kind of -- in the medical field.  And I was happy for her that she seemed to be on a much better path.  She certainly --

THE COURT:  No, she certainly had overcome a lot.

MR. ZUCKER:  Yeah.

And how much of that is stuff that preceded her in childhood, I don't know.  From when she spoke, it seemed

53

like she described coming from a relatively stable two-parent home and going to high school and having a fairly normal childhood.  I was -- how she ended up in this, I don't know.  But that all preceded Mr. Armstead and you can't put that all on him --

THE COURT:  I'm not.

MR. ZUCKER:  -- and I know you're not going to.

I guess the last point I was trying to make at the end was to have somebody who in his past had been a productive member of society, a hard-working, honest person.

He obviously slipped off the track significantly. And he was involved in marijuana distribution before this and then it parlayed into the prostitution.

But I think there's a high probability that after serving 15 years when he comes out in his mid 40s, he's going to be a different person, and he's not -- he's not somebody that needs to be locked up for the 30 years the government is requesting.  Frankly, I don't think he needs to be locked up for 15 if you want my opinion but the law requires you to do that.  So I'm asking you to go down to the 15 as being sufficient but not more than is necessary in the case for all the factors that we discussed and all the other ones I know you're aware of.

And there was one other point but I can't remember what it was.

54

A moment to consult, please.

THE COURT:  Of course.

(Counsel conferred with the defendant off the record.)

MR. ZUCKER:  I guess for all those reasons and the other reasons that are put forth by the family in the letters, I'd ask the Court to be as lenient as you can be, which I think is already, with all due respect under the law, unduly harsh.

Apparently, there's some disagreement between you and me about this, but I believe, based on everything that the jury did not -- it clearly seems to smell of a compromise to me, okay?  And I think -- and I don't know how you factor that in the sentencing analysis.  But I think we also have to look at the context under which this conviction occurred.  And I think we all remember this was the day --

THE COURT:  I remember it well.

MR. ZUCKER:  We were.

THE COURT:  I remember it well.

MR. ZUCKER:  There was haste involved in reaching this verdict based on all the surrounding circumstances of the pandemic and having to leave.

THE COURT:  I'm not so sure I agree with haste. I remember they were out for five days.

MR. ZUCKER:  They were.  And all of a sudden, they

reached a verdict, I know on one out of five counts.

THE COURT:  Let's be clear.  We don't know when they reached the verdict on this particular count.

MR. ZUCKER:  True.

THE COURT:  What we know as a matter of chronological fact, because I've actually been going over this, is they were out for five days.  That Friday afternoon, concerns were arising about what was going to happen given the pandemic, COVID, schools were shutting down, the building was getting limited, and they had been at it for five days.

MR. ZUCKER:  Right.

THE COURT:  And we were down to 11 jurors.  We had 11 jurors.  And on Sunday, Mr. Douyon got a text message from the foreperson saying, I'm not coming in on Monday, and that's how we ended up taking the verdict the way we did.

MR. ZUCKER:  And I think we took a verdict, one juror didn't come in.

THE COURT:  She was there via Zoom.

MR. ZUCKER:  She was what?

THE COURT:  She was there via Zoom.

MR. ZUCKER:  Yeah.

THE COURT:  Or whatever.  FaceTime.  FaceTime.

MR. ZUCKER:  Right.

THE COURT:  Anyway.

MR. ZUCKER:  Anyway, so I think that throws a cloud over this whole verdict.

I don't know how you, as a judge, are supposed to interpret that.  And I guess you have to, frankly, ignore it and impose a sentence.

But given all those factors, I'd ask the Court to be as -- to impose a sentence of 15 years as being sufficient.

THE COURT:  Okay.  Thank you, Mr. Zucker.

Does Mr. Armstead want to be heard?

MR. ZUCKER:  Please.

Up here, right?

THE COURT:  Yes.

THE DEFENDANT:  How are you doing, Your Honor?

THE COURT:  I'm good, Mr. Armstead.  How are you?

THE DEFENDANT:  I'm fine.

THE COURT:  You can remove that if you feel more comfortable.

THE DEFENDANT:  I just want to let you know I understand I made a lot of bad decisions in the past.  And I've learned that I want to go down a more progressive road if I'm released back into society whenever, you know.

I definitely don't want to go back down the path that I went down, and I understand the mistakes that I made even dealing in prostitution in the first place.

I just want to get back to my family and be a productive member of society.  Thank you.

THE COURT:  All right.  Thank you, Mr. Armstead.

Okay.  Let's just take about a ten-minute break and I'll be right back, everybody.  Thank you.  No need to stand.

COURTROOM DEPUTY:  The Court stands in recess.

(Recess from 5:05 p.m. to 5:20 p.m.)

THE COURT:  Please be seated, everyone.

Okay.  Let me just begin where I'm required to, and that is with the Guidelines calculation.

For case 18-CR-357, which is the gun trafficking and felony -- it's the conspiracy and felon-in-possession case, I should say, those two counts essentially, the calculation is the same.  It's under 2K2.1.  The Base Offense Level here is a 20 because the firearms were capable of accepting large-capacity magazines.

An additional four levels is included for the fact that those two weapons had obliterated serial numbers, an adjusted offense level of 24.

This is where I'm going to include acceptance, although I'm not exactly sure where it is supposed to be included here, but for a total offense level of 21.

With respect to the violation of 1591(a)(1) and (b)(1) for sex trafficking through fraud, coercion, or

force, 2G1.1 is the relevant Guideline.

And I should have added, with respect to the conspiracy in the prior one, the 2K2.1 is the cross-reference, just to be clear.

The Guideline is 2G1.1. Base Offense Level is a 34. As I said earlier, I do believe that two points should be added for the obstruction, and so for a total offense level of 36.

The highest count group there is for the sex trafficking offense. So the highest level is 36. There are no additional levels added because only one unit -- there's only one unit, and no additional units because the two groups are greater than nine levels. So there's only one unit increase. And because there's only one unit, there's no additional levels added. So it's still a 36. That results in a Guidelines Range of 292 to 365 months.

Count 1 carries a five-year maximum penalty, so the Guidelines for Count 1 are actually 60 months. Count 3 and the trafficking case is a maximum of ten years, so the Guidelines is 120 months or a maximum 120 months.

And for Count 2, the mandatory minimum is 180 months or 15 years. The Guidelines Range is 40,000 to $400,000.

In addition, I must consider all the factors set forth in 18 U.S.C. 3553(a) and impose a sentence that's

sufficient but not greater than necessary to achieve the objectives of sentencing.

And so I must consider the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense, to afford adequate deterrence, to protect the public, and to provide the defendant with needed educational or vocational training or medical care.  I also shall consider the need to avoid unwarranted disparities.

The nature and circumstances of the offense have been discussed at length here.  The gun case, in some sense, is straightforward.  Mr. Armstead had purchased two semi-automatic weapons in late June of 2018.  He was part of a conspiracy in which other people went into the state of Virginia and, under false pretenses, purchased those weapons, his weapons, and others.

He also assisted another person in assisting -- in obtaining a weapon through that same conspiracy.  While he was incarcerated, those two weapons, he directed that they be stashed in somebody's home so it wouldn't be found in his own residence when a search warrant was executed. Ultimately they were found and associated with Mr. Armstead. Those are the facts of the gun case.

With respect to the trafficking case as to Olga herself, we've talked about this a fair amount. It was a three-month period, which he first made contact with her in June of 2018. She was in a bad situation with a pimp in Ohio. Among other things, he would not feed her. And through direct messaging in Instagram, Mr. Armstead convinced her to leave her current situation, essentially come to work for him.

Whether the circumstances were fraudulent or not, I think, is less relevant than the other factors here, because I do think Mr. Armstead essentially promised her a better life, and I guess it's all in the eye of the beholder what a better life really is in those circumstances.

He did transport her within Maryland, D.C., New York, to various strip clubs, where she would work not only dancing but also engaging in commercial sex acts with customers at those clubs. She testified she would charge $500 a night. She also testified that Mr. Armstead imposed strict rules upon her. Those rules were detailed in the Presentence Report. He also pressured her, as that email -- as the text-message chain that I read from in the -- that was entered into evidence showed, pressuring her even when she was physically unfit to do so.

You know, the defense, as I mentioned, and we've talked about this, Mr. Zucker, suggested this was a

61

compromised verdict.  Who's to say?  What I can say is as follows, is that a jury determined beyond a reasonable doubt that Mr. Armstead engaged in forced and coerced sexual trafficking in connection with Olga during the three months that she was with him.

I just want to reiterate what I said earlier about Mr. Armstead.  I don't know what she was like when she was with you, but the young woman that was here in this courtroom was a shell of a human being.  I'm not saying, again, that you are fully responsible for that.  You're not.  She undoubtedly had a lot happen in her life before she ever got to you.  But the time with you surely did not help, and, I think, is illustrative of the impact that this lifestyle can have on people and young women who find themselves in the situation that she did.

Let me just say the following.  For a variety of reasons, I'm not sure we got the full flavor of what the time was like with Mr. Armstead through Olga.  But what we did get was the following.  As I said earlier, she testified to being choked, almost to the point of being passed out, bruises on her, he slapped her.  There were physical incidents between the two of them, oftentimes in connection with arguments involving money.  That in and of itself, and I'm sure that's what the jury concluded was the force and coercion that caused her to continue to engage in sex

traffic.  He had taken, by her own testimony, her keys and Social Security card, which to her meant that she could not easily leave, although ultimately to his credit, he did allow her to leave.

The guns.  Testimony was that he pointed them at her.  Interestingly enough, she had mixed feelings about it as part of her testimony, which was an odd response, but, nevertheless, he was pointing guns at her.  I can't imagine that there was a good reason to do that.

You know, this is a relationship, Mr. Armstead, that no one should have to endure and suffer, no one.  And as with the other women that I'll talk about in a moment, and I said this the other day at Mr. Gray's sentencing, this kind of conduct dehumanizes them, it takes away their fundamental being of who they are and what they can do.

And whatever the reasons are that they ended up in those circumstances, your conduct made it worse.  It took a really -- it took women who were in bad situations and made it extremely -- it made it far worse for them.

And not just in those years where this was happening.  This has a long tail.  For their lives, these women will be scarred.  Particularly the 16-year-old, they will be scarred by the time they spent with you, things that you had them do.

And, you know, I don't know to what extent,

Mr. Armstead, the time you've been in prison and you've had a chance to think about it has made you realize that.  But that is the truth, it's just the truth, that this behavior, this kind of activity not only hurts these women but it hurts society at large.

You are taking young women, putting them into a sex trade.  And when you do that, it not only hurts them but it hurts everyone around them, it hurts our communities.  And for what?  So you don't have to make an honest living and you can make a buck this way because it's easier?  I don't know if it's easier, but maybe you make more money doing that.

The guns here are a real problem.  I mean, you know, I can't -- at a minimum, we're talking about four guns.  And the two dozen from Virginia and "the twins," as they were called, semi-automatic weapons, that have, in my view, only one real purpose, and that is to kill people, or, in this case, to threaten them into continuing -- and maybe protect them, fair enough, probably used also to protect them in this case.

But, nevertheless, at a time that you had already twice been convicted in your past as an adult for having guns and engaging in behavior involving weapons, you had two weapons offenses at that point when all this was happening.  You were on supervision when all of this was happening for

human trafficking involving some of these same women.

And, you know, I don't like to -- there's sort of a disregard of everyone, it seems to me, other than, perhaps, your own family, for the young ladies that were around you, for the court system, and that you had bought into this notion of a glorified life.

I mean, your nickname, Supreme, you know, I assume it's associated with the brand that has -- its such an extraordinarily ridiculous value because of the scarcity of the product.  It all just is the kind of conduct that really we cannot accept and that can't go without serious punishment.

And Congress has already made the decision here.  I mean, at a minimum, it's 15 years.  At a minimum, it's 15 years.  You know, I am -- and that's just for Olga.

And I am permitted to take into account what happened with these other women, even though they are -- at least with respect to Sadie, it wasn't conduct that you were ultimately convicted of.  But I heard the evidence.  And whether 12 people could come to an agreement or not, it certainly reflects on your dangerousness and it reflects on the way you were living and perhaps is a prediction of how you might live if there's a shorter sentence.

You know, she was 16 and I think you knew that, you understood that and you took advantage of it.  And you

also took advantage of the other women, they were older than 16, but they had drug problems, they had other problems, and put them in a life where they were using their bodies for money.  And it is just -- it's hard to describe and get your head around why somebody would do that.  It's not a one-time mistake or bad judgment, it's a lifestyle decision and one that, but for your arrest in this case, I have no doubt would have continued.

I've considered your history and characteristics. You know, I know you were born to a young mother, I understand what her background was, what that meant in terms of what you grew up with, given what her occupation was at a young age and what she probably had to do to make ends meet, could not have been easy.

I give you credit for being a good father.  You've got family members here and people who wrote in to attest to that.

You know, how much of mental health issues were driving your behavior, it's hard to know, but I've taken that into account.

But the thing that always -- I find really hard to get my head around in these cases is how well your family members have spoken of you when it comes to them and the people you love and how that doesn't then translate into a realization that the people, these young women, the way you

treated them wasn't commensurate with the way you want yourself to be treated and how you would like your own family members to be treated and how you treat them.

I mean, I was really quite stunned at the transcript, I don't think I'd seen it before, between you and Ms. Gray, talking about Sadie as if, as I said, as if she was a commodity, get her back out on the streets so I can get more money on my phone.

You know, you've got young children. I can't imagine you want anybody thinking of your children in that way, and yet you were doing that yourself to somebody else's children.

You know, your counsel has suggested that -- you know, I'm quoting here -- you don't fit the archetype of a person who will commit new criminal offenses or recidivate. I respectfully disagree.

18 years old, convicted of a conspiracy to commit armed robbery and a gun offense. By March of 2015, you're involved with Sadie. Felon in possession at 24 in Virginia, also in connection with trafficking.

Also a gun possession charge. You get released from that in September of 2016. And then at 26 years old, following 2017, you're arrested again -- or you're arrested for human trafficking. So this is the conduct that's already preceded you. You've had some close calls with the

law, but it's still going on.

You finally get out from under the Maryland sentence and you continue on with the conduct, and we know it begins again with Olga in June of 2018.

So, you know, by the time you are already before me, we're talking about one violent felony, now three gun-possession or gun-related offenses, and, really, four if you include the trafficking offense, although there was no gun enhancement or there undoubtedly could have been. And now a second trafficking-related offense, all within sort of a 12-year span. It doesn't give me a lot of confidence that you are the archetype of a person who will not commit new criminal offenses or recidivate.

I think the sentence clearly needs to reflect the seriousness of the offense to promote respect for the law. I think it needs to clearly send a message to deter not only others but you after you are released.

And I didn't even mention, you know, that while you're incarcerated, you are attempting to influence -- say actually, not attempting, you did influence what Sadie ultimately had to say to law enforcement. You know, I think it's just further evidence of just kind of a general disregard of -- general disregard.

I think what I've struggled with in trying to come up with a sentence that I think is fair is, you know,

Mr. Zucker makes the point that 30 years is commensurate with a first degree homicide charge.  And there's not a lot of benefit here, it seems to me, to be thinking about, well, what's worse?  But you did not take a life, and you didn't so in a premeditated fashion.  So, you know, I tend to agree that that benchmark is an important one to think about when it comes to what the appropriate sentence is.

Neither side has cited any statistics or comparable cases.  I did sentence Mr. Gray the other day to 120 months, so I've certainly kept that in mind.

I did look at some statistics from the Sentencing Commission.  They're not that helpful ultimately for 2G1.1. For the last five years nationwide, there were only 29 such reported cases, the average sentence was 140 months, the mean was 84 months.

The problem with that in deriving any real meaning out of this is because of the Base Offense Level and that Guideline is either a 34 or a 14.  And it's quite clear from these statistics that most of the people that are getting sentenced under this Guideline have the 14 Base Offense Level and not the 34.  And you can tell that by the fact that the average is so much higher than the mean.

So here's where I come out.  I do think, given the full body of evidence here that includes not just the conduct with respect to Olga but the purchase of the two

guns, the conspiracy, the additional two guns that were involved in this case, everything I've heard about your operations over the course of those years and the way these women were treated, the sentence of the Court is going to be 276 months.  That comes out to 23 years.

I ended up there because what it means is essentially is that you will serve 20 years even with credit for good time.  It means you'll probably be out around the age of 50.  That's a long time.  It's a long time.  And to your family, I'm sorry, but I think it's a warranted sentence given everything we've heard and the conduct.

And, frankly, luckily nobody was hurt even more. With those kind of guns, the kind of circumstances you put yourself and others in, the fact that one of those weapons was not fired and not fired at someone is, frankly, in my view, nothing short of a miracle.

So it is the judgment of the Court that you, Mr. Armstead, will be committed to the custody of the Bureau of Prisons for concurrent sentences of 60 months on Count 1 and the gun case, 60 months on Count 3 and the gun case, that's 18-CR-357, a term of 276 months for Count 2 in 19-CR-367.  All of those counts will run concurrent with one another, for an aggregate sentence of 276 months.

You are further sentenced to serve concurrent terms of supervised release of 36 months on Counts 1 and 3

of the 18-CR-357, as well as 20 years in Count 2 in 19-CR-369.  So a 20-year total, life term, of supervised release.

In addition, you are ordered to pay a special assessment of $300 to the Court for these offenses.

While on supervision, you shall abide by the following mandatory conditions, as well as the standard conditions of supervision which are imposed to establish the basic expectations for your conduct.  They include not committing any federal, state, or local crime, not unlawfully possessing a controlled substance, refrain from unlawful use of a controlled substance.

You must submit to one drug test within 15 days of placement on supervision and at least two periodic drug tests thereafter as determined by the Court.

You must cooperate with the collection of DNA.

You must make restitution in the amount that I've already stated at the start of this hearing pursuant to 18 U.S.C. 3663 and 3663(a).

You also shall comply with the requirements of the Sex Offender Registration and Notification Act as directed by the Probation Office or the Bureau of Prisons or any state sex offender registration agency in the location where you reside, work, or are a student or are convicted of a qualifying offense.

71

In addition, the following special conditions will apply:

Sex offense assessment.  You must participate in a sex offense specific assessment.  You must pay a percentage of the costs of the assessment as determined by the Probation Office.

Also, sex offender treatment.  Follow the rules and regulations of that program.  The probation officer will supervise your participation in the program.  You must pay a percentage of the cost of the program as determined by the Probation Office.

Also submit to periodic polygraph testing at the discretion of the Probation Office as a means to ensure that you're in compliance with the requirements of your supervision.

You also shall allow the Probation Office to install computer-monitoring software on any computer that you may use.

You also shall submit your computers or other electronic communications or data storage devices or media to a search.  You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition.

A probation officer may conduct a search pursuant

to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of the violation. Any search will be conducted at a reasonable time and in a reasonable manner.

Also shall submit to substance abuse testing to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

You also shall participate in an educational-vocational services program and follow the rules and regulations of that program. Any such program may include job readiness training and skills-development training.

You don't have the ability to pay a fine, and therefore I waive the imposition of a fine in this case. I also will waive imposition of any interest payments.

I also find that you don't have the ability to pay a $5,000 assessment pursuant to the Justice for Victims of Trafficking Act, and therefore waive imposition of that assessment.

Financial obligations are immediately payable to the Clerk of the Court in the U.S. District Court for the District of Columbia.

Within 30 days of any change of address, you shall notify the Clerk of the Court of the change until such time

as the financial obligation is paid in full.

The Probation Office shall release the Presentence Investigation Report to all appropriate agencies, which includes the Probation Office in the approved district of residence in order to execute the sentence of the Court.

Treatment agencies shall return the Presentence Report to the probation officer upon the defendant's completion or termination from treatment.

I also will ask the Probation Office to notify me, it very well may still be me, for a re-entry hearing for Mr. Armstead within 30 days of his release.  I'll also require him to perform 200 hours of community service.

Mr. Armstead, when you are on supervision, the hope is that you will take advantage of the resources that are going to be made available to you to reintegrate into the community and to reintegrate into society.

I will recommend placement at Fort Dix, which has been requested by the defendant, as well as recommend programs including the occupational education services -- or Occupational Education program, the Federal Prison Industries program, the Residential Drug Abuse Program, and the parenting program, as well as sex offender treatment program of nonresidential variety.  So that is the sentence of the Court.

Any objections that either side would like to put

on the record?

Oh, hang on.

Mr. Armstead, you have the right to appeal the sentence that's imposed by this Court if the period of imprisonment, at least with respect to the gun charge, is longer than the statutory maximum or the sentence departs upward from the applicable Sentencing Guidelines Range.  If you choose to appeal, you must file an appeal within 14 days after the Court enters judgment.

As to the count on which you were convicted, you have the right to appeal the verdict and sentence.  If you choose to appeal, you must file any appeal within 14 days after the Court enters judgment.  If you are unable to afford the cost of an appeal, you may request permission from the Court to file an appeal without cost to you.

You also have the right to challenge the conviction that's been entered or the sentence imposed if new and currently unavailable information becomes available to you or if you believe you have not received effective assistance of counsel either in connection with entering your guilty plea or in connection with your sentencing.  If you are unable to afford the cost of an appeal, you may request permission from the Court to file an appeal without cost to you.

All right.  With that, are there any -- let me

75

ask:  Have we dismissed the other charges of the indictment?

MS. LARSON:  The government moves to dismiss those charges at this time.

THE COURT:  Okay.  So those charges of the indictment will be dismissed.  I can't remember if it's 1 and then 3 through 8?

MS. LARSON:  I believe that's correct, Judge.

THE COURT:  Okay.  In any event, all the charges of the indictment other than the count of conviction will be dismissed.

Mr. Zucker, any objections you want to make on the record before we adjourn?

MR. ZUCKER:  No, Judge.  Thanks.

THE COURT:  Okay.

I also need a restitution payment rate.  We'll just start at $50 a month.

MR. ZUCKER:  Can that be suspended until he's released from incarceration?

THE COURT:  I don't know if the statute permits that.

PROBATION OFFICER:  Your Honor, if the Court does that, then he's not going to be able to participate in prison programming such as the Federal Prison Industries program, Occupational Education.  Those require for that to be in order, Your Honor.

MR. ZUCKER:  Hang on one second, Judge.

THE COURT:  I mean, in other words, he has to have a restitution order to qualify for those programs; is that right?

PROBATION OFFICER:  Not exactly, Your Honor.

In a case where he has a restitution order, he has to agree to make payments while he's in prison on that restitution, even though they're nominal payments, to be able to participate in prison programming.

THE COURT:  Okay.  I understand.

PROBATION OFFICER:  Yes.

THE COURT:  Mr. Zucker.

MR. ZUCKER:  They pay something like a dollar or day or something crazy like that.  So I'd ask that it be set at a lower rate.

I mean, I know it's not going to eat up much, but it's 20, 25 a month.  Because otherwise he's -- if he does participate in Prison Industries, and I can't remember the numbers off the top of my head, but it's well, well, well below anything close to minimum wage.

THE COURT:  All right.  We're talking about a nominal amount anyway.

MR. ZUCKER:  Right.

THE COURT:  So why don't I set it at $25 a month.

MR. ZUCKER:  All right.

THE COURT:  And so I won't suspend it during the time of incarceration, but it will be set at $25 a month.

All right.  With that, is there anything else?

MS. LARSON:  No, Your Honor.

THE COURT:  Okay.

MR. ZUCKER:  A moment to consult, please.

For record purposes, he will be filing, I will take care of it.

THE COURT:  Okay.

Mr. Armstead, good luck to you, sir.

Thank you, everyone.

COURTROOM DEPUTY:  All rise.

This court stands in recess.

(Proceedings concluded at 5:51 p.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date:__September 15, 2022___

William P. Zaremba, RMR, CRR

COURTROOM DEPUTY: [4] 3/2 3/5 57/7 77/12
MR. ZUCKER: [61] 3/24 5/7 5/16 5/21 5/25 7/10 9/4 13/9 14/6 14/11 14/15 17/11 19/6 19/25 20/6 20/11 21/1 26/2 27/12 28/2 28/23 35/2 35/7 43/1 46/19 46/23 47/1 47/19 47/22 47/25 48/4 48/10 48/14 48/18 50/21 51/7 51/15 52/4 52/8 52/12 52/23 53/7 54/5 54/18 54/20 54/25 55/4 55/12 55/17 55/20 55/22 55/24 56/1 56/11 75/13 75/17 76/1 76/13 76/23 76/25 77/6
MS. HUTSON: [3] 20/17 20/23 21/15
MS. LARSON: [31] 5/6 6/12 6/25 7/9 7/19 8/22 10/15 13/4 18/13 22/8 22/12 28/21 29/1 29/17 30/12 30/14 31/21 32/20 32/24 33/3 34/5 34/8 35/11 35/14 37/1 37/3 37/25 38/3 75/2 75/7 77/4
PROBATION OFFICER: [9] 9/22 10/2 10/5 30/2 30/5 30/8 75/21 76/5 76/11
PROBATON OFFICER: [2] 9/16 9/24
THE COURT: [110]
THE DEFENDANT: [3] 56/14 56/16 56/19

**$**
$1,000 [5] 14/24 15/2 15/7 15/9 27/3
$1,200 [1] 22/15
$20,000 [3] 25/18 25/19 25/23
$25 [2] 76/24 77/2
$3,000 [1] 25/21
$3,012 [1] 25/22
$300 [1] 70/5
$400,000 [1] 58/23
$5,000 [1] 72/18
$50 [1] 75/16
$500 [11] 22/19 25/10 25/16 25/18 26/25 27/7 27/23 27/25 28/11 28/15 60/18
$632 [1] 25/22

**0**
0784 [1] 1/20

**1**
1,000 [1] 14/21
1,200 [1] 25/20
1-0 [1] 5/14

100 [1] 19/19
102 [3] 4/22 15/2 15/16
103 [2] 4/23 29/24
106 [4] 14/24 16/10 16/11 22/13
107 [1] 6/22
107-1 [1] 6/15
108 [2] 6/22 16/7
109 [1] 16/7
11 [2] 55/13 55/14
12 [1] 64/20
12-year [1] 67/11
120 [4] 16/10 58/20 58/20 68/10
135 [1] 14/25
138 [1] 23/14
14 [4] 68/18 68/20 74/8 74/12
140 [1] 68/14
145 [1] 4/24
146 [1] 4/24
148 [1] 4/25
148-1 [1] 5/3
149 [1] 6/20
15 [16] 1/5 29/17 30/15 38/24 41/7 41/14 50/9 53/15 53/19 53/21 56/7 58/22 64/14 64/14 70/13 78/7
15 years [1] 45/15
15-year [2] 30/23 48/11
1591 [1] 57/24
15th [2] 25/5 25/6
16 [6] 34/22 34/25 35/19 36/4 64/24 65/2
16-year-old [6] 35/15 35/17 35/23 37/10 37/16 62/22
16th [2] 19/21 19/24
18 [1] 66/17
18 U.S.C [2] 58/25 70/19
18-357 [2] 1/4 3/6
18-CR-357 [3] 57/12 69/21 70/1
180 months [1] 58/22
19 [1] 38/8
19-369 [2] 1/4 3/7
19-CR-367 [1] 69/22
19-CR-369 [1] 70/2
199 [1] 12/21
1B1.3 [1] 10/21

**2**
20 [4] 57/16 69/7 70/1 76/17
20-year [1] 70/2
200 [2] 1/19 73/12
20001 [1] 2/6
20002 [1] 1/19
20017 [1] 1/15
2015 [10] 36/1 36/21 37/1 37/2 37/25 38/5 38/21 38/23 40/21 66/18
2016 [2] 19/21 66/22
2017 [2] 36/25 66/23

2018 [1] 19/24 20/2 20/3 21/25 23/10 24/17 24/25 25/3 31/17 31/17 39/2 39/9 39/13 40/23 59/15 60/4 67/4
2019 [1] 17/21
202 [3] 1/15 1/20 2/6
2022 [2] 1/5 78/7
21 [1] 57/23
23 [1] 69/5
239 [1] 11/9
24 [3] 23/8 57/20 66/19
2429 [1] 21/18
24th [1] 17/21
25 [1] 76/17
252-7059 [1] 1/15
26 [1] 66/22
264 [2] 29/23 30/1
276 [3] 69/5 69/21 69/23
27th [2] 24/25 25/6
28,644 [1] 25/24
29 [1] 68/13
290-something [1] 30/11
292 [3] 8/15 29/11 58/16
2G1.1 [3] 58/1 58/5 68/12
2K2.1 [2] 57/15 58/3

**3**
30 [2] 53/17 68/1
30 days [2] 72/24 73/11
30-year [1] 42/4
3249 [1] 2/6
333 [1] 2/5
34 [3] 58/6 68/18 68/21
348 [1] 30/6
354-3249 [1] 2/6
3553 [2] 30/14 58/25
357 [5] 1/4 3/6 57/12 69/21 70/1
36 [5] 8/14 58/8 58/10 58/15 69/25
360 [4] 8/14 29/8 36/16 42/22
365 [2] 8/15 58/16
3663 [2] 70/19 70/19
367 [1] 69/22
369 [3] 1/4 3/7 70/2
37 [1] 1/18
38 [1] 8/14
39 [2] 14/19 15/12
3:40 [1] 1/6

**4**
40 [4] 15/19 25/8 25/9 25/18
40,000 [1] 58/22
40s [1] 53/15
43 [1] 16/19

**5**
50 [1] 69/9
52 [1] 22/14

5:05 [1] 57/8
5:20 [1] 57/8
5:51 [1] 77/14

**6**
60 [3] 58/18 69/19 69/20
624-0784 [1] 1/20

**7**
7059 [1] 1/15
73 [2] 15/4 15/16
78 [1] 15/24
79 [1] 15/24

**8**
80 [2] 15/2 25/8
80 days [1] 25/6
800 [1] 25/20
84 [1] 68/15

**9**
94 [1] 11/10
943 F.2d [1] 11/10
978 [1] 11/9

**A**
abide [1] 70/6
abiding [1] 50/10
ability [2] 72/14 72/17
able [3] 8/3 75/22 76/9
about [54] 8/21 12/7 15/25 15/25 18/4 20/21 22/14 22/15 22/16 23/17 24/11 26/10 31/25 32/19 33/13 33/13 33/13 33/15 33/21 34/6 34/15 36/2 37/7 37/12 37/17 40/5 40/8 41/5 45/8 45/11 47/6 49/5 49/8 49/24 50/25 51/11 51/11 51/12 54/11 55/8 57/4 60/2 60/25 61/6 62/6 62/12 63/2 63/14 66/6 67/6 68/3 68/6 69/2 76/21
above [1] 78/4
above-titled [1] 78/4
absolutely [1] 45/7
abuse [6] 31/3 33/15 36/20 39/1 72/6 73/21
abused [1] 42/18
abusive [1] 45/21
accept [1] 64/11
acceptance [1] 57/21
accepting [1] 57/17
access [2] 8/2 8/3
accessing [1] 71/22
accidentally [1] 42/8
accomplished [1] 52/17
account [2] 64/16 65/20
accountable [2] 10/21 43/11
accurate [1] 50/20
achieve [1] 59/1

knowledge [1] 48/22
acknowledged [3] 43/20 46/3 49/5
acknowledgment [1] 9/20
acquitted [2] 31/14 43/11
across [2] 33/12 49/22
act [11] 11/11 11/12 11/14 11/19 25/17 27/3 27/6 28/11 49/16 70/21 72/19
activity [2] 50/1 63/4
acts [10] 21/9 24/13 26/4 26/7 26/21 26/25 47/10 49/2 49/15 60/16
actual [3] 18/22 35/4 47/9
actually [8] 18/8 23/15 24/16 27/20 27/23 55/6 58/18 67/20
ad [2] 38/13 38/22
add [4] 10/14 19/4 20/24 25/23
added [6] 17/5 20/5 58/2 58/7 58/11 58/15
addicted [1] 38/9
addiction [1] 36/19
addition [7] 17/1 22/24 25/13 31/23 58/24 70/4 71/1
additional [10] 5/23 6/22 14/13 14/15 22/25 57/18 58/11 58/12 58/15 69/1
address [2] 14/16 72/24
addressed [1] 29/10
adequate [1] 59/8
adjourn [1] 75/12
adjusted [1] 57/20
admission [1] 24/21
admittedly [2] 26/11 50/6
adopt [2] 9/5 31/12
adopted [1] 7/25
ads [2] 35/23 36/8
adult [2] 42/20 63/22
advance [1] 9/13
advanced [1] 52/19
advantage [3] 64/25 65/1 73/14
advertised [1] 35/17
advertisement [1] 38/7
advertisements [2] 35/25 39/3
advertising [1] 39/21
advocate [1] 22/23
affairs [1] 18/5
affect [1] 51/19
afford [3] 59/8 74/14 74/22
African [1] 15/14
African-American [1] 15/14
after [9] 15/25 20/8 39/7 42/17 50/9 53/14 67/17 74/9 74/13

80

**A**

**afternoon [7]** 3/5 3/15 3/16 3/18 5/10 5/18 55/8
**again [15]** 24/18 26/17 34/24 38/24 39/20 40/8 40/16 40/17 41/15 41/20 42/16 52/2 61/10 66/23 67/4
**against [3]** 33/9 33/16 45/10
**age [3]** 10/22 65/13 69/9
**agencies [2]** 73/3 73/6
**agency [1]** 70/23
**agent [1]** 34/14
**aggregate [2]** 30/6 69/23
**agree [9]** 4/6 26/14 32/9 44/23 47/11 48/14 54/23 68/5 76/7
**agreed [2]** 33/2 46/20
**agreement [2]** 29/14 64/20
**ah [1]** 37/22
**ahead [1]** 23/3
**aid [2]** 4/23 4/25
**aided [1]** 2/8
**aim [1]** 16/17
**all [78]** 3/2 3/15 4/7 5/23 6/2 7/11 8/6 8/7 8/8 8/12 10/10 10/13 12/6 12/20 14/3 14/11 18/21 20/11 20/15 25/14 27/12 27/15 28/16 28/18 28/24 31/1 31/5 31/15 31/21 32/4 32/4 32/16 35/8 35/8 35/22 35/24 36/8 36/10 38/2 38/11 39/4 39/23 39/25 40/24 41/7 42/21 43/9 45/25 46/25 48/10 50/5 51/22 51/23 53/4 53/5 53/22 53/22 54/5 54/8 54/16 54/21 54/25 56/6 57/3 58/24 60/12 63/24 63/25 64/10 67/10 69/22 73/3 74/25 75/8 76/21 76/25 77/3 77/12
**all right [6]** 6/2 27/12 28/24 38/2 46/25 76/25
**allegation [1]** 21/4
**allegations [1]** 43/10
**allocution [1]** 43/3
**allocutions [2]** 4/18 28/20
**allow [2]** 62/4 71/16
**allowed [3]** 31/23 35/17 41/21
**allows [1]** 16/6
**almost [1]** 61/20
**alone [1]** 31/13
**already [14]** 5/5 7/5 7/6 11/24 14/12 29/10 38/19 44/12 54/8 63/21 64/13 66/25 67/5 70/18
**also [42]** 6/10 15/3

27/2 27/7 32/21 33/15 37/3 38/4 39/6 39/16 40/13 41/2 43/23 51/7 52/17 54/15 59/10 59/19 60/16 60/18 60/20 63/19 65/1 66/20 66/21 70/20 71/7 71/12 71/16 71/19 72/6 72/9 72/16 72/17 73/9 73/11 74/16 75/15
**although [3]** 57/22 62/3 67/8
**always [1]** 65/21
**am [6]** 17/18 33/7 35/24 48/8 64/15 64/16
**amalgamate [2]** 21/11 21/12
**ambiguous [1]** 16/4
**AMERICA [2]** 1/3 3/7
**American [1]** 15/14
**AMIT [2]** 1/10 3/3
**Amit P [1]** 3/3
**Among [1]** 60/5
**amount [9]** 15/4 22/18 23/5 27/24 28/6 28/17 60/2 70/17 76/22
**Amy [2]** 1/13 3/9
**Amy Larson [1]** 3/9
**amy.larson2 [1]** 1/16
**analysis [2]** 9/5 54/14
**another [5]** 35/1 35/15 45/22 59/19 69/23
**answer [2]** 20/20 51/20
**any [34]** 8/3 10/20 14/5 14/15 14/17 16/13 17/10 20/20 20/22 28/18 28/19 31/9 31/14 45/10 45/10 45/11 46/7 46/7 47/16 68/8 68/16 70/10 70/22 71/17 71/21 72/4 72/11 72/16 72/24 73/25 74/12 74/25 75/8 75/11
**anybody [4]** 13/3 20/15 52/5 66/10
**anything [11]** 4/6 5/4 7/6 8/17 10/13 14/7 19/4 20/25 21/23 76/20 77/3
**anyway [4]** 43/14 55/25 56/1 76/22
**apologize [2]** 5/21 35/2
**apparently [2]** 44/8 54/10
**appeal [10]** 74/3 74/8 74/8 74/11 74/12 74/12 74/14 74/15 74/22 74/23
**APPEARANCES [2]** 1/12 1/25
**appearing [1]** 3/13
**appended [1]** 9/11
**applicable [2]** 12/18 74/7
**application [1]** 18/18
**applies [1]** 10/25
**apply [4]** 12/17 18/21

**appropriate [3]** 13/24 68/7 73/3
**approved [1]** 73/4
**approximate [1]** 13/21
**approximately [1]** 23/10
**April [1]** 36/1
**archetype [2]** 66/14 67/12
**are [61]** 3/18 3/22 4/15 7/1 7/4 8/12 11/5 11/6 11/7 11/18 12/4 13/21 13/23 14/3 24/7 25/19 26/2 28/19 29/8 34/1 34/3 42/9 42/11 42/21 44/2 48/12 48/14 48/16 49/15 49/18 51/13 54/6 56/3 56/14 56/15 58/10 58/13 58/18 59/25 61/10 62/15 62/16 63/6 63/13 64/17 67/5 67/12 67/17 67/19 68/19 69/24 70/4 70/8 70/24 70/24 72/21 73/13 73/15 74/13 74/22 74/25
**area [4]** 12/1 12/9 12/16 25/1
**arguably [2]** 13/15 45/24
**arguing [1]** 41/5
**argument [1]** 7/13
**arguments [4]** 29/6 33/13 50/25 61/23
**arising [1]** 55/8
**arm [1]** 33/12
**armed [1]** 66/18
**ARMSTEAD [62]** 1/6 3/8 3/16 3/21 12/1 12/8 12/14 13/19 14/20 14/23 15/6 15/8 15/13 15/14 15/19 16/9 16/11 16/19 17/6 17/21 18/4 18/7 18/10 19/2 19/18 20/1 21/3 21/9 23/16 24/24 25/15 26/20 27/15 28/5 28/13 33/16 43/16 44/10 44/16 45/2 46/8 49/18 51/23 53/4 56/10 56/15 57/3 59/14 59/24 60/6 60/11 60/18 61/3 61/7 61/18 62/10 63/1 69/18 73/11 73/13 74/3 77/10
**Armstead's [4]** 5/1 12/23 24/21 32/19
**around [5]** 63/8 64/5 65/5 65/22 69/8
**arranged [1]** 38/12
**arrest [2]** 38/3 65/7
**arrested [5]** 36/21 38/4 42/18 66/23 66/23
**arrests [1]** 40/21
**arrived [1]** 36/23
**arrives [1]** 25/1
**as [102]**
**ask [11]** 3/18 7/4 15/5

56/6 73/9 75/1 76/14
**asked [8]** 24/10 27/13 34/13 43/15 44/21 45/5 47/1 51/7
**asking [11]** 7/16 8/12 29/17 29/19 31/19 32/10 36/16 42/21 48/15 48/16 53/20
**aspects [2]** 44/15 45/3
**assessment [9]** 3/24 11/17 13/10 70/5 71/3 71/4 71/5 72/18 72/20
**assistance [1]** 74/20
**assisted [1]** 59/19
**assisting [1]** 59/19
**associated [2]** 59/24 64/8
**assume [1]** 64/7
**assumption [1]** 27/22
**attempt [2]** 17/15 72/8
**attempting [2]** 67/19 67/20
**attest [1]** 65/16
**ATTORNEY'S [2]** 1/14 18/3
**attributable [1]** 51/22
**author [1]** 44/7
**automatic [2]** 59/15 63/16
**available [2]** 73/15 74/18
**Avenue [2]** 1/18 2/5
**average [2]** 68/14 68/22
**avoid [1]** 59/11
**aware [6]** 7/8 12/14 33/18 40/13 41/2 53/23
**away [2]** 45/21 62/14

**B**

**back [20]** 12/6 12/8 14/22 14/24 15/20 21/24 22/16 23/6 23/17 24/9 26/15 26/18 34/13 40/25 42/2 56/22 56/23 57/1 57/5 66/7
**background [3]** 31/25 32/7 65/11
**bad [6]** 11/25 14/23 56/20 60/4 62/18 65/6
**Barrett [1]** 2/5
**Base [4]** 57/15 58/5 68/17 68/20
**based [8]** 7/14 11/13 12/5 27/5 46/11 50/5 54/11 54/21
**basic [1]** 70/9
**basis [3]** 15/18 26/12 26/20
**be [101]**
**bear [1]** 10/10
**beat [1]** 49/3
**became [1]** 49/25
**because [47]** 12/22 13/25 16/3 17/6 17/11 18/10 22/5 22/7 27/25 31/22 36/11 36/12

56/6 73/9 75/1 76/14
**become [1]** 52/6
**becomes [1]** 74/18
**bed [2]** 34/17 49/6
**been [23]** 20/2 22/22 23/24 26/6 28/4 42/18 43/18 46/15 46/17 49/24 50/11 51/10 51/14 53/9 55/6 55/10 59/13 63/1 63/22 65/14 67/9 73/18 74/17
**before [9]** 1/10 28/20 42/3 52/15 53/12 61/11 66/5 67/5 75/12
**begin [3]** 4/13 7/12 57/10
**begins [1]** 67/4
**behalf [1]** 3/12
**behavior [4]** 32/19 63/3 63/23 65/19
**beholder [1]** 60/12
**being [21]** 5/17 16/7 30/23 32/21 34/4 36/7 37/4 41/2 43/13 44/23 49/12 50/10 50/11 51/21 53/21 56/7 61/9 61/20 61/20 62/15 65/15
**believe [11]** 8/1 13/4 29/12 37/1 40/6 40/24 46/11 54/11 58/6 74/19 75/7
**below [2]** 29/19 76/20
**benchmark [1]** 68/6
**beneficence [1]** 48/17
**benefit [4]** 35/18 35/24 49/3 68/3
**better [5]** 46/2 50/3 52/21 60/12 60/13
**between [11]** 12/8 21/10 23/16 25/6 28/7 44/15 45/2 48/23 54/10 61/22 66/5
**beyond [2]** 50/22 61/2
**birth [2]** 37/9 37/9
**bitch [3]** 37/13 37/16 39/17
**blessed [1]** 39/24
**bodies [1]** 65/3
**body [1]** 68/24
**bonds [1]** 47/24
**born [2]** 7/25 65/10
**both [9]** 6/11 6/17 7/2 11/10 26/4 28/1 28/7 33/17 48/22
**bottom [2]** 39/17 45/4
**bought [2]** 47/23 64/5
**bound [2]** 45/13 48/9
**boyfriend [1]** 18/1

**B**

brand [1] 64/8
break [1] 57/4
breaking [1] 16/13
brief [2] 8/9 23/8
briefly [1] 21/15
bring [1] 42/10
brought [2] 14/24 38/9
bruise [1] 33/11
bruises [1] 61/21
buck [1] 63/10
building [1] 55/10
bunny [1] 40/3
burden [2] 23/4 24/18
Bureau [2] 69/19 70/22
business [1] 23/9

**C**

calculated [1] 21/19
calculation [9] 17/3
20/14 22/19 22/24
24/23 27/10 31/11
57/11 57/15
calculations [1] 20/21
call [4] 17/6 30/25
37/23 41/22
called [6] 11/8 17/22
34/4 41/3 41/20 63/16
calling [1] 37/15
calls [4] 36/15 36/22
41/4 66/25
came [7] 7/22 7/25
12/16 18/2 42/3 47/13
49/17
can [21] 6/14 6/15 6/16
14/5 14/9 20/18 22/4
31/9 33/24 36/3 39/18
51/18 54/7 56/17 61/1
61/14 62/15 63/10 66/8
68/21 75/17
can't [13] 12/9 21/10
21/12 28/3 31/2 53/5
53/24 62/8 63/14 64/11
66/9 75/5 76/18
candor [1] 14/11
cannot [2] 31/2 64/11
capable [2] 57/16
71/22
capacity [2] 24/11
57/17
captioned [1] 34/20
card [1] 62/2
care [5] 33/5 35/7 44/1
59/10 77/8
cared [1] 43/25
caring [1] 43/24
carries [1] 58/17
case [51] 3/6 6/5 7/21
8/8 11/8 12/18 12/24
13/18 29/3 29/13 29/20
30/1 30/5 30/16 30/18
30/22 30/25 32/14 34/1
34/2 37/4 39/9 39/14
39/20 40/10 40/18
40/23 41/12 41/17 42/9
43/9 45/18 46/9 46/12
49/20 50/15 53/22
57/12 57/14 58/19

63/20 65/7 69/2 69/20
69/21 72/15 76/6
cases [6] 8/19 38/17
51/15 65/22 68/9 68/14
cash [3] 39/5 40/2
41/19
Castaneda [1] 11/8
causal [1] 16/5
caused [2] 41/13 61/25
causing [1] 44/18
certain [2] 21/3 28/6
certainly [10] 13/16
25/11 27/14 28/12
32/16 48/9 52/21 52/22
64/21 68/10
Certified [1] 2/4
certify [1] 78/2
cetera [3] 11/19 32/8
52/1
CH [1] 2/5
chain [2] 23/16 60/21
challenge [1] 74/16
chance [1] 63/2
change [8] 8/13 14/8
15/6 15/8 15/10 16/14
72/24 72/25
changed [1] 16/23
character [1] 32/1
characteristics [3]
40/9 59/5 65/9
characterized [1]
45/17
charge [9] 26/25 27/3
28/11 39/23 46/15
60/17 66/21 68/2 74/5
charged [3] 25/16
44/14 46/14
charges [8] 17/12
22/25 32/22 48/6 75/1
75/3 75/4 75/8
child [4] 31/3 36/3 36/3
37/5
childhood [3] 51/25
52/25 53/3
children [5] 5/2 49/21
66/9 66/10 66/12
choice [4] 44/19 50/3
50/3 50/17
choke [1] 51/4
choked [4] 33/10 47/15
50/25 61/20
choking [3] 15/24
15/25 16/2
choose [3] 44/10 74/8
74/12
chose [3] 45/9 45/22
46/6
chosen [1] 42/20
chronological [1] 55/6
Circuit [3] 11/7 11/8
40/11
Circuits [1] 11/6
circumstance [1]
16/22
circumstances [13]
11/20 11/22 12/4 12/11
12/15 36/14 54/21 59/4

69/13
cite [1] 22/20
cited [6] 8/8 8/19 19/9
19/10 44/20 68/8
citizen [1] 50/10
claimed [1] 48/6
clarify [1] 16/21
clear [21] 6/19 7/1 7/21
11/20 16/2 18/6 21/17
21/21 25/14 26/16
26/23 28/10 28/14
29/22 31/11 33/25
49/22 52/2 55/2 58/4
68/18
clearly [9] 15/16 18/18
22/1 30/15 44/14 44/17
54/12 67/14 67/16
clerk [3] 10/3 72/22
72/25
close [3] 36/2 66/25
76/20
clothing [1] 25/21
cloud [1] 56/2
clubs [2] 60/15 60/17
cocaine [1] 36/23
coerced [1] 61/3
coercion [7] 30/21
44/14 45/11 46/15
46/22 57/25 61/25
collection [1] 70/16
colloquy [1] 33/6
COLUMBIA [3] 1/1
34/20 72/23
combination [1] 26/20
combined [6] 15/2
21/7 21/8 25/14 26/4
27/2
come [12] 12/1 12/9
21/13 24/20 24/22
32/17 37/13 55/18 60/8
64/20 67/24 68/23
comes [6] 25/23 49/22
53/15 65/23 68/7 69/5
comfortable [1] 56/18
coming [4] 23/14 47/12
53/1 55/15
commensurate [2]
66/1 68/1
comment [1] 39/22
commentary [1] 10/25
commercial [11] 21/22
23/9 24/13 25/17 26/21
26/25 27/6 28/11 35/24
47/10 60/16
commercially [1]
38/20
commission [3] 19/2
49/16 68/12
commit [4] 49/15 66/15
66/17 67/12
committed [1] 69/18
committing [2] 49/2
70/10
commodity [5] 47/18
47/20 47/21 47/24 66/7
common [1] 32/5
communications [1]

communities [1] 63/8
community [3] 42/5
73/12 73/16
comparable [1] 68/9
comparatively [1] 43/5
compel [1] 47/9
complaining [1] 26/10
completely [4] 13/10
13/14 43/17 43/17
completion [1] 73/8
compliance [1] 71/14
complicated [1] 19/18
comply [1] 70/20
compromise [1] 54/13
compromised [2]
46/13 61/1
computer [4] 2/8 71/17
71/17 72/3
computer-aided [1]
2/8
computer-monitoring
[1] 71/17
computers [2] 71/19
71/22
concerned [1] 38/8
concerning [1] 18/25
concerns [1] 55/8
concluded [3] 19/23
61/24 77/14
concurrent [3] 69/19
69/22 69/24
concurrently [2] 29/15
32/25
condition [4] 10/23
71/24 72/1 72/2
conditions [3] 70/7
70/8 71/1
conduct [30] 10/20
10/24 13/1 20/2 20/7
25/22 31/14 31/16
31/18 31/23 32/4 32/13
32/14 32/18 38/18
40/22 43/4 43/5 43/8
50/10 62/14 62/17
64/10 64/18 66/24 67/3
68/25 69/11 70/9 71/25
conducted [1] 72/4
conferred [1] 54/3
confidence [1] 67/11
confirm [2] 3/22 4/10
confusion [2] 6/4 6/6
Congress [1] 64/13
connected [1] 50/17
connection [16] 4/15
4/17 9/10 16/5 16/9
16/13 25/21 38/1 47/17
50/25 51/2 61/4 61/22
66/20 74/20 74/21
consecutive [2] 29/13
30/3
consent [1] 31/2
consider [5] 31/9
31/24 58/24 59/3 59/11
considerations [1]
31/10
considered [1] 65/9
consistent [1] 15/10

conspiracy [7] 34/2
57/13 58/3 59/16 59/20
66/17 69/1
Constitution [1] 2/5
consult [2] 54/1 77/6
contact [1] 60/3
contacts [1] 41/10
contains [1] 72/3
contested [3] 48/4
48/6 48/7
context [1] 54/15
continue [2] 61/25
67/3
continued [3] 2/1 27/1
65/8
continuing [1] 63/18
control [2] 16/16 41/5
controlled [2] 70/11
70/12
controversial [1] 43/7
conveniently [1] 43/12
conversation [1] 37/20
convicted [20] 18/10
18/15 18/20 19/20 20/2
30/19 30/20 30/21
32/15 32/18 39/12
40/13 43/4 43/6 44/13
63/22 64/19 66/17
70/24 74/10
conviction [18] 10/20
12/23 13/15 13/18 14/2
18/23 19/19 31/12
31/13 31/18 32/13 39/2
44/6 45/13 45/19 54/15
74/17 75/9
convinced [3] 12/1
12/9 60/7
convincing [1] 14/10
cooperate [1] 70/16
correct [8] 9/16 9/22
29/23 30/7 34/8 46/9
75/7 78/3
correcting [1] 33/4
correctly [2] 31/24
45/16
cost [5] 71/10 74/14
74/15 74/22 74/24
costs [1] 71/5
could [9] 22/13 23/21
26/5 31/6 37/18 62/2
64/20 65/14 67/9
couldn't [3] 3/25 42/10
51/19
counsel [9] 3/15 6/17
9/17 29/6 29/17 42/24
54/3 66/13 74/20
count [16] 18/11 18/12
18/23 29/25 55/3 58/9
58/17 58/18 58/18
58/21 69/20 69/20
69/21 70/1 74/10 75/9
Count 1 [2] 58/17
69/20
Count 2 [4] 29/25
58/21 69/21 70/1
Count 3 [2] 58/18
69/20
counted [1] 28/4

82

# C

**counts [4]** 55/1 57/14 69/22 69/25
**County [2]** 39/11 40/11
**course [9]** 8/7 12/25 18/20 25/7 36/9 46/4 46/6 54/2 69/3
**court [35]** 1/1 2/3 2/4 9/19 14/16 34/15 35/25 37/8 39/19 40/11 44/12 45/13 46/16 49/11 49/14 54/7 56/6 57/7 64/5 69/4 69/17 70/5 70/15 72/22 72/22 72/25 73/5 73/24 74/4 74/9 74/13 74/15 74/23 75/21 77/13
**Court's [3]** 32/24 33/18 41/2
**courtroom [3]** 10/3 52/10 61/9
**courts [1]** 11/13
**covered [1]** 28/14
**COVID [1]** 55/9
**cow [1]** 41/19
**CR [6]** 1/4 57/12 69/21 69/22 70/1 70/2
**crazy [1]** 76/14
**credit [3]** 62/3 65/15 69/7
**crime [2]** 41/10 70/10
**criminal [14]** 3/6 10/24 17/3 19/1 20/13 32/7 41/9 42/19 49/15 50/1 50/6 50/10 66/15 67/13
**cross [1]** 58/4
**cross-reference [1]** 58/4
**CRR [2]** 78/2 78/8
**curious [1]** 51/13
**current [1]** 60/7
**currently [1]** 74/18
**custody [2]** 19/21 69/18
**customers [1]** 60/17
**cut [1]** 46/24

# D

**D.C [5]** 1/5 1/15 1/19 2/6 60/14
**Daddy [1]** 24/2
**daily [1]** 21/13
**dancing [18]** 21/5 21/6 21/8 21/11 23/22 23/25 25/12 25/13 26/4 26/11 26/13 26/22 27/16 27/23 28/3 28/13 28/16 60/16
**dangerousness [1]** 64/21
**data [1]** 71/20
**date [3]** 10/3 25/12 78/7
**dates [1]** 25/10
**day [16]** 10/9 18/3 23/11 24/3 24/6 24/16 25/1 25/18 26/8 27/7 27/9 27/19 54/16 62/13

**days [26]** 22/1 23/12 23/23 23/23 24/3 24/11 24/12 24/22 24/22 25/6 25/6 25/7 25/7 25/8 25/8 25/9 25/18 27/5 54/24 55/7 55/11 70/13 72/24 73/11 74/8 74/12
**DC [1]** 1/14
**DEA [1]** 34/14
**dealing [1]** 56/25
**decides [1]** 38/16
**decision [2]** 64/13 65/6
**decisions [1]** 56/20
**defendant [42]** 1/7 1/17 3/13 8/4 10/21 11/2 12/3 14/4 14/20 15/8 16/17 21/20 21/25 22/17 23/9 33/19 34/16 34/23 35/1 36/2 36/21 37/7 37/10 37/17 38/9 38/13 39/7 39/10 40/20 41/13 41/15 42/10 42/15 42/16 42/17 42/19 43/4 43/10 54/3 59/5 59/9 73/18
**defendant's [7]** 4/25 8/9 18/9 31/25 34/17 36/24 73/7
**defense [7]** 3/11 7/10 29/6 29/17 30/18 33/5 60/24
**defined [1]** 9/7
**definitely [1]** 56/23
**defrauded [2]** 8/4 47/12
**degree [4]** 12/24 52/18 52/19 68/2
**dehumanizes [1]** 62/14
**delay [2]** 4/7 5/21
**denies [1]** 15/19
**departs [1]** 74/6
**depended [1]** 8/9
**depressed [1]** 49/25
**deriving [1]** 68/16
**describe [3]** 15/24 51/18 65/4
**described [3]** 12/11 17/20 53/1
**describes [1]** 16/7
**description [2]** 15/18 16/4
**desperation [1]** 8/10
**Despite [1]** 49/19
**detailed [1]** 60/19
**detection [1]** 36/13
**Detective [1]** 34/18
**deter [2]** 41/14 67/16
**determine [1]** 72/7
**determined [4]** 61/2 70/15 71/5 71/10
**deterrence [1]** 59/8
**development [1]** 72/12
**device [1]** 72/3
**devices [3]** 71/20 71/22 71/23
**devoted [1]** 49/21
**did [35]** 8/24 12/13

17/13 22/2 23/12 25/15 26/18 26/24 27/1 30/12 36/20 38/19 42/14 45/23 46/7 51/1 51/1 51/2 51/2 51/4 54/12 55/16 60/14 61/12 61/15 61/19 62/3 67/20 68/4 68/9 68/11
**didn't [13]** 5/5 5/12 8/17 9/12 16/12 22/18 26/22 28/5 46/24 49/9 55/18 67/18 68/4
**died [1]** 39/8
**difference [1]** 20/10
**different [3]** 13/23 36/11 53/16
**differently [1]** 11/6
**diminish [1]** 31/16
**direct [5]** 15/23 23/14 24/10 47/8 60/6
**directed [3]** 51/8 59/21 70/21
**directly [1]** 47/2
**disagree [3]** 31/22 52/12 66/16
**disagreed [1]** 48/8
**disagreement [1]** 54/10
**disappointed [1]** 28/5
**disappointing [1]** 46/4
**discretion [1]** 71/13
**discussed [3]** 22/16 53/22 59/13
**diseased [1]** 43/19
**dismiss [1]** 75/2
**dismissed [3]** 75/1 75/5 75/10
**disorderly [2]** 38/18 40/22
**disparities [1]** 59/11
**display [1]** 35/22
**dispute [3]** 17/19 47/25 51/11
**disregard [3]** 64/3 67/23 67/23
**distinguish [1]** 21/10
**distinguishing [1]** 28/7
**distribution [1]** 53/12
**district [7]** 1/1 1/1 1/10 34/19 72/22 72/23 73/4
**Dix [1]** 73/17
**DNA [1]** 70/16
**do [33]** 4/14 10/7 14/4 15/5 15/17 15/21 17/9 18/17 19/4 20/24 22/21 23/20 24/14 26/4 26/6 27/1 31/12 31/15 32/10 34/20 41/21 47/7 53/20 58/6 60/11 60/23 62/9 62/15 62/24 63/7 65/5 65/13 68/23
**docket [6]** 6/9 6/10 6/21 6/22 7/1 22/14
**document [1]** 9/1
**documents [2]** 9/13 9/19
**does [7]** 7/17 11/15

76/17
**doesn't [12]** 12/13 13/18 16/20 18/20 21/21 21/23 25/3 28/16 39/1 47/7 65/24 67/11
**doing [10]** 24/21 27/4 39/4 39/14 41/16 47/17 51/14 56/14 63/12 66/11
**dollar [1]** 76/13
**don't [54]** 4/6 4/7 4/11 6/13 10/7 11/22 12/18 13/24 14/6 14/17 16/22 18/11 19/16 20/22 22/20 26/11 26/16 27/9 29/4 35/7 37/22 41/14 43/17 46/15 47/5 47/11 47/12 47/13 47/14 47/15 47/16 47/25 49/3 49/4 51/25 52/12 52/25 53/4 53/18 54/13 55/2 56/3 56/23 61/7 62/25 63/9 63/11 64/2 66/5 66/14 72/14 72/17 75/19 76/24
**done [2]** 3/22 6/16
**doubt [3]** 50/23 61/2 65/7
**Douyon [1]** 55/14
**down [7]** 33/12 53/20 55/10 55/13 56/21 56/23 56/24
**dozen [2]** 35/23 63/15
**dozens [1]** 35/22
**drives [1]** 35/1
**driving [2]** 32/13 65/19
**dropped [1]** 3/19
**drove [2]** 35/14 38/13
**drug [6]** 36/18 38/9 65/2 70/13 70/14 73/21
**drugs [1]** 43/20
**due [3]** 10/22 31/21 54/8
**duress [1]** 50/4
**during [11]** 21/2 22/1 22/2 22/22 23/10 24/10 33/23 41/25 43/14 61/4 77/1

# E

**each [8]** 25/12 25/16 26/8 26/24 28/6 28/11 31/19 46/21
**earlier [7]** 5/11 33/6 33/9 39/19 58/6 61/6 61/19
**earn [1]** 15/2
**earning [1]** 26/21
**easier [2]** 63/10 63/11
**easily [1]** 62/3
**easy [1]** 65/14
**eat [2]** 8/3 76/16
**ECF [12]** 4/22 4/23 5/14 6/20 6/22 14/24 15/2 15/16 16/11 22/9 22/13 29/24
**economic [1]** 11/14

**education [4]** 8/10 73/19 73/20 75/24
**educational [2]** 59/9 72/10
**educational-vocational [1]** 72/10
**effective [1]** 74/19
**eight [1]** 8/1
**either [6]** 7/17 16/17 28/19 68/18 73/25 74/20
**electronic [1]** 71/20
**element [2]** 46/21 46/22
**Elizabeth [2]** 1/13 3/9
**else [7]** 5/4 7/6 10/13 13/3 32/18 39/4 77/3
**else's [1]** 66/11
**email [2]** 1/16 60/20
**emails [1]** 5/9
**enacted [1]** 38/6
**end [3]** 27/8 27/19 53/9
**ended [5]** 23/3 53/3 55/16 62/16 69/6
**ends [3]** 37/20 38/17 65/14
**endure [1]** 62/11
**enforcement [7]** 17/7 18/8 36/13 38/6 38/12 41/10 67/21
**engage [3]** 24/12 47/10 61/25
**engaged [1]** 61/3
**engaging [2]** 60/16 63/23
**enhancement [15]** 7/16 8/13 10/18 12/18 12/19 17/1 17/2 17/4 17/9 17/19 18/16 18/19 18/21 18/22 67/9
**enhancing [1]** 31/13
**enough [5]** 3/21 33/14 41/14 62/6 63/19
**ensure [1]** 71/13
**enter [1]** 50/18
**entered [3]** 46/13 60/22 74/17
**entering [1]** 74/20
**enters [2]** 74/9 74/13
**entire [2]** 42/20 52/9
**entirety [1]** 15/20
**entry [1]** 73/10
**enumerated [1]** 15/17
**erase [1]** 13/25
**Erica [4]** 13/17 39/3 39/6 39/11
**especially [1]** 39/25
**essentially [11]** 8/4 12/25 13/25 21/2 21/7 31/9 31/19 57/14 60/7 60/11 69/7
**establish [3]** 23/5 24/18 70/8
**estimate [2]** 27/4 27/22
**estimating [1]** 28/15
**et [3]** 11/19 32/7 51/25
**et cetera [1]** 11/19
**evade [1]** 36/12

**E**

even [14] 18/22 20/9 42/10 44/4 44/6 47/6 49/5 56/25 60/22 64/17 67/18 69/7 69/12 76/8
event [1] 75/8
events [1] 13/21
ever [2] 45/6 61/11
every [4] 23/11 24/3 24/6 24/16
everybody [2] 10/10 57/5
everyone [5] 3/4 57/9 63/8 64/3 77/11
everything [7] 29/4 31/25 32/7 32/18 54/11 69/2 69/11
evidence [13] 12/5 12/7 12/10 18/17 23/6 24/19 34/10 46/11 60/22 64/19 67/22 68/24 72/3
exactly [4] 34/5 49/7 57/22 76/5
exaggerating [1] 45/24
examination [3] 15/23 23/14 24/10
example [1] 50/24
except [1] 13/9
exclusively [1] 40/4
excuse [4] 16/10 17/22 18/9 24/24
execute [1] 73/5
executed [1] 59/23
exert [1] 16/16
exhibits [1] 12/7
exists [1] 72/1
expectations [1] 70/9
expected [1] 25/12
expenses [3] 25/19 25/23 27/15
expert [1] 40/6
explicitly [1] 26/19
exploited [1] 36/17
exploiting [2] 38/20 38/22
exploitive [1] 43/22
explorative [1] 26/11
extended [1] 19/11
extensive [2] 33/15 41/9
extent [2] 32/12 62/25
extraordinarily [1] 64/9
extremely [4] 8/2 31/5 36/18 62/19
eye [1] 60/12
eyes [1] 47/13

**F**

F.2d [1] 11/10
F.3d [1] 11/9
face [1] 33/12
FaceTime [2] 55/23 55/23
facing [1] 30/23
fact [10] 7/22 11/7 16/24 18/21 41/25 48/4

factor [4] 32/13 48/19 48/20 54/14
factors [7] 30/14 50/5 50/13 53/22 56/6 58/24 60/10
facts [2] 45/18 59/25
factual [4] 14/3 15/18 17/20 33/4
factually [1] 16/20
failed [1] 21/10
fair [7] 3/24 11/17 13/10 50/8 60/2 63/19 67/25
fairly [1] 53/2
false [2] 18/3 59/17
familial [1] 36/19
family [10] 5/9 49/17 49/18 54/6 57/1 64/4 65/16 65/22 66/3 69/10
far [3] 45/18 50/4 62/19
fashion [1] 68/5
fashioning [1] 32/12
fast [1] 50/2
father [3] 37/7 49/21 65/15
fear [1] 49/12
fearful [1] 42/10
federal [4] 46/16 70/10 73/20 75/23
feed [1] 60/5
feel [3] 14/23 39/25 56/17
feeling [1] 39/24
feelings [1] 62/6
fees [1] 28/7
felon [5] 19/20 34/2 40/13 57/13 66/19
felony [3] 34/20 57/13 67/6
field [1] 52/20
fights [2] 15/1 51/11
figure [2] 21/13 27/8
file [4] 74/8 74/12 74/15 74/23
filed [9] 6/1 6/5 6/7 6/9 6/9 6/10 6/15 6/15 6/20
filing [2] 4/3 77/7
filings [1] 6/22
final [1] 9/11
finalizing [1] 9/14
finally [1] 67/2
financial [3] 35/18 72/21 73/1
find [3] 61/14 65/21 72/17
finding [2] 26/2 26/12
fine [3] 56/16 72/14 72/15
finger [1] 40/12
firearm [1] 19/20
firearms [1] 57/16
fired [2] 69/15 69/15
first [15] 3/18 4/14 4/20 7/15 10/8 11/8 22/15 25/1 31/1 35/11 38/3 39/23 56/25 60/3 68/2
First Circuit [1] 11/8

five [15] 23/23 23/23 24/4 24/22 24/22 25/7 25/7 40/23 42/12 54/24 55/1 55/7 55/11 58/17 68/13
five-year [2] 40/23 58/17
fix [1] 10/6
flack [1] 46/7
flashing [2] 39/5 40/2
flat [1] 51/19
flavor [1] 61/17
Florida [1] 1/18
focused [2] 43/3 44/12
follow [5] 24/20 40/18 40/19 71/7 72/10
followed [2] 29/9 42/22
following [7] 11/4 47/11 61/16 61/19 66/23 70/7 71/1
follows [3] 16/15 24/23 61/2
food [1] 8/4
footnote [1] 3/19
force [13] 30/20 44/14 44/17 45/10 45/14 46/14 46/22 47/2 47/9 49/1 50/16 58/1 61/24
forced [3] 33/9 45/6 61/3
foregoing [1] 78/3
foreperson [1] 55/15
forget [1] 49/7
forgive [1] 8/24
formula [1] 32/11
Fort [1] 73/17
Fort Dix [1] 73/17
forth [4] 12/8 23/17 54/6 58/25
forward [1] 38/16
found [7] 12/11 34/23 36/23 42/16 47/17 59/22 59/24
four [9] 31/4 32/3 34/6 36/7 40/24 41/11 57/18 63/14 67/7
Fourth [1] 1/14
frankly [9] 5/10 5/18 18/11 50/14 52/8 53/18 56/4 69/12 69/15
fraud [7] 30/21 44/14 45/14 46/14 46/22 50/16 57/25
fraudulent [1] 60/9
frequently [1] 44/3
Fresh [1] 39/22
Friday [2] 24/5 55/7
friends [1] 40/16
frightened [1] 45/9
full [3] 61/17 68/24 73/1
fully [1] 61/10
fundamental [1] 62/15
further [5] 14/5 17/10 28/23 67/22 69/24

**G**

gave [3] 34/13 37/9 44/5
general [4] 11/10 27/4 67/22 67/23
get [20] 5/14 7/5 15/8 22/17 23/12 36/3 40/5 44/22 45/21 47/2 49/3 49/4 57/1 61/19 65/4 65/22 66/7 66/8 66/21 67/2
gets [3] 38/4 38/15 40/25
getting [6] 11/18 27/10 51/8 52/19 55/10 68/19
girl [5] 35/15 35/17 35/24 37/11 37/16
girlfriend [1] 39/18
girls [2] 34/16 40/3
give [8] 5/20 6/15 19/13 37/9 43/15 44/6 65/15 67/11
given [12] 11/23 17/14 21/9 25/14 27/15 28/12 46/2 55/9 56/6 65/12 68/23 69/11
giving [2] 26/19 40/11
glad [1] 14/16
glorified [1] 64/6
gmail.com [1] 1/20
go [14] 4/18 4/20 14/18 23/3 37/14 37/17 37/18 38/16 42/8 51/4 53/20 56/21 56/23 64/11
goes [2] 24/8 39/13
going [32] 4/13 12/17 12/19 14/7 14/7 15/5 15/15 16/14 17/18 22/16 23/17 33/3 35/22 35/25 37/9 37/13 40/1 48/24 49/2 49/3 49/4 53/2 53/7 53/16 55/6 55/8 57/21 67/1 69/4 73/15 75/22 76/16
gone [1] 4/14
good [10] 3/5 3/15 3/16 37/7 39/25 56/15 62/9 65/15 69/8 77/10
got [16] 5/9 5/19 22/2 27/10 27/10 37/14 39/24 40/1 43/19 46/2 52/18 55/14 61/12 61/17 65/16 66/9
gotten [3] 10/8 42/13 50/1
government [21] 1/13 3/10 5/6 6/11 6/14 6/17 7/9 7/15 22/6 23/7 24/15 27/19 43/10 44/8 44/13 44/24 46/12 46/12 49/10 53/18 75/2
government's [9] 4/4 4/23 9/2 9/9 20/19 23/4 24/18 25/20 43/25
Gray [7] 16/21 37/4 37/8 37/13 37/20 66/6 68/9
Gray's [1] 62/13

greater [2] 58/13 59/1
grew [1] 65/12
gross [1] 21/20
group [1] 58/9
groups [1] 58/13
guess [9] 19/16 28/2 44/15 50/2 50/12 53/8 54/5 56/4 60/12
Guideline [4] 58/1 58/5 68/18 68/20
Guidelines [11] 8/14 9/7 29/19 31/8 31/11 57/11 58/16 58/18 58/20 58/22 74/7
Guidelines Range [2] 58/16 58/22
guilty [2] 47/17 74/21
gun [27] 6/9 6/10 6/22 16/7 16/12 16/17 29/13 32/21 33/20 34/18 34/19 36/24 42/7 42/8 44/24 49/6 57/12 59/13 59/25 66/18 66/21 67/7 67/7 67/9 69/20 69/20 74/5
gun-possession [1] 67/7
gun-related [1] 67/7
guns [20] 33/17 33/21 33/25 34/1 34/3 34/7 34/9 40/15 40/16 42/6 44/23 47/14 62/5 62/8 63/13 63/15 63/23 69/1 69/1 69/13

**H**

had [53] 3/19 3/20 3/20 4/1 4/8 8/2 8/3 8/19 9/9 15/13 16/11 20/7 20/20 21/24 22/21 26/7 26/7 29/1 32/5 36/10 40/21 42/17 43/14 45/3 46/5 46/15 49/19 49/24 50/11 51/19 51/24 51/24 52/6 52/14 52/22 53/9 55/10 55/13 57/19 59/14 61/11 62/1 62/6 62/24 63/1 63/21 63/23 64/5 65/2 65/2 65/13 66/25 67/21
hadn't [2] 8/25 9/12
half [2] 10/8 29/19
hand [1] 4/12
handed [1] 9/1
hands [2] 9/14 48/12
hang [2] 74/2 76/1
happen [2] 55/9 61/11
happened [6] 8/7 31/3 51/25 52/14 52/14 64/17
happening [5] 26/22 37/3 62/21 63/24 63/25
happens [1] 38/17
happy [4] 7/13 7/13 20/20 52/20
hard [5] 23/21 53/10 65/4 65/19 65/21
hard-working [1]

84

**hard-working... [1]** 53/10
**harder [1]** 23/25
**hardship [1]** 11/14
**hardworking [1]** 49/24
**harm [1]** 41/12
**harsh [1]** 54/9
**has [27]** 6/10 14/4 17/5 19/12 20/1 22/6 22/23 39/1 39/7 40/9 41/8 41/12 42/5 42/19 44/12 45/14 49/14 62/21 63/2 64/8 64/13 66/13 68/8 73/17 76/2 76/6 76/6
**haste [2]** 54/20 54/23
**have [62]** 3/22 4/17 5/4 5/15 6/12 6/20 7/2 9/3 9/4 9/12 9/14 9/25 11/2 11/13 13/13 14/17 16/20 19/23 20/22 22/4 22/8 22/20 24/12 25/12 28/4 29/1 31/12 36/10 40/20 42/13 43/18 46/15 46/16 47/5 47/14 50/1 50/8 51/10 53/9 54/15 56/4 58/2 59/12 61/14 62/11 63/9 63/16 65/7 65/8 65/14 65/23 67/9 68/20 72/7 72/14 72/17 74/3 74/11 74/16 74/19 75/1 76/2
**haven't [1]** 4/5
**having [11]** 16/9 33/19 40/5 40/15 41/18 44/5 44/7 44/25 53/2 54/22 63/22
**he [109]**
**he's [26]** 4/7 32/21 36/4 37/4 37/4 38/5 39/4 39/5 39/15 39/16 39/16 39/21 40/3 40/5 40/12 40/13 42/1 42/2 50/8 53/15 53/16 53/16 75/17 75/22 76/7 76/17
**head [7]** 4/8 16/8 16/12 16/18 65/5 65/22 76/19
**heads [1]** 33/17
**health [1]** 65/18
**hear [3]** 7/13 26/19 28/25
**heard [14]** 7/17 13/3 14/5 17/9 20/16 30/10 31/4 32/16 37/6 40/6 56/10 64/19 69/2 69/11
**hearing [2]** 70/18 73/10
**heart [1]** 40/18
**heinous [1]** 33/18
**held [2]** 11/13 37/4
**help [1]** 61/12
**helpful [1]** 68/12
**her [101]**
**here [45]** 3/17 6/20 7/21 7/25 11/18 12/3 22/8 24/2 27/2 27/4 29/18 30/14 30/19 32/11 32/21 34/24

44/13 45/4 45/14 46/2 46/13 46/17 47/12 47/13 48/5 48/19 49/13 49/18 50/7 56/12 57/16 57/23 59/13 60/10 61/8 63/13 64/13 65/16 66/14 68/3 68/24
**here's [4]** 34/17 39/3 40/9 68/23
**herself [3]** 12/12 43/21 60/2
**high [2]** 53/2 53/14
**higher [1]** 68/22
**highest [2]** 58/9 58/10
**highlights [1]** 29/5
**him [12]** 24/24 31/19 40/10 41/18 43/18 44/21 47/17 52/14 53/5 60/8 61/5 73/12
**himself [2]** 40/2 40/14
**his [33]** 4/8 5/1 8/13 8/14 23/9 29/6 32/7 32/7 33/8 35/18 35/24 36/11 37/5 39/15 39/20 39/22 40/21 41/11 41/17 41/21 41/22 42/20 48/16 49/19 49/21 50/6 50/6 53/9 53/15 59/18 59/22 62/3 73/11
**history [7]** 11/14 17/3 19/1 20/13 32/7 59/4 65/9
**hit [1]** 29/5
**hoes [1]** 40/18
**hold [2]** 8/24 43/10
**holding [2]** 33/12 40/15
**hollowed [2]** 51/17 51/19
**home [3]** 39/15 53/2 59/22
**homelessness [1]** 36/19
**homes [1]** 8/11
**homicide [1]** 68/2
**honest [2]** 53/10 63/9
**honestly [1]** 23/24
**Honor [18]** 3/5 5/6 6/12 7/9 7/19 9/16 10/3 10/15 13/4 20/17 21/15 29/1 30/2 56/14 75/21 75/25 76/5 77/4
**HONORABLE [2]** 1/10 3/2
**hope [1]** 73/14
**hoped [1]** 46/5
**hotel [3]** 35/16 36/22 36/24
**hotels [2]** 38/10 39/11
**hours [1]** 73/12
**how [33]** 19/9 19/13 22/15 22/16 22/17 23/17 24/11 24/12 24/22 25/5 26/10 27/10 32/17 34/23 40/9 40/17 41/5 49/24 50/25 51/2

56/3 56/14 56/15 64/22 65/18 65/22 65/24 66/2 66/3
**however [2]** 4/5 29/14
**huh [1]** 37/21
**human [11]** 12/23 39/2 39/20 39/24 40/10 40/23 41/17 51/20 61/9 64/1 66/24
**hurt [1]** 69/12
**hurts [5]** 63/4 63/5 63/7 63/8 63/8
**Hutson [3]** 1/13 3/9 21/14

**I**

**I also [3]** 72/16 72/17 75/15
**I am [5]** 17/18 33/7 35/24 48/8 64/15
**I apologize [1]** 35/2
**I believe [8]** 8/1 13/4 29/12 37/1 40/6 40/24 54/11 75/7
**I can [6]** 6/15 14/5 31/9 51/18 61/1 66/8
**I can't [3]** 62/8 63/14 66/9
**I did [4]** 8/24 26/18 30/12 68/11
**I didn't [4]** 5/5 8/17 9/12 67/18
**I didn't see [1]** 5/12
**I disagree [1]** 31/22
**I don't [26]** 4/6 10/7 11/22 12/18 13/24 14/6 16/22 18/11 26/11 26/16 29/4 35/7 41/14 43/17 47/11 47/12 47/13 47/14 47/15 47/16 51/25 52/12 53/18 63/11 64/2 66/5
**I don't have [3]** 14/17 20/22 22/20
**I guess [6]** 19/16 44/15 50/12 53/8 56/4 60/12
**I have [3]** 9/4 22/8 65/7
**I just [7]** 4/10 5/19 8/16 32/11 35/3 57/1 61/6
**I know [16]** 5/13 7/4 8/20 11/12 29/1 31/8 32/9 32/11 45/13 48/7 49/14 51/16 53/7 53/23 65/10 76/16
**I mean [13]** 25/10 26/17 27/22 32/9 32/16 48/8 48/12 50/6 50/24 51/20 52/18 63/13 66/4
**I misspoke [1]** 30/12
**I need [1]** 10/11
**I really [1]** 46/11
**I received [1]** 5/10
**I remember [1]** 54/24
**I say [2]** 46/23 47/1
**I should [3]** 5/4 57/14 58/2
**I think [56]** 3/24 3/25

6/5 6/8 6/9 6/19 7/20 11/17 12/2 13/16 13/25 14/11 16/6 17/11 19/6 20/6 20/18 22/9 23/13 29/22 33/5 34/2 34/13 35/3 35/6 35/9 39/19 45/4 45/16 46/3 46/17 47/12 48/20 48/21 49/16 50/5 53/14 54/8 54/13 54/14 54/16 55/17 60/10 61/13 64/24 67/14 67/16 67/21 67/24 67/25 69/10
**I thought [3]** 30/10 35/4 43/13
**I understand [7]** 43/7 47/22 48/2 56/20 56/24 65/11 76/10
**I want [4]** 8/20 30/17 52/2 56/21
**I was [8]** 9/25 33/3 49/23 52/8 52/20 53/3 53/8 66/4
**I went [5]** 12/6 14/22 23/6 26/18 56/24
**I will [6]** 11/4 12/5 18/23 22/5 73/17 77/7
**I'd [7]** 14/16 37/8 51/13 54/7 56/6 66/5 76/14
**I'll [7]** 4/14 7/5 28/25 29/4 57/5 62/12 73/11
**I'm [58]** 7/13 7/13 12/17 12/19 14/7 15/5 15/15 16/14 17/1 17/23 17/25 19/9 19/12 20/6 20/10 21/1 23/20 27/4 27/8 27/10 27/13 27/20 27/23 28/15 28/15 29/24 31/13 32/5 32/6 32/16 35/22 37/21 43/24 44/5 46/18 48/14 48/15 51/6 51/22 51/23 52/13 53/6 53/20 54/23 55/15 56/15 56/16 56/22 57/10 57/21 57/22 61/9 61/17 61/24 66/14 69/10
**I'm going [4]** 14/7 15/5 16/14 57/21
**I'm just [2]** 17/25 29/24
**I'm not [17]** 12/17 17/1 17/23 23/20 28/15 31/13 31/16 32/5 35/22 48/14 51/22 51/23 53/6 54/23 55/15 57/22 61/9
**I'm not sure [5]** 20/10 46/18 51/6 52/13 61/17
**I'm sorry [2]** 17/1 69/10
**I've [14]** 4/14 4/21 6/3 7/2 10/8 51/17 55/6 56/21 65/9 65/19 67/24 68/10 69/2 70/17
**identified [1]** 34/10
**ignore [3]** 43/12 44/11

**illegal [1]** 21/22
**illustrative [1]** 61/13
**imagine [2]** 62/8 66/10
**immediately [1]** 72/21
**impact [4]** 4/24 29/3 44/7 61/13
**import [1]** 25/11
**important [3]** 12/2 42/4 68/6
**impose [3]** 56/5 56/7 58/25
**imposed [5]** 59/6 60/18 70/8 74/4 74/17
**imposition [3]** 72/15 72/16 72/19
**imprisonment [1]** 74/5
**inaccuracies [1]** 33/4
**incarcerated [5]** 17/8 17/22 41/3 59/21 67/19
**incarceration [2]** 75/18 77/2
**incendiary [1]** 44/15
**incident [4]** 15/24 15/25 16/2 33/18
**incidents [1]** 61/22
**inclined [1]** 21/1
**include [9]** 12/19 17/18 18/23 20/13 28/16 57/21 67/8 70/9 72/12
**included [9]** 7/16 12/7 13/5 19/22 27/16 33/17 46/21 57/18 57/23
**includes [3]** 5/1 68/24 73/4
**including [2]** 21/19 73/19
**inclusion [1]** 15/15
**income [2]** 21/20 44/1
**increase [2]** 19/1 58/14
**incredibly [1]** 9/5
**indicates [2]** 19/20 30/15
**indictment [3]** 75/1 75/5 75/9
**Industries [3]** 73/21 75/23 76/18
**influence [3]** 18/7 67/19 67/20
**information [2]** 31/9 74/18
**Inn [2]** 36/9 37/10
**inside [1]** 33/20
**insisted [3]** 14/20 15/7 33/20
**Instagram [5]** 34/17 39/5 39/17 40/12 60/6
**install [1]** 71/17
**instead [1]** 15/6
**instructions [1]** 40/19
**insufficient [1]** 30/16
**intend [1]** 29/4
**intention [1]** 18/6
**interest [1]** 72/16
**interesting [3]** 43/2 44/4 51/12
**interestingly [2]** 43/14 62/6

**I**

**Internet [3]**  35/21 36/5 71/22
**interpret [1]**  56/4
**interpretation [2]**  27/20 45/17
**interpretations [1]**  43/8
**interrelated [1]**  49/1
**interrupt [2]**  31/6 33/24
**interruption [1]**  35/2
**intimate [1]**  48/23
**introduce [1]**  8/5
**introduced [2]**  34/9 41/4
**investigation [3]**  4/22 7/7 73/3
**involve [1]**  13/18
**involved [18]**  12/25 13/1 13/20 13/23 44/18 44/22 45/7 47/2 48/22 49/12 50/1 50/9 51/9 51/10 53/12 54/20 66/19 69/2
**involvement [3]**  49/20 49/20 50/6
**involves [3]**  12/25 13/15 15/13
**involving [5]**  11/1 39/2 61/23 63/23 64/1
**is [192]**
**is that right [1]**  5/24
**is there [3]**  5/4 7/6 28/18
**isn't [3]**  18/18 23/24 44/6
**issue [7]**  12/20 13/3 15/13 20/7 29/10 33/25 34/1
**issued [1]**  20/7
**issues [2]**  7/5 65/18
**it [143]**
**it's [51]**  7/21 11/20 12/18 16/2 17/20 18/6 18/21 20/1 23/13 23/25 24/3 25/4 25/13 25/18 26/5 26/16 28/2 31/16 32/4 32/22 34/3 34/15 35/8 39/23 42/12 43/2 44/24 46/25 57/13 57/15 58/15 60/12 63/3 63/10 63/11 64/8 64/14 64/14 65/4 65/5 65/6 65/19 67/1 67/22 68/18 69/9 69/10 75/5 76/16 76/17 76/19
**its [4]**  15/20 23/7 27/20 64/8
**itself [1]**  61/23

**J**

**jail [6]**  37/23 39/13 41/4 41/20 41/22 41/23
**Jeremiah [1]**  34/18
**Jessica [4]**  38/5 38/16 38/22 38/24
**job [3]**  49/24 49/25 72/12

**Johnson [1]**  34/19
**joint [1]**  39/22
**joke [2]**  49/8 49/10
**Jonathan [3]**  1/17 1/18 3/11
**jonathanzuckerlaw [1]**  1/20
**Jones [1]**  38/6
**judge [19]**  1/10 5/17 6/25 7/20 8/22 28/21 30/12 31/21 33/23 36/15 39/12 41/25 42/9 42/21 43/1 56/3 75/7 75/13 76/1
**judging [1]**  11/19
**judgment [4]**  65/6 69/17 74/9 74/13
**July [1]**  1/5
**June [12]**  20/2 21/25 24/17 24/17 24/25 25/6 31/17 36/21 38/4 59/15 60/4 67/4
**juror [1]**  55/18
**jurors [3]**  34/11 55/13 55/14
**jury [8]**  17/12 46/12 47/16 48/8 50/22 54/12 61/2 61/24
**just [66]**  4/10 4/13 4/14 4/20 4/20 5/19 5/20 5/23 6/4 6/16 6/16 6/19 7/4 7/12 8/16 8/20 9/1 10/10 14/5 14/11 14/18 15/5 15/8 15/10 16/18 16/20 17/11 17/25 19/15 21/15 22/13 22/16 23/3 23/19 23/21 23/25 26/5 28/2 29/24 30/21 32/11 33/25 34/15 35/3 35/3 41/16 46/16 49/12 49/16 50/24 56/19 57/1 57/4 57/10 58/4 61/6 61/16 62/20 63/3 64/10 64/15 65/4 67/22 67/22 68/24 75/16
**justice [3]**  17/12 17/16 72/18

**K**

**keep [3]**  12/2 50/19 50/19
**keeping [1]**  47/18
**Kelli [2]**  2/2 3/12
**Kelli Willett [1]**  3/12
**kept [1]**  68/10
**keys [1]**  62/1
**kill [2]**  42/8 63/17
**kind [11]**  43/2 49/8 49/9 51/15 52/19 62/14 63/4 64/10 67/22 69/13 69/13
**kiosk [1]**  41/23
**knew [2]**  51/24 64/24
**know [88]**
**known [1]**  11/2
**knows [1]**  11/2

**L**

**labor [1]**  37/9
**lack [2]**  36/19 50/3
**lacked [1]**  8/10
**ladies [1]**  64/4
**language [1]**  21/18
**lapse [1]**  26/5
**laptop [1]**  25/21
**large [3]**  39/5 57/17 63/5
**large-capacity [1]**  57/17
**Larson [8]**  1/13 3/9 8/16 10/14 28/25 30/10 31/6 35/3
**last [5]**  5/11 5/13 41/17 53/8 68/13
**lasting [1]**  41/12
**late [3]**  23/21 24/17 59/15
**later [1]**  16/8
**Laura [4]**  37/4 37/8 37/12 37/20
**law [18]**  1/17 7/21 8/8 17/7 18/8 31/2 36/12 38/6 38/12 40/9 41/10 50/10 53/19 54/9 59/7 67/1 67/15 67/21
**law-abiding [1]**  50/10
**laws [1]**  40/1
**lawyer [2]**  44/4 44/7
**lay [1]**  4/13
**lays [1]**  7/20
**leading [1]**  42/1
**learned [3]**  40/20 41/16 56/21
**least [12]**  5/13 13/16 14/21 15/7 23/13 34/6 38/20 41/11 46/10 64/18 70/14 74/5
**leave [8]**  16/18 45/9 46/6 46/7 54/22 60/7 62/3 62/4
**leaves [1]**  25/2
**leaving [1]**  45/11
**left [2]**  33/11 45/9
**legal [1]**  21/11
**legality [1]**  21/22
**legislative [2]**  11/14 11/18
**length [1]**  59/13
**lenient [1]**  54/7
**less [6]**  14/23 15/9 19/18 43/5 43/5 60/10
**let [17]**  3/18 4/13 4/20 5/14 7/4 14/18 17/23 19/13 19/15 23/3 23/19 24/1 26/15 56/19 57/10 61/16 74/25
**let's [4]**  7/12 11/21 55/2 57/4
**letter [6]**  5/1 5/2 5/11 6/8 6/15 6/20
**letters [7]**  5/8 5/24 6/14 37/7 49/17 49/23 54/7
**level [17]**  7/16 8/13 8/14 12/19 16/25 17/2 17/13 17/13 17/19

**Lee [1]** 34/19
58/8 58/10 68/17 68/21
**levels [4]**  57/18 58/11 58/13 58/15
**lie [1]**  6/6
**life [14]**  8/15 30/23 42/14 42/20 43/16 46/2 52/15 60/12 60/13 61/11 64/6 65/3 68/4 70/2
**lifestyle [3]**  42/19 61/13 65/6
**lifetime [2]**  29/9 42/22
**like [17]**  10/9 17/25 37/8 37/21 37/22 42/17 43/2 47/23 52/9 53/1 61/7 61/18 64/2 66/2 73/25 76/13 76/14
**likely [1]**  50/9
**likes [1]**  40/14
**limitations [1]**  31/24
**limited [1]**  55/10
**line [1]**  45/4
**link [1]**  37/18
**listened [1]**  52/6
**little [3]**  19/18 37/13 37/16
**live [2]**  42/20 64/23
**lives [2]**  42/12 62/21
**living [3]**  8/1 63/9 64/22
**local [1]**  70/10
**location [2]**  13/22 70/23
**locked [2]**  53/17 53/19
**long [7]**  41/12 50/7 51/14 52/3 62/21 69/9 69/9
**long-lasting [1]**  41/12
**longer [2]**  41/15 74/6
**look [6]**  6/14 10/11 28/10 41/16 54/15 68/11
**looked [6]**  5/14 15/20 23/6 24/9 34/23 42/17
**looking [6]**  15/21 20/6 21/19 29/24 32/6 32/6
**lost [2]**  49/24 49/25
**lot [11]**  10/7 23/24 33/5 37/6 38/17 49/16 52/22 56/20 61/11 67/11 68/2
**love [1]**  65/24
**loving [1]**  49/21
**low [1]**  27/8
**low-end [1]**  27/8
**lower [1]**  76/15
**luck [1]**  77/10
**luckily [1]**  69/12
**lured [1]**  39/15
**Lusby [1]**  35/16

**M**

**made [27]**  12/21 15/9 17/6 18/3 18/8 21/8 21/8 22/15 26/13 27/25 28/3 29/6 35/3 44/19 45/11 50/3 50/17 52/15 56/20 56/24 60/3 62/17
**magazines [1]**  57/17
**magic [1]**  32/11
**mainly [1]**  26/10
**majority [1]**  21/6
**make [22]**  8/6 8/16 8/20 11/15 14/21 14/23 15/7 15/10 22/18 26/22 45/23 51/1 51/3 51/5 53/8 63/9 63/10 63/11 65/13 70/17 75/11 76/7
**makes [6]**  10/7 16/5 20/10 21/17 21/21 68/1
**making [6]**  25/13 26/2 33/14 39/5 41/6 45/25
**Mal [1]**  37/18
**man [1]**  41/8
**Manassas [1]**  36/25
**mandatory [8]**  21/18 29/18 30/23 41/8 45/14 48/11 58/21 70/7
**Mann [4]**  11/11 11/12 11/14 11/19
**manner [1]**  72/5
**many [4]**  24/11 24/12 25/5 49/14
**March [3]**  17/21 38/23 66/18
**marijuana [1]**  53/12
**marking [1]**  40/7
**marshals [1]**  42/2
**Mary [2]**  35/15 36/6
**Maryland [8]**  12/23 13/15 13/20 35/16 38/10 39/15 60/14 67/2
**matter [5]**  17/20 21/22 21/23 55/5 78/4
**matters [2]**  4/16 28/19
**maximum [5]**  30/24 58/17 58/19 58/20 74/6
**may [15]**  5/15 6/6 27/18 33/23 34/11 34/18 38/6 44/2 71/18 71/23 71/25 72/11 73/10 74/14 74/22
**maybe [11]**  5/12 6/4 10/6 25/15 25/15 26/18 26/22 27/8 27/15 63/11 63/18
**me [42]**  3/18 4/7 4/13 4/20 5/14 5/20 7/4 8/24 10/10 11/20 14/16 14/18 16/10 17/22 18/6 18/9 19/13 19/13 19/15 19/17 20/5 23/3 23/19 24/1 24/24 25/14 26/15 31/19 32/10 48/16 51/10 54/11 54/13 57/10 61/16 64/3 67/6 67/11 68/3 73/9 73/10 74/25
**mean [25]**  9/9 11/19 12/14 13/18 25/10 26/17 27/22 32/9 32/16 34/21 46/24 48/8 48/12 50/6 50/24 51/20 52/18 63/13 64/7 64/14 66/4

**M**

**mean... [4]** 68/15 68/22 76/2 76/16
**meaning [1]** 68/16
**means [4]** 10/19 69/6 69/8 71/13
**meant [2]** 62/2 65/11
**mechanical [1]** 2/7
**media [2]** 40/14 71/20
**medical [2]** 52/20 59/10
**meet [3]** 4/1 4/3 65/14
**MEHTA [2]** 1/10 3/3
**member [2]** 53/10 57/2
**members [3]** 65/16 65/23 66/3
**memo [10]** 3/20 8/18 25/20 29/2 29/4 29/7 30/19 33/5 33/8 37/6
**memorandum [11]** 4/4 4/23 4/25 5/8 6/7 18/9 20/19 23/1 43/3 44/20 45/17
**memory [1]** 26/5
**memos [1]** 35/10
**men [1]** 15/14
**mental [2]** 10/22 65/18
**mention [2]** 5/5 67/18
**mentioned [2]** 33/9 60/24
**merit [2]** 2/3 17/14
**message [4]** 23/16 55/14 60/21 67/16
**messages [1]** 41/24
**messaging [1]** 60/6
**met [1]** 4/5
**methods [1]** 72/8
**mid [1]** 53/15
**midpoint [1]** 25/5
**might [4]** 12/22 14/9 51/10 64/23
**mind [3]** 12/2 14/8 68/10
**minimum [13]** 15/3 22/17 24/25 29/18 30/23 41/8 45/14 48/11 58/21 63/14 64/14 64/14 76/20
**minor [5]** 31/1 32/3 36/17 38/8 41/11
**minute [1]** 57/4
**miracle [2]** 42/12 69/16
**misrepresent [2]** 49/10 49/13
**miss [1]** 8/17
**missed [1]** 26/18
**misspoke [1]** 30/12
**misstated [1]** 5/15
**mistake [2]** 35/3 65/6
**mistakes [1]** 56/24
**misunderstanding [1]** 19/7
**mitigating [2]** 48/19 48/20
**mixed [2]** 44/3 62/6
**modus [1]** 13/22
**moment [7]** 6/13 7/6 31/7 33/24 54/1 62/12

**moments [2]** 42/1 42/3
**Monday [1]** 55/15
**money [32]** 8/3 8/6 21/7 21/11 21/11 21/12 25/14 26/3 26/13 27/15 27/16 27/23 28/3 28/6 28/12 28/13 28/16 33/13 33/14 37/15 37/21 41/6 50/2 50/25 51/2 51/5 51/11 51/11 61/23 63/11 65/4 66/8
**monitoring [1]** 71/17
**Montgomery [2]** 39/11 40/11
**month [7]** 31/17 31/20 60/3 75/16 76/17 76/24 77/2
**months [28]** 29/8 29/11 30/6 32/6 36/16 38/22 39/7 39/9 39/9 40/24 42/22 51/24 52/3 58/16 58/18 58/20 58/20 58/22 61/4 68/10 68/14 68/15 69/5 69/19 69/20 69/21 69/23 69/25
**more [20]** 9/1 15/22 16/5 19/4 27/8 27/9 27/25 40/2 43/15 43/23 44/9 45/21 48/20 49/16 53/21 56/17 56/21 63/11 66/8 69/12
**most [4]** 5/10 5/17 24/6 68/19
**mother [5]** 5/1 37/5 39/8 41/21 65/10
**motives [1]** 44/2
**mouth [4]** 16/8 33/20 42/7 44/25
**moves [1]** 75/2
**Mr. [84]**
**Mr. Armstead [58]** 3/16 3/21 12/1 12/8 12/14 13/19 14/23 15/6 15/13 15/14 15/19 16/9 16/11 16/19 17/6 17/21 18/4 18/7 18/10 19/2 19/18 20/1 21/3 21/9 23/16 24/24 25/15 26/20 27/15 28/5 28/13 33/16 43/16 44/10 44/16 45/2 46/8 49/18 51/23 53/4 56/10 56/15 57/3 59/14 59/24 60/6 60/11 60/18 61/3 61/7 61/18 62/10 63/1 69/18 73/11 73/13 74/3 77/10
**Mr. Armstead's [4]** 5/1 12/23 24/21 32/19
**Mr. Douyon [1]** 55/14
**Mr. Gray [2]** 16/21 68/9
**Mr. Gray's [1]** 62/13
**Mr. Zucker [18]** 3/18 5/24 9/3 13/8 14/4 17/9 19/4 20/24 26/1 28/22 33/7 42/25 47/5 56/9 60/25 68/1 75/11 76/12

**Ms. [8]** 6/6 10/14 21/3 21/14 28/25 30/10 31/6 35/3 66/6
**Ms. Gray [1]** 66/6
**Ms. Hutson [1]** 21/14
**Ms. Larson [6]** 8/16 10/14 28/25 30/10 31/6 35/3
**much [15]** 12/10 16/5 23/17 40/9 41/5 43/5 43/15 44/9 50/25 51/2 52/21 52/24 65/18 68/22 76/16
**must [12]** 58/24 59/3 70/13 70/16 70/17 71/3 71/4 71/9 71/21 72/7 74/8 74/12
**my [20]** 9/14 11/5 26/3 26/9 28/2 29/13 37/15 37/22 43/16 45/17 45/17 48/12 49/2 53/19 57/1 63/16 65/22 66/8 69/15 76/19

**N**

**name [3]** 36/11 36/12 43/13
**named [1]** 35/15
**names [2]** 35/4 35/11
**nationwide [1]** 68/13
**nature [3]** 36/14 59/3 59/12
**NE [1]** 1/18
**necessarily [3]** 12/14 47/8 47/9
**necessary [2]** 53/21 59/1
**need [12]** 8/25 10/11 18/20 37/14 37/14 47/7 47/8 51/4 57/5 59/5 59/11 75/15
**needed [1]** 59/9
**needs [8]** 12/3 16/23 37/21 41/15 53/17 53/18 67/14 67/16
**negative [2]** 43/17 43/17
**Neither [1]** 68/8
**never [5]** 17/24 40/20 48/4 51/9 51/17
**nevertheless [2]** 62/8 63/21
**new [7]** 25/20 25/20 40/1 60/14 66/15 67/12 74/18
**News [1]** 39/18
**next [2]** 18/3 18/25
**nice [1]** 39/24
**nickname [1]** 64/7
**night [18]** 5/11 14/21 14/24 15/8 15/9 22/19 25/12 27/23 27/25 28/6 34/21 49/6 49/7 49/7 49/8 51/1 51/3 60/18
**nightly [1]** 26/20
**nine [1]** 58/13
**Ninth [1]** 11/7
**Ninth Circuit [1]** 11/7

**no... [8]** 8/2 8/3 10/15 13/4 14/17 17/19 17/24 17/24 18/22 20/22 22/12 28/21 32/11 33/19 37/22 42/14 44/22 45/5 45/10 45/11 45/12 46/25 47/3 47/3 47/4 48/7 51/5 51/6 51/9 52/22 57/5 58/11 58/12 58/15 62/11 62/11 65/7 67/8 75/13 77/4
**nobody [2]** 17/24 69/12
**nominal [2]** 76/8 76/22
**none [1]** 50/7
**nonresidential [1]** 73/23
**normal [2]** 23/25 53/3
**Northern [1]** 38/11
**Nos [2]** 1/4 3/6
**not [135]**
**note [3]** 11/4 13/9 43/2
**noted [1]** 3/25
**nothing [5]** 13/9 14/12 17/25 28/23 69/16
**Notification [1]** 70/21
**notify [2]** 72/25 73/9
**notion [1]** 64/6
**now [15]** 6/3 7/1 9/14 12/13 20/6 29/11 35/9 35/22 37/6 37/18 38/15 43/13 51/22 67/6 67/10
**nowhere [1]** 17/24
**nuanced [1]** 43/15
**number [4]** 4/16 7/4 13/1 41/3
**numbers [4]** 5/14 5/16 57/19 76/19
**NW [2]** 1/14 2/5

**O**

**O.S [2]** 21/3 23/11
**objected [1]** 17/8
**objection [12]** 7/20 9/10 13/5 14/19 15/12 15/16 16/20 16/25 18/8 18/24 18/25 28/2
**objections [7]** 8/22 8/23 9/2 9/10 14/3 73/25 75/11
**objectives [1]** 59/2
**objects [1]** 15/15
**obligation [1]** 73/1
**obligations [1]** 72/21
**obliterated [1]** 57/19
**observing [1]** 16/9
**obstruct [2]** 17/16 72/8
**obstruction [6]** 17/3 17/12 18/11 18/12 18/23 58/7
**obtaining [1]** 59/20
**obviously [4]** 8/18 43/22 50/4 53/11
**occasion [1]** 4/2
**occasions [1]** 36/7
**occupation [1]** 65/12

**occupational [3]** 73/19 73/20 75/24
**occurred [4]** 16/3 19/12 20/2 54/16
**odd [1]** 62/7
**off [15]** 22/2 23/12 23/23 24/16 24/22 25/7 33/3 39/6 40/16 42/8 43/19 46/24 53/11 54/3 76/19
**offender [6]** 32/5 36/16 70/21 70/23 71/7 73/22
**offender's [1]** 40/8
**offense [28]** 8/13 10/20 13/19 19/2 31/18 31/23 32/13 36/14 46/21 57/16 57/20 57/23 58/5 58/7 58/10 59/4 59/6 59/8 59/12 66/18 67/8 67/10 67/15 68/17 68/20 70/25 71/3 71/4
**offenses [6]** 11/1 63/24 66/15 67/7 67/13 70/5
**offensive [1]** 39/17
**offering [1]** 35/23
**OFFICE [13]** 1/14 3/12 12/21 18/3 19/17 70/22 71/6 71/11 71/13 71/16 73/2 73/4 73/9
**Office's [1]** 4/22
**officer [4]** 2/2 71/8 71/25 73/7
**officers [1]** 42/2
**OFFICES [1]** 1/17
**Official [1]** 2/4
**oftentimes [1]** 61/22
**oh [5]** 8/23 10/4 19/10 44/22 74/2
**Ohio [5]** 11/25 27/1 39/15 46/3 60/5
**okay [35]** 3/17 5/22 6/2 6/23 8/23 9/8 9/23 10/16 14/2 14/14 16/25 17/17 18/14 19/15 20/12 21/14 23/2 28/9 28/17 30/9 30/13 33/2 38/1 43/12 44/25 54/13 56/9 57/4 57/10 75/4 75/8 75/14 76/10 77/5 77/9
**old [14]** 34/23 34/25 35/15 35/17 35/19 35/23 36/4 37/10 37/16 38/9 38/24 62/22 66/17 66/22
**older [1]** 65/1
**Olga [35]** 7/22 11/20 12/8 14/20 15/1 15/7 15/9 15/16 21/24 22/20 23/7 23/16 24/25 25/25 31/15 33/9 33/10 34/10 39/15 39/21 40/25 41/18 42/7 44/16 45/5 46/10 46/14 48/21 50/15 60/1 61/4 61/18 64/15 67/4 68/25
**Olga's [4]** 12/6 15/23 16/17 22/12

**O**

**one [41]** 4/2 5/10 6/1 6/10 13/16 13/19 15/17 16/21 17/12 22/2 23/12 25/10 27/9 27/9 33/21 35/15 35/25 38/23 45/20 50/12 50/15 52/18 53/24 55/1 55/17 58/3 58/11 58/12 58/13 58/14 62/11 62/11 63/17 65/5 65/6 67/6 68/6 69/14 69/22 70/13 76/1
**one-time [1]** 65/5
**ones [1]** 53/23
**only [20]** 9/9 35/11 46/13 49/11 49/25 51/18 51/24 52/3 52/15 58/11 58/12 58/13 58/14 60/15 63/4 63/7 63/17 67/16 68/13 72/1
**open [1]** 47/13
**operandi [1]** 13/22
**operation [1]** 38/12
**operations [1]** 69/3
**opiate [1]** 43/19
**opinion [1]** 53/19
**opioid [1]** 43/18
**opportunity [1]** 29/2
**opposing [1]** 9/17
**order [7]** 9/1 25/24 47/9 73/5 75/25 76/3 76/6
**ordered [1]** 70/4
**other [31]** 4/2 12/2 28/18 28/19 30/5 31/4 31/14 32/3 32/14 33/22 36/17 48/21 48/23 53/23 53/24 54/6 59/16 60/5 60/10 62/12 62/13 64/3 64/17 65/1 65/2 68/9 71/19 71/21 75/1 75/9 76/2
**others [3]** 59/18 67/17 69/14
**otherwise [3]** 10/23 50/22 76/17
**ought [4]** 7/8 17/7 28/14 32/17
**our [7]** 7/20 8/8 13/5 22/22 29/2 34/12 63/8
**out [35]** 4/13 6/16 6/17 7/20 7/22 13/13 24/20 24/22 25/23 33/10 36/5 36/15 37/21 39/22 40/25 41/18 42/3 42/3 42/13 49/2 51/4 51/17 51/19 52/14 53/15 54/24 55/1 55/7 61/20 66/7 67/2 68/17 68/23 69/5 69/8
**outlined [2]** 22/25 25/19
**outside [1]** 40/11
**over [8]** 7/25 25/7 28/12 38/11 39/5 55/6 56/2 69/3
**overcome [1]** 52/22

**overlap [1]** 13/14
**overlapped [2]** 13/1 13/10
**overlaps [1]** 12/24
**overrule [2]** 15/15 18/24
**overwhelming [1]** 48/19
**own [8]** 18/5 18/11 35/18 36/12 59/23 62/1 64/4 66/2

**P**

**p.m [4]** 1/6 57/8 57/8 77/14
**package [1]** 33/1
**page [9]** 14/25 15/4 15/16 16/7 16/10 16/10 22/14 23/8 23/14
**page 108 [1]** 16/7
**page 135 [1]** 14/25
**pages [1]** 15/24
**paid [1]** 73/1
**pandemic [2]** 54/22 55/9
**pandering [3]** 39/23 39/23 46/16
**paradise [1]** 46/5
**paragraph [9]** 12/21 14/19 15/12 15/19 15/19 16/15 16/19 16/23 19/19
**parcel [1]** 48/25
**parent [2]** 50/11 53/2
**parenting [1]** 73/22
**parlayed [1]** 53/13
**part [19]** 5/2 9/19 11/4 14/1 17/2 23/15 23/19 26/12 32/4 33/1 37/22 44/18 44/25 45/1 48/22 48/24 52/15 59/15 62/7
**partially [1]** 35/20
**participate [5]** 71/3 72/9 75/22 76/9 76/18
**participation [1]** 71/9
**particular [7]** 10/17 15/14 16/13 32/15 51/1 51/3 55/3
**particularity [1]** 12/11
**particularly [3]** 10/23 49/23 62/22
**parties [1]** 4/17
**parties' [1]** 7/14
**partying [1]** 23/24
**passed [1]** 61/20
**passing [1]** 33/10
**past [6]** 42/5 50/6 51/24 53/9 56/20 63/22
**path [2]** 52/21 56/23
**Pause [3]** 6/18 6/24 10/12
**pay [6]** 70/4 71/4 71/9 72/14 72/17 76/13
**payable [1]** 72/21
**payment [1]** 75/15
**payments [3]** 72/16 76/7 76/8
**penalty [1]** 58/17

**pending [3]** 39/17 39/20 40/10
**people [17]** 8/6 12/25 17/23 44/23 45/25 47/24 49/14 49/15 59/16 61/14 63/17 64/20 65/16 65/24 65/25 68/19 71/21
**per [4]** 14/21 15/7 15/9 22/19
**percentage [2]** 71/4 71/10
**perform [1]** 73/12
**performed [1]** 27/6
**perhaps [6]** 3/20 12/22 15/22 24/16 64/4 64/22
**period [12]** 19/11 20/3 20/8 21/3 22/3 23/10 24/17 28/16 31/17 32/3 60/3 74/4
**periodic [2]** 70/14 71/12
**permission [2]** 74/14 74/23
**permits [1]** 75/19
**permitted [1]** 64/16
**perpetrated [1]** 33/16
**persistent [1]** 52/9
**person [12]** 3/13 10/19 10/19 34/19 43/19 45/2 48/22 53/10 53/16 59/19 66/15 67/12
**persons [2]** 13/11 13/14
**perspectives [1]** 43/8
**phone [5]** 17/6 25/20 37/15 37/22 66/8
**photograph [1]** 24/24
**physical [2]** 10/22 61/21
**physically [1]** 60/23
**picture [1]** 36/1
**pictures [2]** 38/23 40/14
**piece [1]** 32/17
**pimp [5]** 40/3 45/20 45/22 48/5 60/4
**pimp-prostitute [1]** 48/5
**place [4]** 13/10 13/14 16/17 56/25
**placement [2]** 70/14 73/17
**Plaintiff [1]** 1/4
**plan [1]** 32/5
**plans [1]** 39/25
**plea [2]** 29/13 74/21
**pleading [1]** 9/2
**pleadings [1]** 14/12
**please [7]** 3/4 10/10 31/15 54/1 56/11 57/9 77/6
**plenty [1]** 4/1
**plus [2]** 25/19 27/23
**point [20]** 17/1 17/8 17/18 18/16 18/19 19/1 21/4 25/2 33/10 38/15 38/21 38/25 39/4 39/12

63/24 68/1
**pointed [4]** 44/23 47/14 52/14 62/5
**pointing [6]** 33/17 34/18 34/19 42/6 49/6 62/8
**points [4]** 17/5 20/5 20/13 58/6
**police [1]** 36/22
**polygraph [1]** 71/12
**poor [1]** 8/10
**pornography [2]** 36/3 36/4
**portion [1]** 22/6
**positive [1]** 44/10
**possessing [1]** 70/11
**possession [6]** 19/19 34/2 57/13 66/19 66/21 67/7
**post [2]** 39/19 40/14
**posted [6]** 24/24 35/20 35/23 36/8 39/3 49/9
**posting [2]** 39/16 40/12
**posts [1]** 34/16
**preceded [3]** 52/24 53/4 66/25
**precise [1]** 12/15
**prediction [1]** 64/22
**preliminary [2]** 4/16 28/19
**premeditated [1]** 68/5
**preparation [1]** 11/5
**prepared [3]** 3/19 3/22 14/6
**preparing [1]** 22/23
**preponderance [3]** 18/17 23/5 24/19
**presentence [14]** 4/2 4/17 4/21 7/7 9/6 9/11 9/18 16/5 17/20 18/9 19/7 60/20 73/2 73/6
**presiding [1]** 3/3
**pressured [1]** 60/20
**pressuring [1]** 60/22
**presumably [2]** 27/25 46/20
**pretenses [1]** 59/17
**Prettyman [1]** 2/5
**previously [1]** 22/16
**primarily [1]** 43/3
**principal [1]** 43/9
**print [2]** 6/16 6/17
**prior [7]** 3/21 9/20 36/19 40/21 41/9 50/7 58/3
**prison [7]** 63/1 73/20 75/23 75/23 76/7 76/9 76/18
**Prisons [2]** 69/19 70/22
**privileges [1]** 41/22
**probability [1]** 53/14
**probably [5]** 37/13 48/25 63/19 65/13 69/8
**probation [20]** 2/2 3/12 4/22 12/21 15/5 16/14

19/17 19/22 70/22 71/6 71/8 71/11 71/13 71/16 71/25 73/2 73/4 73/7 73/9
**Probation Office [8]** 12/21 19/17 70/22 71/11 71/13 73/2 73/4 73/9
**Probation Office's [1]** 4/22
**probation officer [1]** 71/8
**Probation's [2]** 29/11 29/22
**probationary [2]** 19/11 20/8
**problem [2]** 63/13 68/16
**problems [2]** 65/2 65/2
**proceed [3]** 3/19 3/23 4/5
**proceedings [5]** 1/9 2/7 3/14 77/14 78/4
**process [2]** 9/20 10/6
**produced [1]** 2/8
**producing [1]** 44/1
**product [1]** 64/10
**productive [2]** 53/10 57/2
**program [12]** 71/8 71/9 71/10 72/10 72/11 72/11 73/20 73/21 73/21 73/22 73/23 75/24
**programming [2]** 75/23 76/9
**programs [2]** 73/19 76/3
**progressive [1]** 56/21
**prohibited [2]** 40/15 72/7
**promised [2]** 8/5 60/11
**promises [1]** 45/23
**promote [2]** 59/7 67/15
**proof [1]** 17/13
**property [2]** 40/7 44/1
**proposition [3]** 8/20 11/11 19/10
**propriety [1]** 44/5
**prosecuted [1]** 17/22
**prosecution [3]** 11/12 34/12 45/16
**prosecutions [1]** 11/11
**prostitute [5]** 31/2 45/20 47/19 47/20 48/5
**prostitutes [1]** 30/25
**prostituting [2]** 38/10 38/20
**prostitution [28]** 17/24 17/25 21/5 21/9 21/12 26/7 30/17 30/20 30/22 30/22 36/23 44/13 44/19 44/22 45/1 45/7 45/20 46/10 47/3 48/1 49/2 49/12 49/20 50/17 51/9 51/10 53/13 56/25
**protect [5]** 42/4 43/20 59/8 63/19 63/19

Case 1:19-cr-00369-APM Document 160 Filed 09/21/22 Page 88 of 92

**P**

provide [4]  6/17 9/18 59/7 59/9
provided [2]  9/13 10/2
PSR [5]  7/5 7/20 8/22 9/2 13/5
public [2]  35/9 59/9
puffery [1]  46/1
punishment [2]  59/7 64/12
purchase [1]  68/25
purchased [3]  25/21 59/14 59/17
purpose [2]  11/19 63/17
purposes [3]  10/17 11/11 77/7
pursuant [4]  70/18 71/23 71/25 72/18
put [13]  4/20 11/21 16/7 16/12 23/22 36/11 37/15 44/24 53/5 54/6 65/3 69/13 73/25
putting [5]  33/20 36/4 37/21 42/6 63/6
pyramid [1]  46/5

**Q**

qualify [1]  76/3
qualifying [1]  70/25
question [2]  27/14 48/12
questions [5]  14/15 14/17 20/20 20/22 51/20
quibble [2]  47/6 47/6
quite [7]  18/6 22/6 24/15 25/3 52/1 66/4 68/18
quoted [1]  22/6
quoting [1]  66/14

**R**

raise [1]  28/20
raised [3]  4/17 7/5 14/4
random [1]  35/18
Range [3]  58/16 58/22 74/7
rate [2]  75/15 76/15
rather [1]  33/18
rationale [1]  13/5
re [1]  73/10
re-entry [1]  73/10
reach [1]  17/13
reached [2]  55/1 55/3
reaching [1]  54/20
read [12]  6/3 8/18 8/25 12/6 12/7 16/6 16/15 22/5 23/19 26/18 29/2 60/21
readiness [1]  72/12
ready [2]  4/5 6/25
real [5]  40/18 49/11 63/13 63/17 68/16
realization [1]  65/25
realize [1]  63/2
really [18]  16/20 16/21 17/15 24/7 24/9 24/14

reiterated [1]  23/24
46/11 52/1 60/13 62/12 64/10 65/21 66/4 67/7
Realtime [1]  2/4
reason [3]  13/25 20/5 62/9
reasonable [5]  50/23 61/2 72/1 72/4 72/5
reasonably [1]  16/6
reasons [10]  8/12 12/17 20/12 36/18 41/7 42/21 54/5 54/6 61/17 62/16
rebuild [1]  42/12
recall [4]  26/5 26/6 33/23 34/11
receipt [2]  4/4 9/19
received [11]  4/14 4/21 5/5 5/10 5/13 7/2 7/2 8/25 9/17 9/25 74/19
recent [2]  5/10 5/17
recess [3]  57/7 57/8 77/13
recidivate [2]  66/15 67/13
recognize [2]  48/15 48/16
recognizing [1]  32/25
recollection [2]  26/3 26/9
recommend [2]  73/17 73/18
recommendation [4]  4/23 29/11 29/12 29/23
recommended [4]  17/5 29/25 30/1 30/2
record [9]  4/20 28/14 35/9 41/9 54/4 74/1 75/12 77/7 78/3
recorded [1]  2/7
records [3]  36/10 36/10 36/12
recruit [1]  39/7
Red [2]  36/9 37/10
reference [1]  58/4
referred [2]  39/19 41/19
referring [3]  33/8 40/2 45/2
refers [1]  40/17
reflect [3]  16/23 59/6 67/14
reflected [1]  7/7
reflects [3]  52/13 64/21 64/21
refrain [1]  70/11
refused [1]  45/7
regarding [2]  20/19 43/8
Registered [1]  2/3
registration [2]  70/21 70/23
Regrettably [1]  5/18
regulations [2]  71/8 72/11
reintegrate [2]  73/15 73/16
reiterate [1]  61/6

related [2]  67/7 67/10
relation [1]  46/14
relations [1]  48/24
relationship [10]  18/4 43/23 44/15 45/1 46/11 48/5 48/21 48/23 52/3 62/10
relative [1]  32/14
relatively [2]  20/4 53/1
release [7]  19/11 29/9 42/23 69/25 70/3 73/2 73/11
released [5]  19/20 56/22 66/21 67/17 75/18
relevant [7]  7/21 23/19 31/10 32/4 43/8 58/1 60/10
rely [2]  20/18 21/1
relying [1]  22/11
remarkably [1]  52/17
remember [15]  12/9 18/11 19/9 19/13 19/14 34/18 38/6 41/25 53/24 54/16 54/17 54/19 54/24 75/5 76/18
remembers [1]  34/15
remind [1]  37/8
remove [1]  56/17
removed [1]  34/13
rendered [1]  26/7
repeat [1]  29/4
repeatedly [6]  30/18 35/16 35/20 37/15 41/3 41/20
repeating [1]  14/12
repetitive [1]  28/3
report [15]  4/2 4/18 4/22 7/7 9/6 9/11 9/11 9/14 9/18 16/5 17/20 19/7 60/20 73/3 73/7
reported [1]  68/14
Reporter [4]  2/3 2/3 2/4 2/4
reprehensible [2]  31/1 44/24
request [2]  74/14 74/23
requested [1]  73/18
requesting [1]  53/18
require [2]  73/12 75/24
required [1]  57/10
requirements [2]  70/20 71/14
requires [1]  53/20
reside [1]  70/24
residence [2]  59/23 73/5
Residential [1]  73/21
resistance [1]  46/7
resources [1]  73/14
respect [14]  17/7 25/25 31/15 31/21 40/9 54/8 57/24 58/2 59/7 60/1 64/18 67/15 68/25 74/5
respectfully [1]  66/16
respond [2]  21/15 29/5

responded [2]  39/21 38/13
responds [2]  24/2 24/5
response [4]  19/7 43/15 43/25 62/7
responsible [1]  61/10
restitution [18]  20/15 20/16 20/20 21/17 21/19 23/4 23/5 25/24 26/12 27/24 28/14 28/17 29/10 70/17 75/15 76/3 76/6 76/8
restricted [1]  41/22
result [1]  19/12
results [1]  58/16
return [3]  50/10 50/11 73/6
review [2]  4/1 30/14
reviewed [4]  4/15 4/21 7/2 7/3
ridden [1]  43/18
ridiculous [1]  64/9
right [55]  3/15 5/14 5/23 5/24 6/2 6/23 7/11 9/8 10/10 10/13 11/5 12/20 13/7 13/13 14/3 19/25 20/9 20/11 20/15 27/12 27/17 27/20 27/21 28/16 28/18 28/24 29/16 30/4 30/8 32/23 34/2 35/13 36/25 37/18 38/2 46/25 47/6 48/10 51/5 52/4 52/11 55/12 55/24 56/12 57/3 57/5 74/3 74/11 74/16 74/25 76/4 76/21 76/23 76/25 77/3
rise [2]  3/2 77/12
RMR [2]  78/2 78/8
road [1]  56/21
robbery [1]  66/18
role [1]  18/5
Rood [1]  37/10
Roof [1]  36/9
room [1]  36/24
roughly [1]  25/4
rule [4]  7/14 14/5 14/6 16/13
rule-breaking [1]  16/13
rules [8]  15/13 15/17 16/1 16/3 60/19 60/19 71/7 72/10
run [4]  29/12 29/14 32/25 69/22
Russia [3]  7/25 24/5 24/7
Russians [1]  34/3

**S**

S.B [2]  43/13 49/5
Sabatino [1]  11/9
Sadie [44]  13/17 13/19 14/21 14/22 15/7 15/9 16/9 16/11 17/6 17/23 18/2 27/3 33/16 33/19 34/17 34/22 34/22 35/19 36/2 36/7 37/10 38/24 38/24 39/2 39/7

39/16 39/21 41/1 41/3 41/18 41/19 42/3 42/6 42/16 43/12 43/14 44/9 45/4 45/5 64/18 66/6 66/19 67/20
Sadie's [8]  16/8 16/10 16/18 22/8 22/10 22/13 22/14 42/1
safe [1]  39/25
said [30]  15/1 15/3 15/20 18/8 19/14 22/7 23/7 27/2 27/7 28/10 30/18 33/10 33/19 34/19 39/12 40/21 41/5 43/16 44/9 44/17 45/7 47/3 50/15 50/22 51/9 58/6 61/6 61/19 62/13 66/6
sale [1]  46/1
same [10]  13/2 15/3 32/4 34/1 41/10 48/24 48/25 57/15 59/20 64/1
sat [1]  52/6
satisfied [1]  44/9
Saturday [1]  24/3
save [1]  27/15
saw [1]  38/7
say [24]  4/14 14/7 16/11 17/7 22/2 24/7 25/4 25/5 25/16 26/19 30/10 31/9 45/25 46/18 46/23 47/1 49/1 51/4 57/14 61/1 61/1 61/16 67/19 67/21
saying [7]  19/17 37/13 37/20 50/19 51/22 55/15 61/9
says [7]  10/25 21/18 23/8 23/20 24/15 29/24 37/18
scarcity [1]  64/9
scared [1]  33/11
scarred [2]  62/22 62/23
scheme [1]  32/5
school [1]  53/2
schools [1]  55/9
score [1]  19/1
sealed [1]  4/24
search [4]  59/23 71/21 71/25 72/4
searches [1]  71/23
seated [2]  3/4 57/9
second [4]  5/20 19/13 67/10 76/1
Security [1]  62/2
see [5]  5/12 23/6 23/20 23/21 38/22
seeking [2]  29/8 43/10
seem [1]  52/9
seemed [3]  52/17 52/20 52/25
seems [8]  19/17 20/4 26/9 43/9 50/1 54/12 64/3 68/3
seen [7]  6/11 9/3 9/9 9/12 49/14 51/17 66/5
sell [2]  37/14 47/24

**S**

semi [2] 59/15 63/16
semi-automatic [2] 59/15 63/16
send [2] 41/23 67/16
sense [4] 10/7 47/11 50/8 59/13
sentence [36] 6/8 15/6 29/8 29/25 30/1 30/15 31/19 32/12 32/14 32/25 36/15 40/24 41/7 41/15 42/4 42/22 56/5 56/7 58/25 59/5 64/23 67/3 67/14 67/25 68/7 68/9 68/14 69/4 69/11 69/23 73/5 73/23 74/4 74/6 74/11 74/17
sentenced [5] 19/21 32/21 41/17 68/20 69/24
sentences [2] 29/14 69/19
sentencing [34] 1/9 3/6 3/17 3/20 3/21 4/4 4/15 4/24 4/25 5/8 6/7 8/18 9/7 9/20 10/3 20/19 22/23 22/25 29/2 29/6 30/18 31/10 33/8 35/10 37/6 43/3 44/20 45/17 54/14 59/2 62/13 68/11 74/7 74/21
separate [1] 34/3
September [12] 19/21 19/23 20/3 21/25 23/10 24/17 25/3 25/5 25/6 31/17 66/22 78/7
serial [1] 57/19
series [1] 5/8
serious [1] 64/11
seriously [1] 49/9
seriousness [2] 59/6 67/15
serve [2] 69/7 69/24
service [1] 73/12
services [5] 21/21 26/7 28/8 72/10 73/19
serving [2] 50/9 53/15
set [4] 58/24 76/14 76/24 77/2
seven [4] 10/8 22/1 23/11 24/3
severe [1] 36/15
sex [31] 16/9 21/22 23/9 24/13 25/17 26/4 26/7 26/21 26/25 27/3 27/6 28/11 29/25 30/20 33/19 35/18 35/24 36/19 44/25 47/10 57/25 58/9 60/16 61/25 63/7 70/21 70/23 71/3 71/4 71/7 73/22
sexual [2] 31/3 61/3
sexually [1] 38/20
shaking [2] 4/7 52/9
shall [10] 59/10 70/6 70/20 71/16 71/19 72/6 72/9 72/24 73/2 73/6
she [173]

sides [3] 21/22 25/23 34/25 36/4 42/18
shell [2] 51/20 61/9
shifted [2] 21/4 21/5
short [2] 46/10 69/16
short-term [1] 46/10
shortcomings [1] 49/19
shorter [1] 64/23
shot [2] 49/4 49/12
should [10] 5/4 10/6 11/2 17/14 21/19 32/12 57/14 58/2 58/6 62/11
shouldn't [3] 18/16 18/16 28/4
show [2] 28/5 35/25
showed [1] 60/22
showing [1] 40/16
shutting [1] 55/9
side [4] 7/17 28/19 68/8 73/25
sides [1] 7/2
signed [4] 47/13 47/14 47/15 47/16
significantly [1] 53/11
simple [2] 46/16 51/20
simply [9] 7/14 14/5 16/14 16/15 16/21 29/5 30/21 32/6 32/22
since [3] 4/5 4/8 18/15
sir [2] 3/16 77/10
sitting [2] 34/12 34/17
situation [5] 8/2 11/25 60/4 60/7 61/15
situations [2] 47/10 62/18
skills [1] 72/12
skills-development [1] 72/12
slap [2] 38/15 40/21
slapped [4] 33/12 47/15 51/1 61/21
slightly [2] 15/6 15/10
slipped [1] 53/11
slow [5] 34/21 49/6 49/6 49/7 49/8
small [1] 52/15
smell [1] 54/12
snow [1] 40/3
so [101]
so I think [5] 6/4 13/13 46/9 50/8 56/1
So it's [3] 25/18 32/22 58/15
So this is [1] 66/24
So what [1] 24/7
social [2] 40/14 62/2
society [5] 53/10 56/22 57/2 63/5 73/16
software [1] 71/17
sold [1] 47/23
some [25] 6/4 6/5 12/7 12/24 13/2 25/2 29/5 29/5 33/4 37/7 37/15 37/21 39/24 43/24 44/2 45/3 47/23 48/18 51/5 52/19 54/10 59/13 64/1 66/25 68/11

somebody [5] 50/16 53/9 53/17 65/5 66/11
somebody's [2] 5/15 59/22
someone [2] 44/6 69/15
someone's [1] 44/24
something [9] 10/9 16/15 23/15 30/11 44/8 48/8 49/8 76/13 76/14
sometimes [2] 16/16 27/7
somewhat [4] 11/6 17/14 44/10 45/23
soon [1] 40/25
sorry [3] 17/1 30/12 69/10
sort [6] 13/22 25/1 34/3 35/8 64/2 67/10
sorts [2] 8/6 45/25
span [1] 67/11
speak [2] 4/1 42/11
speaking [2] 11/13 15/14
special [2] 70/4 71/1
specific [3] 22/5 22/20 71/4
specifically [6] 21/18 23/7 24/10 25/16 27/13 44/21
specify [2] 16/12 25/4
spent [2] 43/4 62/23
spoke [1] 52/25
spoken [1] 65/23
Squirrels [1] 40/18
stable [1] 53/1
stand [3] 11/10 42/3 57/6
standard [1] 70/7
standing [1] 40/11
stands [2] 57/7 77/13
start [4] 22/13 33/3 70/18 75/16
started [1] 24/2
starting [1] 22/13
stashed [1] 59/22
state [3] 59/16 70/10 70/23
stated [2] 31/24 70/18
statement [4] 14/20 18/7 43/16 44/7
statements [3] 4/24 18/4 29/3
STATES [6] 1/1 1/3 1/10 3/7 11/8 11/9
statistics [3] 68/8 68/11 68/19
statute [2] 21/17 75/19
statutory [2] 30/24 74/6
Stay [1] 39/25
stemmed [1] 39/9
stenography [1] 2/7
still [9] 19/12 41/18 42/2 42/9 42/11 44/5 58/15 67/1 73/10
sting [1] 38/7
stocks [1] 47/24

stop [1] 39/11
storage [1] 71/20
straight [1] 21/5
straight-up [1] 21/5
straightforward [2] 20/4 59/14
strangers [1] 35/18
Street [1] 1/14
streets [1] 66/7
stress [1] 30/17
strict [1] 60/19
strictly [1] 11/12
striking [2] 52/1 52/5
strip [1] 60/15
struck [1] 52/8
struggled [1] 67/24
struggling [1] 42/11
student [1] 70/24
stuff [3] 39/25 43/11 52/24
stunned [1] 66/4
subject [3] 13/23 45/19 71/23
subjected [1] 46/3
submission [1] 5/7
submissions [1] 7/14
submit [4] 70/13 71/12 71/19 72/6
submitted [6] 5/2 5/9 10/14 20/18 21/2 29/3
subsequent [2] 4/3 5/7
substance [4] 70/11 70/12 72/6 72/7
substantially [1] 41/15
success [1] 8/9
such [7] 39/17 51/6 64/8 68/13 72/11 72/25 75/23
sudden [1] 54/25
suffer [1] 62/11
sufficient [4] 4/8 53/21 56/8 59/1
suggested [5] 3/20 8/19 26/17 60/25 66/13
suggesting [2] 24/15 51/23
suggestion [1] 12/21
Suite [1] 1/19
summarized [1] 9/17
sums [1] 39/5
Sunday [3] 24/2 24/5 55/14
supervise [1] 71/9
supervised [6] 19/11 19/22 29/9 42/23 69/25 70/2
supervision [10] 19/3 19/23 20/4 63/25 70/6 70/8 70/14 71/15 72/2 73/13
supplements [2] 5/9 5/17
support [3] 8/19 36/19 49/18
supportive [2] 49/21 50/11

supports [1] 15/22
supposed [4] 9/25 35/4 56/3 57/22
Supreme [1] 64/7
sure [16] 4/10 8/16 8/20 20/10 25/3 27/13 33/7 43/24 44/5 46/18 51/6 52/13 54/23 57/22 61/17 61/24
surely [1] 61/12
surrounding [1] 54/21
surveillance [1] 39/10
susceptible [1] 10/23
suspend [1] 77/1
suspended [2] 40/24 75/17
suspicion [1] 72/1
system [1] 64/5

**T**

table [1] 34/12
tail [1] 62/21
take [16] 4/16 4/18 6/13 6/14 10/11 24/20 26/15 31/16 39/10 42/3 49/9 57/4 64/16 68/4 73/14 77/8
taken [2] 62/1 65/19
takes [1] 62/14
taking [2] 55/16 63/6
talk [4] 3/21 4/8 37/17 62/12
talked [4] 40/5 49/24 60/2 60/25
talking [14] 8/21 15/25 22/14 22/15 33/13 33/21 34/6 37/4 37/12 40/8 63/14 66/6 67/6 76/21
tamper [1] 72/8
task [1] 4/11
tattoos [1] 40/5
taught [1] 43/20
teaching [1] 16/22
tell [4] 12/5 22/5 23/3 68/21
telling [1] 50/20
ten [3] 31/19 57/4 58/19
ten-minute [1] 57/4
tend [1] 68/5
tenor [1] 27/14
term [6] 10/18 19/22 30/6 46/10 69/21 70/2
termination [1] 73/8
terms [9] 6/4 12/24 20/13 27/20 32/18 45/5 45/25 65/12 69/25
TERRELL [2] 1/6 3/8
Terrell Armstead [1] 3/8
terrified [1] 42/7
test [1] 70/13
testified [14] 21/24 22/1 22/21 23/8 23/11 25/9 35/11 36/6 42/7 42/13 50/24 60/17 60/18 61/19

90

**T**

testifies [2] 15/25 25/2
testify [3] 12/13 14/22 26/24
testifying [1] 34/10
testimony [41] 7/21 12/6 14/22 15/4 15/11 15/21 15/21 15/22 15/23 16/3 16/6 16/11 17/14 22/5 22/8 22/10 22/21 23/6 23/13 23/15 25/11 26/3 26/6 26/9 26/16 26/23 27/5 27/14 28/10 31/4 33/7 33/15 33/23 34/16 36/8 42/1 51/6 52/6 62/1 62/5 62/7
testing [3] 71/12 72/6 72/8
tests [1] 70/15
text [3] 23/16 55/14 60/21
text-message [2] 23/16 60/21
than [20] 14/23 15/9 15/22 16/5 23/25 27/9 27/25 43/23 46/3 48/12 49/16 53/21 58/13 59/1 60/10 64/3 65/1 68/22 74/6 75/9
Thank [12] 4/9 7/19 20/17 20/23 42/23 42/24 43/1 56/9 57/2 57/3 57/5 77/11
Thank you [9] 4/9 7/19 20/17 20/23 42/23 56/9 57/2 57/3 57/5
thanks [2] 42/14 75/13
that [459]
that'll [2] 25/24 28/17
that's [52] 3/24 4/21 5/22 6/5 7/15 8/7 9/2 9/22 11/17 13/9 14/7 15/2 18/8 19/15 20/9 22/18 23/19 24/3 25/6 25/8 27/1 27/9 27/10 30/13 31/3 31/18 32/10 35/19 36/2 36/4 38/3 38/19 42/17 45/24 46/1 46/6 47/25 48/15 48/18 50/12 50/20 51/18 55/16 58/25 61/24 64/15 66/24 69/9 69/21 74/4 74/17 75/7
their [11] 21/6 29/12 33/17 40/18 42/12 43/2 47/10 52/3 62/14 62/21 65/3
them [27] 6/17 6/17 9/18 17/23 33/5 34/10 34/12 34/13 34/13 39/3 40/5 48/23 61/22 62/5 62/14 62/19 62/24 63/6 63/7 63/8 63/18 63/19 63/20 65/3 65/23 66/1 66/3
themselves [3] 42/11 42/14 61/14

then [55] 4/9 4/18 5/2 6/3 6/16 6/21 7/12 9/17 9/18 12/20 13/17 14/3 15/12 16/8 16/19 18/2 19/12 20/15 22/13 22/22 23/23 24/5 24/8 25/2 27/20 28/23 44/7 50/2 53/13 65/24 66/22 75/6 75/22
therapy [1] 25/22
there [93]
there's [27] 4/6 8/25 13/17 13/17 14/7 14/15 14/19 15/12 15/18 17/19 18/22 20/15 31/1 32/11 32/16 38/23 43/7 49/15 53/14 54/10 58/11 58/13 58/14 58/14 64/2 64/23 68/2
thereafter [1] 70/15
therefore [2] 72/15 72/19
these [33] 3/13 5/14 6/11 8/12 9/13 9/21 10/1 24/12 34/3 34/9 34/16 35/20 35/22 35/25 36/10 38/17 38/23 39/6 40/7 41/9 42/6 44/2 51/15 62/21 63/4 64/1 64/17 65/22 65/25 68/19 69/3 70/5 71/21
they [57] 8/10 8/10 8/11 15/1 19/9 19/10 19/14 21/4 21/4 21/8 21/8 21/9 22/18 23/17 27/3 28/5 31/5 32/25 34/13 35/9 35/11 36/23 36/23 37/17 38/7 38/8 38/12 39/10 40/1 42/10 42/11 42/14 43/12 44/10 46/20 48/14 54/24 54/25 54/25 55/3 55/7 55/10 59/21 59/24 62/15 62/15 62/16 62/22 62/23 63/16 64/17 65/1 65/2 65/2 65/3 70/9 76/13
they're [7] 10/2 33/13 34/1 37/12 44/25 68/12 76/8
thing [10] 5/13 7/15 12/2 18/25 46/14 48/25 49/5 50/15 51/12 65/21
things [5] 39/17 45/25 47/17 60/5 62/23
think [88]
thinking [2] 66/10 68/3
this [150]
those [38] 9/17 9/18 11/13 12/14 12/16 18/5 20/12 20/21 21/10 28/7 29/14 36/7 36/8 36/12 41/7 42/21 47/17 50/5 54/5 56/6 57/14 57/19 59/17 59/21 59/25 60/13 60/17 60/19 62/17 62/20 69/3 69/13

75/24 76/3
though [2] 64/17 76/8
thought [3] 30/10 35/4 43/13
thoughts [1] 51/13
threat [2] 47/8 49/11
threaten [1] 63/18
threatened [3] 44/21 45/6 51/9
threatening [2] 41/4 41/23
threats [3] 45/11 47/4 51/8
three [10] 5/17 13/13 31/17 32/6 38/21 51/24 52/3 60/3 61/4 67/6
three-month [2] 31/17 60/3
through [10] 4/14 14/18 20/3 49/17 49/22 57/25 59/20 60/6 61/18 75/6
throughout [1] 50/12
throws [1] 56/1
tied [1] 48/13
time [36] 3/21 4/1 4/3 4/8 10/8 12/15 12/15 13/10 13/14 13/21 15/3 22/2 22/3 23/10 33/11 34/14 38/9 43/5 43/5 48/24 51/14 52/10 61/12 61/18 62/23 63/1 63/21 65/5 67/5 69/8 69/9 69/9 72/4 72/25 75/3 77/2
tired [1] 26/10
titled [2] 9/2 78/4
today [8] 3/19 3/23 5/11 5/25 6/16 32/21 33/6 42/11
together [3] 22/18 32/17 32/17
told [1] 17/23
ton [2] 8/6 39/16
tonight [1] 51/5
too [1] 50/4
took [8] 17/24 33/5 36/2 55/17 62/17 62/18 64/25 65/1
top [1] 76/19
total [5] 8/13 30/5 57/23 58/7 70/2
touched [1] 49/23
toxic [1] 8/2
track [1] 53/11
trade [2] 11/24 63/7
traffic [1] 62/1
trafficked [2] 14/1 31/20
trafficking [25] 6/21 12/23 13/24 29/25 30/20 32/2 38/5 39/2 39/20 39/24 40/10 40/23 41/17 57/12 57/25 58/10 58/19 60/1 61/4 64/1 66/20 66/24 67/8 67/10 72/19

trafficking-related [1] 67/10
training [3] 59/10 72/12 72/13
transcript [5] 1/9 2/7 37/23 66/5 78/3
transcription [1] 2/8
translate [1] 65/24
transport [1] 60/14
travel [1] 25/22
treat [2] 11/6 66/3
treated [4] 66/1 66/2 66/3 69/4
treatment [4] 71/7 73/6 73/8 73/22
tremor [1] 52/9
trial [11] 7/22 12/5 12/13 21/24 22/22 35/12 40/6 41/4 41/25 42/13 43/14
troubled [1] 50/14
true [5] 18/2 20/9 32/20 45/24 55/4
truth [4] 44/2 49/13 63/3 63/3
try [3] 19/13 29/5 49/10
trying [8] 19/9 19/13 24/7 32/17 36/12 41/5 53/8 67/24
turn [2] 4/11 28/20
twice [3] 33/20 42/18 63/22
twins [3] 34/4 34/4 63/15
two [46] 5/23 5/25 6/21 7/16 8/13 11/7 12/17 12/19 13/13 13/16 13/16 13/16 16/25 17/1 17/2 17/5 17/8 17/18 17/19 18/16 18/19 19/1 19/22 20/5 20/13 21/10 21/12 28/7 34/3 39/6 41/9 42/18 48/6 53/2 57/14 57/19 58/6 58/12 59/14 59/21 61/22 63/15 63/23 68/25 69/1 70/14
two-level [6] 7/16 8/13 12/19 16/25 17/2 17/19
two-parent [1] 53/2
two-point [6] 17/1 17/8 17/18 18/16 18/19 19/1
type [1] 41/9

**U**

U.S [2] 1/14 72/22
U.S. [1] 18/3
U.S. Attorney's Office [1] 18/3
U.S.C [2] 58/25 70/19
uh [1] 37/21
uh-huh [1] 37/21
ultimate [1] 32/24
ultimately [7] 31/12 32/15 59/24 62/3 64/19 67/21 68/12
unable [2] 74/13 74/22
unambiguous [1] 45/8

unanimously [1] 46/21
unavailable [1] 74/18
uncertain [1] 45/5
uncomfortable [1] 34/12
under [13] 6/5 6/9 6/10 10/21 20/4 21/18 50/3 54/8 54/15 57/15 59/17 67/2 68/20
undercounting [1] 27/21
undercover [2] 38/7 38/12
undercut [1] 17/15
underestimating [1] 27/24
understand [9] 43/7 47/22 48/2 48/3 52/2 56/20 56/24 65/11 76/10
understanding [1] 29/13
understood [3] 19/16 26/14 64/25
undoubtedly [3] 11/22 61/11 67/9
undressed [1] 35/20
unduly [1] 54/9
unfit [1] 60/23
unit [4] 58/11 58/12 58/14 58/14
UNITED [6] 1/1 1/3 1/10 3/7 11/8 11/9
United States of [1] 3/7
units [1] 58/12
unlawful [1] 70/12
unlawfully [1] 70/11
unstable [1] 8/11
until [3] 23/9 72/25 75/17
unusual [3] 11/3 18/21 45/3
unusually [6] 7/24 9/6 10/22 11/1 11/15 11/23
unwarranted [1] 59/11
up [25] 4/16 21/5 21/13 23/4 25/23 28/5 35/24 37/18 37/20 38/17 42/1 47/14 47/14 47/15 47/16 53/3 53/17 53/19 55/16 56/12 62/16 65/12 67/25 69/6 76/16
upon [6] 4/3 7/14 11/13 27/5 60/19 73/7
upset [2] 15/9 22/17
upward [1] 74/7
us [1] 51/5
usdoj.gov [1] 1/16
use [6] 35/4 39/18 47/9 70/12 71/18 71/21
used [14] 23/20 33/9 35/9 41/21 42/17 43/13 43/19 45/10 45/12 47/2 47/3 47/4 63/19 72/7
using [5] 27/8 28/15 41/23 43/13 65/3

**V**

valued [1] 27/7
variance [1] 12/22
variety [2] 61/16 73/23
various [4] 36/18 38/10 39/11 60/15
vary [1] 13/24
verdict [12] 17/13 46/13 46/17 50/15 54/21 55/1 55/3 55/16 55/17 56/2 61/1 74/11
versus [4] 3/7 11/8 11/9 32/18
very [9] 14/9 15/16 16/15 20/11 21/21 39/6 44/17 51/14 73/10
via [2] 55/19 55/21
victim [21] 4/24 7/17 7/23 9/7 10/18 10/19 10/19 11/1 11/15 11/15 12/17 22/23 29/3 31/1 31/3 41/11 43/15 44/6 44/7 45/5 45/19
victim's [3] 8/9 11/2 21/21
victimhood [1] 14/1
victims [8] 13/17 13/20 30/25 31/5 40/17 41/11 42/9 72/18
video [1] 24/23
view [5] 31/8 43/17 46/9 63/17 69/16
violated [1] 36/17
violation [4] 16/3 57/24 72/2 72/3
violence [8] 44/17 45/6 47/3 47/4 48/21 49/1 50/16 51/8
violent [3] 41/9 42/5 67/6
Virginia [5] 35/16 38/11 59/17 63/15 66/19
vocational [2] 59/10 72/10
voluntary [1] 11/24
vs [1] 1/5
vulnerability [1] 11/3
vulnerable [16] 7/17 7/22 7/24 9/7 10/18 10/18 10/22 11/1 11/16 11/22 11/23 12/3 12/17 31/5 36/18 39/6

**W**

wage [1] 76/20
waiting [1] 41/17
waive [3] 72/15 72/16 72/19
want [27] 3/22 4/7 7/17 8/16 8/20 10/13 13/3 14/4 17/9 19/4 20/16 20/24 30/17 35/3 37/22 47/5 52/2 53/19 56/10 56/19 56/21 56/23 57/1 61/6 66/1 66/10 75/11
wanted [2] 4/10 45/21
wants [3] 14/16 16/21

warn [1] 71/21
warrant [3] 19/12 20/7 59/23
warranted [3] 12/22 18/18 69/10
was [293]
Washington [6] 1/5 1/15 1/19 2/6 12/16 12/16
wasn't [9] 8/3 12/10 18/10 21/11 25/15 44/8 46/6 64/18 66/1
watching [1] 39/10
way [16] 10/7 11/21 16/16 26/17 40/7 44/1 46/9 51/18 52/16 55/16 63/10 64/22 65/25 66/1 66/11 69/3
we [76] 3/25 3/25 4/4 4/7 4/11 6/12 6/13 6/19 7/1 8/8 8/12 9/17 9/17 10/6 11/17 11/20 13/4 20/1 20/18 20/18 21/1 22/16 24/2 25/4 25/5 28/20 29/8 30/2 31/22 32/2 32/18 33/5 34/13 34/25 35/6 35/14 36/7 36/8 36/9 37/6 38/11 38/16 38/21 38/22 39/1 40/5 40/6 40/20 41/10 41/11 41/16 42/5 42/5 42/21 43/13 46/15 48/4 48/5 50/8 53/22 54/14 54/16 54/18 55/2 55/5 55/13 55/13 55/16 55/16 55/17 61/17 61/18 64/11 67/3 75/1 75/12
we'll [4] 4/18 15/10 20/12 75/15
we're [19] 3/17 4/5 4/13 6/19 6/25 25/3 29/19 30/19 31/13 33/21 34/6 35/4 35/8 36/16 40/8 45/2 63/14 67/6 76/21
we've [4] 4/8 60/2 60/24 69/11
weapon [1] 59/20
weapons [9] 57/19 59/15 59/18 59/18 59/21 63/16 63/23 63/24 69/14
week [8] 22/1 22/2 23/11 23/12 24/3 24/11 24/12 24/16
weekend [1] 22/15
well [32] 6/3 11/24 14/9 18/4 20/11 21/2 22/12 26/15 28/10 29/2 29/18 32/3 32/22 36/17 39/15 45/24 47/5 47/7 48/10 50/21 54/17 54/19 65/22 68/3 70/1 70/7 73/10 73/18 73/22 76/19 76/19 76/19
went [10] 12/6 14/22

50/4 52/18 56/24 59/16
were [69] 5/8 5/9 5/17 5/23 5/25 6/14 6/21 8/10 8/10 8/11 9/10 9/13 11/23 12/7 13/23 14/1 22/25 23/17 29/3 31/5 33/4 33/25 34/9 34/9 34/11 35/9 35/23 36/8 36/18 38/8 39/10 41/3 41/4 43/13 43/18 44/23 45/6 45/23 47/3 48/23 48/24 51/7 54/18 54/24 54/25 55/7 55/8 55/9 55/13 57/16 59/24 60/9 60/19 61/21 62/18 63/16 63/25 64/4 64/18 64/22 65/1 65/3 65/10 65/18 66/11 68/13 69/1 69/4 74/10
what [92]
what's [3] 14/12 37/3 68/4
whatever [10] 21/7 21/8 25/13 26/21 32/24 37/14 49/19 52/14 55/23 62/16
when [44] 8/1 21/9 25/1 25/3 34/10 34/22 34/23 34/25 36/23 37/3 37/8 37/24 38/9 38/11 39/14 40/8 41/21 41/22 42/16 43/15 44/21 44/22 44/25 45/5 45/9 45/9 46/2 47/1 49/25 50/15 51/7 52/25 53/15 55/2 59/23 60/22 61/7 63/7 63/24 63/25 65/23 68/6 72/1 73/13
whenever [1] 56/22
where [19] 6/5 11/17 23/3 23/13 24/20 27/9 33/11 33/19 36/10 39/10 57/10 57/21 57/22 60/15 62/20 65/3 68/23 70/23 76/6
whether [6] 3/18 17/15 23/25 28/13 60/9 64/20
which [35] 4/25 6/5 6/20 10/20 11/1 11/10 12/6 16/16 19/18 21/2 22/9 23/14 23/16 24/15 26/11 26/25 29/24 31/14 31/20 32/15 38/16 41/8 45/3 46/21 54/8 54/15 57/12 59/16 60/3 62/2 62/7 70/8 73/3 73/17 74/10
while [17] 11/21 11/21 13/21 17/7 17/21 17/22 19/2 26/6 27/1 39/20 40/10 41/2 41/16 59/20 67/18 70/6 76/7
white [1] 40/3
who [23] 8/5 10/21 10/23 13/23 16/21 36/16 36/17 38/13 40/20 44/5 44/6 45/20

61/14 62/15 62/18 65/16 66/15 67/12 71/21
who's [5] 10/19 37/5 45/19 50/8 61/1
whole [2] 49/5 56/2
why [7] 4/11 6/13 36/15 46/6 46/18 65/5 76/24
wide [1] 47/13
will [33] 4/6 8/24 11/4 11/25 12/5 13/22 16/22 18/23 22/5 31/12 31/12 32/25 43/25 45/25 62/22 62/23 66/15 67/12 69/7 69/18 69/22 71/1 71/8 72/4 72/16 73/9 73/14 73/17 75/5 75/9 77/2 77/7 77/7
Willett [2] 2/2 3/12
William [3] 2/3 78/2 78/8
willing [1] 24/1
wish [2] 23/21 37/18
within [9] 20/3 43/24 60/14 67/10 70/13 72/24 73/11 74/8 74/12
without [8] 11/18 31/24 36/3 46/7 46/7 64/11 74/15 74/23
witness [2] 22/23 51/17
witnessed [1] 33/16
woman [5] 7/24 35/1 38/5 52/7 61/8
woman's [1] 36/11
women [23] 13/2 13/23 14/1 31/5 32/3 36/17 38/21 39/6 40/7 42/6 42/13 47/10 61/14 62/12 62/18 62/22 63/4 63/6 64/1 64/17 65/1 65/25 69/4
won't [1] 77/1
word [4] 12/10 12/10 47/7 50/4
words [1] 76/2
work [9] 21/6 23/21 23/24 24/6 37/19 41/18 60/8 60/15 70/24
worked [7] 21/24 22/1 23/9 23/11 24/11 24/16 27/6
working [10] 21/3 22/22 23/18 23/20 24/21 25/8 39/16 40/3 40/25 53/10
works [1] 25/7
world [1] 8/5
worse [4] 48/12 62/17 62/19 68/4
would [32] 8/5 8/6 8/13 8/14 13/25 14/11 14/23 15/1 15/8 16/17 19/23 20/5 22/17 24/12 25/10 26/25 27/3 27/24 28/5 28/13 29/14 42/8 43/18

46/16 60/5 60/15 60/17 65/5 65/8 66/2 73/25
wouldn't [4] 5/16 30/22 36/11 59/22
wrist [2] 38/15 40/22
writer [2] 9/6 19/8
writes [1] 23/23
wrote [1] 65/16

**Y**

y'all [1] 24/6
yeah [8] 13/12 19/6 26/2 29/21 43/25 48/25 52/23 55/22
year [13] 30/23 35/15 35/17 35/23 37/10 37/16 40/23 42/4 48/11 58/17 62/22 67/11 70/2
years [36] 10/8 13/1 19/22 29/18 30/15 31/19 32/3 34/23 34/25 35/19 36/4 36/20 38/8 38/24 41/7 41/14 42/18 45/15 50/9 52/15 53/15 53/17 56/7 58/19 58/22 62/20 64/14 64/15 66/17 66/22 68/1 68/13 69/3 69/5 69/7 70/1
yelling [1] 42/2
yes [11] 4/8 9/24 10/5 26/1 37/1 43/22 44/23 45/8 48/14 56/13 76/11
yesterday [4] 6/1 6/8 6/9 24/6
yet [2] 17/2 66/11
York [1] 60/15
you [231]
you know [1] 49/6
you'll [2] 41/25 69/8
you're [20] 8/21 11/5 14/6 22/10 31/18 31/23 32/10 40/13 49/2 49/3 49/4 51/5 53/7 53/23 61/10 66/18 66/23 66/23 67/19 71/14
you've [11] 17/8 23/24 26/17 29/9 51/14 52/14 63/1 63/1 65/15 66/9 66/25
young [8] 61/8 61/14 63/6 64/4 65/10 65/13 65/25 66/9
your [48] 3/5 3/20 5/6 6/8 6/12 7/9 7/19 8/18 9/14 9/16 10/3 10/15 13/4 14/8 17/25 20/17 21/15 29/1 30/2 31/8 33/6 51/13 56/14 62/17 63/22 64/4 64/7 64/21 65/4 65/7 65/9 65/19 65/22 66/2 66/10 66/13 69/2 69/10 70/9 71/9 71/14 71/19 74/21 74/21 75/21 75/25 76/5 77/4
Your Honor [17] 3/5 5/6 6/12 7/9 7/19 9/16

**Y**

**Your Honor... [11]**
 10/3 10/15 13/4 20/17
 29/1 30/2 56/14 75/21
 75/25 76/5 77/4
**yourself [3]**  66/2 66/11
 69/14

**Z**

**Zaremba [3]**  2/3 78/2
 78/8
**Zoom [2]**  55/19 55/21
**Zucker [21]**  1/17 1/18
 3/11 3/18 5/24 9/3 13/8
 14/4 17/9 19/4 20/24
 26/1 28/22 33/7 42/25
 47/5 56/9 60/25 68/1
 75/11 76/12