IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TERRELL ARMSTEAD,                )
                                 )
                Movant,          )
                                 )
v.                               )    Civil No. 1:25-cv-_____
                                 )    Crim No. 1:19-cr-00369-APM
UNITED STATES OF AMERICA,        )
                                 )
                Respondent.      )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, TERRELL ARMSTEAD ("Armstead"), appearing *pro se*, and

in support of this motion would show as follows:

## I. JURISDICTION

Armstead is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence

by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion")

contemporaneously with this Memorandum of Law. Jurisdiction is vested in this

District Court that presided over and imposed sentence pursuant to Rule 4(a) of the

Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562

(1994).

RECEIVED
Mailroom
NOV 18 2025

AngelaD.Caesar,ClerkofClerk
U.S.DistrictCourt DistrictofColumbia

1

## II. <u>STATEMENT OF THE GROUND FOR RELIEF</u>

A. Whether pretrial counsel's failure to: (1) Communicate with Armstead and Correctly Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate a Favorable Plea Agreement Deprived Armstead of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.

B. Whether trial Counsel's Failure To: (1) Convey His Trial Strategy and Inform Armstead of Any Affirmative Defense; (2) Prepare for Trial and Research the Applicable Law and Review the Discovery Provided by the Government; (3) Subpoena Or Call Any Defense Witnesses on Armstead's Behalf; (4) Properly Cross Examine the Government's Witnesses; and (5) Lodge Proper Objections At Trial Deprived Armstead of Effective Assistance of Trial Counsel and A Fair and Reliable Jury Verdict.

C. Whether sentencing counsel's failure to: (1) Review, discuss and explain the PSR to Armstead prior to the sentencing hearing; and (2) File objections to the PSR deprived Armstead of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

D. Whether Appellate Counsel's Failure To: (1) Communicate with Armstead About His Direct Appeal;  (2) Inform Him of the Issues He Intended to Raise on Appeal;  (3) Provide Him with the Case File to Review and Allow Him to Participate in His Appeal; and (4) Raise Other Meritorious Issues Which Armstead Wanted to Be Raised on Direct Review Deprived Armstead of Effective Assistance of Appellate Counsel, and A Fair and Meaningful Appellate Review.

## III. STATEMENT OF THE CASE

### A.    Procedural Background

On November 1, 2019, a grand jury sitting in the United States District Court for the District of Columbia, returned an eight (8) count Indictment charging Armstead. See Doc. 23.[1] Counts 1, 2 charged Armstead with Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(1). *Id.* Count 3 charged Armstead with Sex Trafficking of A Minor, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(2). *Id.* Count 4 charged Armstead with Conspiracy to Sex Traffic A Minor, in violation of 18 U.S.C. § 1594(c). *Id.* Count 5 charged Armstead with Coercion and Enticement to Engage in Prostitution, in violation of 18 U.S.C. §

---

[1] "Doc." refers to the Docket Report in the United States District Court for the District of Columbia in Criminal No. 1:19-cr-00369-APM, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

2422(a). *Id.* Count 6 charged Armstead with Transportation for the Purpose of Prostitution, in violation of 18 U.S.C. § 2421(a). *Id.* Count 7 charged Armstead with Interstate Travel and Transportation in Aid of Racketeering, in violation of 18 U.S.C. § 1952(a)(3)(A). *Id.* Count 8 charged Armstead with Obstruction of Enforcement, in violation of 18 U.S.C. § 1951(d). *Id.* The Indictment also contained Forfeiture Allegation pursuant to 18 U.S.C. §§ 1594(d), 2428(a), and 21 U.S.C. § 853(p). *Id.*

On February 21, 2020, an 8-day jury trial commenced. No Doc. Entry.

On March 16, 2020, a trial jury found Armstead guilty as to Count 2 of the Indictment and not guilty on Counts 1, 3 through 8. See Doc. 90.

On July 15, 2022, this Court sentenced Armstead to a term of 276 months' imprisonment, 240 months of Supervised Release, $ 28,644.00 Restitution and a Mandatory Special Assessment Fee of $100. See Doc. 155.

On July 28, 2022, Armstead timely filed a Notice of Appeal. See Doc. 157.

On September 3, 2024, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") filed Judgment affirming Armstead's sentence and conviction. See Doc. 163.

**B.    Statement of the Relevant Facts**

1.    Offense Conduct

The government alleges the following information:

4

Beginning in May of 2018, the joint Metropolitan Police Department and Federal Bureau of Investigation's Child Exploitation Task Force conducted a proactive investigation using various applications on social media. See PSR ¶ 32. While searching for terms that are commonly associated with the commercial sexual exploitation of vulnerable victims, this task force discovered an Instagram account for "supreme_p16". *Id.* Instagram account "supreme_p16" contained pictures, videos, and comments indicating that the user of the account was a sex trafficker exploiting young women. *Id.* Instagram account "supreme_p16" also contained pictures of females in hotels and displays of large amounts of U.S currency. *Id.* at ¶33. Subsequent investigation revealed that the owner of the "supreme_p16" Instagram account was Terrell Armstead, the Defendant. *Id.* at ¶32.

Not only did the Defendant use his Instagram account to brag about his illegal "business" that made money off of the sexual exploitation of women, but he also used the direct messaging feature as a tool to recruit vulnerable, young women into his commercial sex enterprise. On one such occasion, in June 2018, the Defendant began to send messages to the Instagram account "nikita.216" *Id.* at ¶34. The investigation revealed that the owner of this Instagram account was O.S., the victim identified in Count 2, which is the count that the Defendant was convicted of following a jury trial on March 16, 2020. *Id.* at ¶34. As this Court is now aware, in June of 2018, O.S., who was living in Cleveland, Ohio, was struggling to survive in a toxic living situation. At that time, O.S. was being commercially sexually exploited by a man who was taking all of the money O.S. was earning, and refusing to pay for basic necessities including food and clothing. The Defendant took advantage of the desperate situation O.S. was trying to get out of. He wrote to O.S., "A new life is always one choice away…you got options Lil mama." The Defendant went on to explain to O.S.:

> *"I see a lot of potential in u..I know together we can accomplish anything and everything..I want to take u to the top before some lame game makes us regret being a member of this lifestyle..most dudes want to come up off u not with u and after being used and abused u might not wanna give me a chance to do it the Supreme way."*

5

Through the course of the conversation, the Defendant repeatedly attempted to induce, entice and persuade O.S. to travel from Ohio to the District of Columbia area in order to get her to engage in prostitution for his financial benefit. The Defendant promised O.S. that he knew "all the upscale sites" and that she could earn more money from wealthier clients. The Defendant assured O.S. that he knew how to make investments and that he would provide her with financial security for the rest of her life. The Defendant quite literally promised O.S. the world. In his efforts to get O.S. to leave Ohio, the Defendant assured O.S. that his "name is well known in this game," and that he would keep her safe and happy. The Defendant informed O.S. that "choosing" him meant that she would never have to face a problem or obstacle that life throws at her alone. After repeatedly encouraging her to pack her belongings and leave Ohio, on June 19, 2018, O.S. agreed to travel from Cleveland, Ohio to meet and work for the Defendant in the commercial sex trade. See PSR at ¶ 35. On June 23, 2018, O.S. left Cleveland, Ohio and drove to the Defendant's home in Baltimore, Maryland. *Id.*

Four days later, on June 27, 2018, the Defendant posted a picture on his Instagram account of himself, O.S., and another woman, S.B. *Id.* at ¶36. In this post, the Defendant bragged, "I put pressure on my bitches ... if they don't fold ... they turn into diamonds." *Id.* As the months went by, the Defendant posted several other pictures and videos of S.B. and O.S. wearing provocative clothing and in various stages of undress. *Id.* The Defendant also enjoyed posting pictures of himself surrounded by firearms. *Id.* at ¶37. For example, on July 23, 2018, the Defendant posted a picture of himself holding a semi-automatic firearm while he was in Southeast D.C. There were several other pictures posted by the Defendant in which he, other males, O.S., and S.B. are holding firearms. *Id.* at ¶37. This is in spite of the fact that, as a convicted felon, the Defendant is prohibited from possessing a firearm.

After arriving in Maryland, the Defendant would transport O.S. and S.B. to work in strip clubs in Washington, D.C., Baltimore, Maryland, and New York. The Defendant expected the young women to arrange commercial sex dates with customers inside these clubs. Far from providing O.S. with financial security as promised, the Defendant

6

required O.S. to give all of the money that she made from these dates to him. The Defendant insisted that O.S. and S.B. make at least $1,000 per night. *Id.* at ¶39. The Defendant was extremely controlling, and insisted that O.S. and S.B. follow a laundry list of rules. It was S.B.'s job to teach O.S. these rules, and to make sure that O.S. followed them. Id. Some of these rules include the following:

- She should never walk ahead of the Defendant either on the track or whenever they walked as a group together in public, i.e. the shopping mall, the Defendant's mother's house;
- She should never look another man in the eye;
- She should never try to hold money back from the Defendant;
- She should not visit any friends or family alone;
- She should never talk to an African American male.

*Id.*

## 2.    Trial Proceeding

On February 21, 2020, an 8-day jury trial commenced before Judge Amit P. Mehta. No Doc. Entry. At trial, the government alleged that Armstead recruited and controlled vulnerable women for prostitution, particularly one victim identified as O.S. Evidence presented included: O.S. testified that Armstead required her to work in a strip club and surrender all her earnings. He allegedly branded her with a tattoo of his street name ("Supreme 16"), confiscated her car keys and social-security card, and physically assaulted her, including choking and threatening her with firearms.

During deliberations, several extraordinary events occurred like, one juror (Juror 10) was discovered to have concealed during voir dire that her father had been convicted in a "very high-profile" federal case involving prostitution and drugs. The

government moved to dismiss her for lack of candor. Over Armstead's objection, the court found "good cause" under Fed. R. Crim. P. 23(b)(3) to excuse the juror for dishonesty during voir dire. Also, deliberations coincided with the March 2020 COVID-19 courthouse shutdown. The remaining eleven jurors continued deliberating as closures escalated. On March 13, 2020, the foreperson reported that the jury had reached a unanimous verdict on at least one count. Because the pandemic made further deliberations impossible, the court instructed the jury to return any verdicts it had already reached and mark "no verdict" for any unresolved counts. The instruction emphasized that the jury should report a verdict "if and only if" one had already been reached, and it could return "no verdict" on the rest. Subsequently, the jury returned a guilty verdict on Count Two (Sex Trafficking by Force, Fraud, and Coercion) and no verdicts on the remaining seven counts on March 16, 2020. See Doc. 90

3.    Sentencing Proceeding

On July 15, 2022, a Sentencing Hearing was held before Judge Amit P. Mehta. No Doc. Entry. The Court sentenced Armstead to a term of 276 months' imprisonment on count 2, to run concurrently with the sentence imposed in 1:18-cr-00357-APM-1. See 155. It is followed by 240 months' Supervised Release as to Count 2 of the Indictment, to run concurrently with the sentence imposed in 1:18-cr-00357-APM-1. *Id.* The Court also ordered a payment of a $ 28,644.00 Restitution and a Mandatory

8

Special Assessment Fee of $100. *Id.* Armstead timely appealed.

### 4.    Appellate Proceeding

On Appeal, Armstead challenged two main rulings from his 2020 trial before Judge Amit P. Mehta. See Doc. 157.

First, Armstead argued that the district court erred in dismissing a deliberating juror (Juror 10) after learning she had failed to disclose during voir dire that her father had been convicted in a "high-profile" federal prostitution and drug case. He claimed that removing her during deliberations violated his Sixth Amendment right to a unanimous verdict, asserting that she may have been a holdout juror favoring acquittal. The D.C. Circuit rejected this argument. The Court held that Judge Mehta acted within his discretion under Fed. R. Crim. P. 23(b)(3), which allows dismissal of a juror for "good cause" even after deliberations begin. The appellate panel found ample basis for the district court's conclusion that Juror 10's repeated false answers showed a "lack of candor," which constituted juror misconduct independent of her possible views of the evidence. Because the dismissal rested on pre-deliberation misconduct rather than her stance on guilt, the court held that Armstead's right to a fair and unanimous jury was not violated. See Doc. 163.

Armstead's second claim centered on the district court's instruction to the jury to return a partial verdict on the final day of deliberations, as the courthouse was

shutting down due to the emerging COVID-19 pandemic. The jury had already indicated it reached a verdict on at least one count (later revealed to be Count Two), while the foreperson faced an immediate childcare crisis due to school closures. Armstead argued that the court's instruction to return a verdict "if" one had been reached improperly pressured the jury to convict. The D.C. Circuit again disagreed. It ruled that the instruction was neutral, non-coercive, and permissible under both Rule 31(b)(2) (which allows juries to return partial verdicts) and the Sixth Amendment. The court emphasized that Judge Mehta repeatedly told jurors to report a verdict "if and only if" they had already reached one, and to write "no verdict" otherwise. The record showed no indication of pressure or bias toward a guilty finding. *Id.*

In conclusion, the D.C. Circuit affirmed the judgment of conviction and sentence in full. *Id.* The Court noted that "nothing in the instruction pressured any juror to abandon conscientiously held views about the case," and that the jury's unanimous guilty verdict on Count Two was validly returned in open court and confirmed by poll. *Id.*

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for

a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A movant is entitled to an evidentiary hearing if he alleges specific facts which, if true, would entitle him to relief. *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996); *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992). However, no hearing is required where the allegations are "vague, conclusory, or palpably incredible" or "affirmatively contradicted by the record." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir.

11

1998).

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Armstead must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [Armstead ] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

13

proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the

offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, defendant's sentence would have been significantly less harsh. See *United States v. Horne*, 987 F.2d 833, 836 (D.C. Cir. 1993); *United States v. Farley*, 72 F.3d 158, 165 (D.C. Cir. 1995). In a ruling on a motion under § 2255, the court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted". See *United States v. Thomas*, 367 F.3d 194, 197 (D.C. Cir. 2004). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim

showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255.

## V. DISCUSSION

As a preliminary matter, Armstead respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *Toolasprahad v. Bureau of Prisons*, 286 F.3d 576, 582-83 (D.C. Cir. 2002) (*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

A. **Pretrial Counsel's Failure To: (1) Communicate with Armstead and Correctly Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate a Favorable Plea Agreement Deprived Armstead of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.**

1. Failure to Communicate with Armstead and Correctly Inform Him of the Relevant Circumstances and Likely

16

<u>Consequences of Pleading Guilty As Opposed to Proceeding to Trial</u>

Chapter 1, Rule 1.4: Communication of the District of Columbia Rules of Professional Conduct states that:

(a)    A lawyer shall:

      (1)    promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

      (2)    reasonably consult with the client about the means by which the client's objectives are to be accomplished;

      (3)    keep the client reasonably informed about the status of the matter;

      (4)    promptly comply with reasonable requests for information; and

      (5)    consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, Jonathan Seth Zucker ("Zucker"), was Armstead's retained counsel from pretrial to appeal proceedings. There was not any reasonable communication from

the beginning of his case between Armstead and Zucker, so that he could effectively participate in his defense. Zucker certainly did not meet the standard as set forth above in Rule 1.4 of the District of Columbia Rules of Professional Conduct or any other professional norm for that matter. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel during all "critical stages" of the proceedings, including plea negotiations. *Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *United States v. Abney*, 812 F.3d 1079, 1083 (D.C. Cir. 2016). This duty includes communicating plea offers, explaining the relative sentencing exposure, and advising the defendant of the likely outcomes of pleading guilty versus proceeding to trial.

In Armstead's case, Zucker failed to adequately communicate and advise him regarding plea negotiations, sentencing exposure, and the nature of the charges. The docket sheet confirms that from May through August 2019, the case was continued multiple times "to allow the parties to discuss a plea agreement," yet no plea agreement was ever filed or placed on record. This silence in the record corroborates Armstead's claim that counsel did not meaningfully pursue plea negotiations despite the government's offer. Zucker advised that, the government had offered him a plea agreement for a 27-year sentence, while his statutory mandatory minimum was fifteen years. He instructed his attorney to inform the government that he was willing to accept

18

a 15-year sentence; however, counsel never provided any proof that he attempted to negotiate or communicate this counteroffer with the prosecution. This statement reflects not only a failure to negotiate but also a failure to consult and advise, a core element of the Sixth Amendment duty outlined in *Frye* and *Lafler*.

Furthermore, Armstead made clear he would have accepted a plea agreement if counsel had communicated effectively and sought a reduced charge. Armstead later learned that sex trafficking can be charged without the elements of "force, fraud, or coercion." Armstead also noted that another defendant with a case similar to his had pled guilty under the same statute, but without the element of "force, fraud, or coercion," which carries no mandatory minimum sentence. This distinction is recognized in several federal cases. See *United States v. Mozie*, 752 F.3d 1271, 1284–85 (11th Cir. 2014) (explaining that the 15-year mandatory minimum under § 1591(b)(1) applies only when the offense involves "force, threats of force, fraud, or coercion"); *United States v. Garcia-Gonzalez*, 714 F.3d 306, 314 (5th Cir. 2013) (holding that trafficking of an adult without proof of "force, fraud, or coercion" under § 1591(b)(2) carries no mandatory minimum); see also *United States v. Tavares*, 705 F.3d 4, 17 (1st Cir. 2013) (distinguishing between § 1591(b)(1), which imposes a 15-year minimum, and § 1591(b)(2), which does not).

As these cases demonstrate, Zucker could have sought a plea under §

19

1591(b)(2), which applies where the offense does not involve force, fraud, or coercion and carries no mandatory minimum term of imprisonment. Armstead asserts that Zucker never advised him of this option or attempted to negotiate a plea under the lesser provision, depriving him of the opportunity to receive a substantially lower sentence. In sum, Armstead asserts that his counsel never advised him of this distinction or explored the possibility of negotiating a plea to the lesser, non-mandatory offense.

Additionally, Armstead stated that his counsel misled him regarding his chances at trial. This is because Zucker assured him that he could "guarantee" an acquittal on Count Two of the indictment, describing it as the "weakest count." However, Count Two ultimately became the only count on which Armstead was convicted. This false assurance gave Armstead an inaccurate understanding of his trial risks and since he was not advised whether, the government agreed to his 15-year plea deal, it contributed to his decision to reject the government's plea offer.

In total, counsel's failures at the plea stage violated the standards of competent representation recognized by the D.C. Circuit in *Abney*, 812 F.3d at 1083–84 ("Failure to communicate a plea offer or provide competent advice concerning its acceptance is ineffective assistance of counsel.").

Armstead has made a credible showing that, but for counsel's deficient communication and incorrect advice, he would have accepted a plea agreement for 15

20

years and not proceeded to trial, satisfying both prongs of the *Strickland* and *Lafler* tests.

### 2. Failure to Conduct an Adequate and Independent Pretrial Investigation

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *United States v. Sayan*, 968 F.3d 138, 141 (D.C. Cir. 2020). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Zucker failed to conduct a reasonable and independent pretrial investigation, as required by constitutional standards. Counsel did not thoroughly research relevant case law, investigate key facts, or explore potential defenses. Specifically:

a. **Failure to Review Discovery and Prepare for Trial:** Armstead asserts that Zucker failed to review the discovery materials and adequately prepare for trial. The docket reflects that on January 30, 2020,

21

counsel moved for a short continuance, stating that the government had "recently produced a large volume of discovery." The court granted only a one-week postponement. Yet, counsel later admitted to Armstead that he remained unprepared even after the continuance.

This admission illustrates counsel's acknowledgment of unpreparedness. Despite receiving voluminous materials, Zucker did not seek additional time, nor did he share the discovery with Armstead to allow meaningful participation in his own defense. Such neglect deprived Armstead of the ability to identify exculpatory material or assist counsel, falling below the reasonable professional standard required under *Strickland*.

          b.    <u>Failure to Investigate and Interview Key Witnesses:</u> Armstead also maintains that counsel failed to locate, interview, or present several witnesses who would have directly refuted the government's theory of "force, fraud, or coercion." In this case, Zucker failed to contact or interview the witnesses that Armstead had identified for him. Several women who had previously worked for Armstead in prostitution were willing to testify that there was no force, fraud, or coercion involved in their activities. They also would have confirmed that every woman associated with Armstead was free to come and go at her own will.

Armstead identified specific individuals who could have provided favorable testimony — Erica Grabil, Cassandra Morgan, S. B., and O. S. He described how these witnesses were central to proving his defense that the women worked voluntarily and without coercion: Armstead wanted his attorney to interview the two primary victims, S. B. and O. S., but counsel failed to do so. Although Zucker's cross-examination of S. B. was adequate, his questioning of O. S. was not. In fact, there were numerous inconsistencies in O. S.' accounts of what had happened, yet counsel failed to investigate or pursue those contradictions.

Armstead further asked his attorney to speak with Erica Grabil ("Grabil"), but counsel failed to do so. The government ultimately called Grabil as a witness, and although parts of her testimony were favorable to Armstead, he believes that with proper preparation and examination, counsel could have strengthened and expanded upon her testimony to better support the defense.

22

Additionally, Armstead also identified Cassandra Morgan ("Morgan") as another potential witness he informed counsel about. Morgan had worked for Armstead intermittently over several years, and, according to Armstead, he never used force, fraud, or coercion against her or any of the other women she encountered who also worked for him. Her testimony could have directly refuted the government's claim that Armstead's conduct involved coercive or exploitative behavior.

Clearly, the docket sheet confirms that no subpoenas were issued for these witnesses and no defense witness list or investigative reports were ever filed. Zucker's failure to pursue these witnesses left the defense without corroborating testimony to challenge the government's allegations — a critical omission given that "coercion" was the central element of the offense.

        c.      <u>Failure to Obtain Impeachment and Social Media Evidence</u>:

Armstead also made specific requests to his attorney to obtain the victims' social media histories to demonstrate that the women had been engaging in prostitution even when they were not associated with him. He also requested that Zucker hire a private investigator to assist in gathering this evidence. According to Armstead, he met with someone from Zucker's firm only once, and although they promised to return with investigative results, no follow-up was ever made and no evidence was produced. The Fifth Circuit has emphasized the necessity of utilizing such resources when needed to challenge the government's case. See *Sawyer v. Butler*, 799 F.2d 1474, 1508 (5th Cir. 1986) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Instead, Armstead limited his investigation to reviewing the government's case file and engaging in discussions with the prosecutor, without conducting any independent inquiries to corroborate or challenge the government's evidence.

Given that the government relied heavily on Instagram messages and posts to suggest coercion, this evidence was crucial to rebut the prosecution's theory. Counsel's failure to gather this impeachment material or follow through with investigative efforts deprived Armstead of potentially exculpatory evidence that could have raised reasonable doubt.

23

d.    Prejudice to Armstead:

Had counsel conducted an adequate pretrial investigation — reviewing discovery, interviewing witnesses, and obtaining impeachment evidence — the defense would have presented a materially different picture to the jury. The omitted testimony and social media records could have shown that the women were voluntary participants and free to leave at will. The D.C. Circuit has held that such omissions are prejudicial when they undermine confidence in the outcome of the trial. *United States v. Patterson*, 652 F.2d 1046, 1049 (D.C. Cir. 1981) (failure to call known exculpatory witnesses rendered representation ineffective).

Here, Zucker's lack of investigation directly impacted the only contested element — "force, fraud, or coercion" — on which Armstead was convicted. There is a reasonable probability that, but for counsel's deficient performance, the jury would not have convicted him on Count Two.

In light of the above, Zucker's failure to conduct an adequate and independent pretrial investigation constituted ineffective assistance of counsel under *Strickland*. This deficiency deprived Armstead of the ability to make informed decisions about his defense and undermined the fairness of the proceedings. Therefore, Armstead's conviction and sentence should be vacated, and he should be granted relief to ensure his constitutional rights are preserved.

3.    Failure to Attempt to Negotiate a Favorable Plea Agreement

Effective assistance of counsel during plea negotiations is a cornerstone of the Sixth Amendment. The Supreme Court has emphasized that a defendant must be

24

adequately informed of "the relevant circumstances and the likely consequences" of pleading guilty versus proceeding to trial in order to make an intelligent decision. See *Lee v. United States*, 582 U.S. ___ (2017); *Brady v. United States*, 397 U.S. 742, 748 (1970). Counsel's role includes providing accurate information about potential sentencing exposure, plea offers, and the strengths and weaknesses of the case.

Where a defendant pleads guilty or rejects a plea deal based on misadvice or inadequate representation, this constitutes deficient performance under *Strickland*, if the failure falls below an objective standard of reasonableness. Furthermore, the defendant must demonstrate prejudice by showing a reasonable probability that, but for counsel's errors, they would have chosen to proceed differently. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), the Court extended the right to effective assistance of counsel to plea-bargaining, making clear that: (1) Counsel must communicate all plea offers to the defendant; and (2) Counsel must provide competent advice on the benefits and risks of accepting or rejecting such offers.

Deficient advice during plea negotiations can violate the Sixth Amendment if the defendant is prejudiced by the resulting decision.

a.    Deficient Performance by Zucker

In Armstead's case, counsel Zucker failed to meet these constitutional standards during plea negotiations, leading to significant prejudice. Zucker's errors included:

(1)    Providing Misleading Information About Sentencing

In Armstead's case, defense counsel failed to provide accurate and realistic information about the sentencing consequences of the government's plea offer and of proceeding to trial. The record shows that Armstead faced serious charges under 18 U.S.C. § 1591(a) and (b)(1)—which imposed a mandatory minimum of fifteen years and a maximum of life imprisonment if the government proved "force, fraud, or coercion." The government reportedly offered a plea that would have resulted in a 27-year sentence, while Armstead expressed a willingness to accept 15 years, the statutory minimum.

However, instead of advising Armstead on the relative risks and likely sentencing outcomes, counsel misrepresented the strength of the government's case and the potential consequences of conviction.

This false assurance that an acquittal was "guaranteed" was objectively unreasonable and misleading. By minimizing the risk of conviction and overstating the likelihood of success, counsel deprived Armstead of the ability to make an informed decision about accepting the plea offer. The D.C. Circuit has recognized that such

26

misrepresentations about sentencing exposure or trial risks can render a plea decision involuntary. See *United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003);\* *Abney*, 812 F.3d at 1083.\*

Armstead later learned that defendants in similar cases had pled guilty under the same statute without the element of "force, fraud, or coercion," charged under § 1591(b)(2), which carries no mandatory minimum sentence. Counsel never informed him of this option or of its potential sentencing advantage. Had counsel explained that distinction, Armstead could have pursued a plea to a lesser offense or under a subsection that carried a far lower sentencing range.

Instead, counsel's inaccurate assurances created a false sense of security. Armstead proceeded to trial believing that Count Two—ultimately the only count resulting in conviction—was the "weakest" and could easily be defeated. This advice was contrary to the evidence the government planned to introduce, including the victims' testimony, social media messages, and physical evidence supporting the coercion element. Counsel's failure to properly evaluate and communicate these realities violated his duty to provide candid, professional guidance.

The prejudice from this error is clear. Armstead went to trial based on his attorney's unfounded guarantees and received a 276-month (23-year) sentence, substantially higher than both the government's 27-year offer and the 15-year sentence

he was willing to accept. Under *Lafler*, prejudice exists when "but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence would have been less severe than under the actual judgment." *Lafler*, 566 U.S. at 164. Because counsel misled Armstead about the likely outcome and sentencing exposure, his decision to proceed to trial was not knowing or intelligent. Competent counsel would have realistically assessed the evidence, clarified the sentencing range for each statutory alternative, and ensured that Armstead understood the significant risk of a mandatory-minimum conviction.

(2)     Failure to Pursue a Rule 11(c)(1)(C) ("C-Plea Agreement")

Here, the record shows that between May and August 2019, several hearings were continued for plea discussions, yet no plea was filed. Armstead stated that the government offered him a 27-year plea, while his mandatory minimum was 15 years. He told his attorney, Jonathan Zucker, to inform the government he would accept 15 years, but counsel never provided any proof of negotiation or attempt to formalize a binding C-Plea Agreement.

A C-Plea Agreement could have secured that 15-year term, but counsel failed to pursue it. Armstead later learned that other defendants in similar cases pled under §1591(b)(2)—without "force, fraud, or coercion"—which carries no mandatory

28

minimum sentence. Counsel never advised him of that option or sought a comparable deal.

Instead, Zucker falsely assured Armstead that he could "beat Count Two," the very count that resulted in conviction and a 276-month (23-year) sentence. Had counsel pursued a C-Plea Agreement consistent with Armstead's stated willingness to accept 15 years, there is a reasonable probability the case would have been resolved with a substantially lesser sentence.

(3)    Coaching and Lack of Trial Preparation

Armstead asserts that Zucker, entered trial unprepared and failed to develop a coherent defense strategy. Counsel's approach, according to Armstead, consisted primarily of accepting the government's portrayal of him as a pimp, while failing to distinguish that conduct from the legal definition of sex trafficking by force, fraud, or coercion. Armstead recalled that counsel "guaranteed" he could beat Count Two because it was "the weakest count," yet it became the only count that resulted in conviction.

Armstead's counsel did not review discovery with him, failed to meet with potential defense witnesses, and neglected to investigate inconsistencies in the victims' testimony. Despite admitting his lack of preparation, Zucker proceeded to trial without securing or interviewing witnesses who could have corroborated Armstead's claim that

29

no "force, fraud, or coercion" was used. Counsel also failed to counter the government's narrative that the victims were manipulated or controlled, even though, as Armstead stated, "several women who prostituted for me would have let them know there was no force, fraud, or coercion involved."

Armstead further contends that the government improperly coached the victims, influencing their testimony to introduce claims of violence that were not part of their original statements.

Counsel failed to pursue this issue or file any motion alleging prosecutorial misconduct, depriving Armstead of an opportunity to challenge the credibility of key government witnesses.

Taken together, counsel's lack of preparation, failure to investigate, and unwillingness to challenge government coaching left the defense unorganized and reactive rather than proactive. Such omissions fall below the professional standard required of criminal defense counsel. See *United States v. Moore*, 651 F.3d 30, 72 (D.C. Cir. 2011) (counsel ineffective where unprepared and failed to test government's case).

Had counsel properly prepared, reviewed discovery, and presented available witnesses or evidence contradicting the government's theory, there is a reasonable probability the outcome of the trial would have been different.

Accordingly, Zucker's deficient performance during plea negotiations violated Armstead's Sixth Amendment rights. His failure to provide accurate advice, negotiate effectively, and explore all available options prejudiced Armstead, resulting in a significantly harsher sentence than he reasonably anticipated. Under *Strickland* and its progeny, Armstead has demonstrated both deficient performance and prejudice. As such, his conviction and sentence should be vacated, and relief granted to allow him to proceed to trial or renegotiate his plea with effective assistance of counsel.

**B.** **Trial Counsel's Failure To: (1) Convey His Trial Strategy and Inform Armstead of Any Affirmative Defense; (2) Prepare for Trial and Research the Applicable Law and Review the Discovery Provided by the Government; (3) Subpoena Or Call Any Defense Witnesses on Armstead's Behalf; (4) Properly Cross Examine the Government's Witnesses; and (5) Lodge Proper Objections At Trial Deprived Armstead of Effective Assistance of Trial Counsel and A Fair and Reliable Jury Verdict.**

As discussed above, Zucker failed in several (if not all) areas of Armstead's defense. Zucker never mentioned any type of investigation that he conducted. There was no witnesses for Armstead's defense.

In this case, Armstead was not provided with clear strategy on how his counsel would attack the case. Moreover, Zucker failed to try to get Armstead a Plea Agreement with the government. Below are some of the failures and/or negligence Zucker committed throughout the case proceedings:

31

Overall, Zucker never discussed his trial strategy or informed him of any affirmative defense prior to trial. Zucker's only apparent approach was to concede that Armstead was "a pimp but not a sex trafficker," a weak and legally baseless strategy that failed to address the central issue of whether the government had proven "force, fraud, or coercion" under 18 U.S.C. § 1591(b)(1). Zucker never explained how the defense would confront the prosecution's witnesses or what theory of innocence the jury should adopt. Nor did he prepare Armstead for his testimony or inform him of the legal elements that differentiated consensual adult prostitution from criminal sex trafficking. This omission left Armstead unable to meaningfully participate in his own defense or to understand the nature of the government's burden of proof.

This failure to communicate and prepare a coherent defense violated counsel's duty to consult with the client about important strategic decisions and to develop a defense consistent with the client's version of events. *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *United States v. Sayan*, 968 F.3d 138, 141 (D.C. Cir. 2020). By not distinguishing between legally voluntary conduct and "coercion" as defined by law, Zucker allowed the prosecution to portray ordinary prostitution as trafficking without challenge. Had counsel investigated and articulated a legally grounded defense—such as lack of coercive means, absence of intent, or misidentification under §1591—there is a reasonable probability that at least one juror would have harbored reasonable

32

doubt. Counsel's failure deprived Armstead of his constitutional right to a fair adversarial trial.

Furthermore, while Zucker's cross-examination of the first government witness, S.B., was adequate, his examination of O.S., the second alleged victim, was deeply flawed. O.S.' testimony contained multiple contradictions and inconsistencies with her earlier statements to investigators, yet counsel failed to confront her with those discrepancies. Zucker also neglected to use available impeachment evidence—including social media posts and prior statements that could have shown the victims' independent involvement in prostitution—to undermine the credibility of their coercion claims.

Effective cross-examination is one of the most critical tools in criminal defense, especially where the case turns on witness credibility. *United States v. Moore*, 651 F.3d 30, 72 (D.C. Cir. 2011).* By failing to highlight inconsistencies and challenge the reliability of the government's key witnesses, Zucker allowed the jury to accept untested and uncorroborated testimony as fact. The entire prosecution rested largely on the narratives of S.B. and O.S.; discrediting even one of them could have changed the verdict on the coercion element. Competent counsel would have scrutinized the witnesses' prior statements, confronted them with their contradictions, and exposed motives to lie or cooperate with the government. Zucker's failure to do so fell below

33

the professional norms of trial advocacy and materially prejudiced Armstead's defense.

During trial and sentencing, Zucker failed to object to several instances of improper testimony and evidence. Armstead stated that the government presented a victim impact statement written by the victim's attorney, contradicting the victim's own signed statement, which refused to characterize herself as a victim. Despite the clear irregularity, Zucker made no objection to its admission, depriving Armstead of the opportunity to challenge its authenticity or prejudicial impact.

Equally troubling, Zucker failed to object when one of the jurors participated in deliberations via Facetime, which should have required all jurors to be physically present and deliberate together. This error compromised the integrity of the verdict and should have triggered an immediate motion for mistrial. Zucker's silence on these issues reflected a lack of awareness of fundamental trial procedures and denied Armstead the opportunity for proper judicial review of these irregularities. See *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (failure to object to improper juror participation constitutes ineffective assistance).*

Following the discovery that a juror had deliberated remotely via Facetime, Armstead requested that counsel raise the issue as jury misconduct and move for a mistrial. Zucker refused to do so, failing to create a record for appellate review. This omission prevented the appellate court from considering whether the jury's partial

34

absence or electronic participation violated Armstead's constitutional right to trial by an impartial and properly constituted jury. Such participation also violated the jury's sequestration and deliberation requirements, as there was no assurance that the remote juror's environment was free from outside influence or unauthorized input.

A defense attorney's obligation extends beyond trial advocacy to preserving constitutional issues for appeal. See *United States v. Williams*, 684 F.2d 296, 299 (D.C. Cir. 1982).* By failing to object contemporaneously and preserve the record, Zucker forfeited a potentially meritorious claim of structural error—one that could have required automatic reversal under *United States v. Olano*, 507 U.S. 725 (1993).* This neglect deprived Armstead of meaningful appellate review and further exemplifies counsel's overall lack of diligence, awareness, and advocacy throughout the proceedings.

The Sixth Amendment, and a defendant's right to due process, requires "that any person brought to trial in . . . federal court must be afforded the right assistance of counsel before he or she can be validly convicted and punished by imprisonment." *U.S. v. Barton*, 526 F.App'x 360, 362 (5th Cir.2013).

Had counsel fulfilled his professional duties, there is a reasonable probability that the outcome of the trial would have been different. Armstead was entitled to a defense built on preparation, investigation, and informed advocacy — not a last-minute effort

by an unprepared attorney.

Accordingly, Armstead's conviction and sentence should be vacated so that he may plea anew.

**C.**    **Sentencing Counsel's Failure To: (1) Review, Discuss and Explain the PSR to Armstead Prior to the Sentencing Hearing; and (2) File Objections to the PSR Deprived Armstead of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

At sentencing, Zucker failed to fulfill his most basic duties: to review the PSR with Armstead, identify factual and legal inaccuracies, and submit formal objections. The PSR contained numerous aggravating claims unsupported by the trial record, including findings that Armstead used "force, fraud, and coercion," maintained "a pattern of violence," and "obstructed justice." These findings directly elevated his offense level under U.S.S.G. §2G1.1(b) and contributed to the 276-month sentence imposed. Despite these serious enhancements, Zucker filed no written objections, made no motion for variance, and presented no evidence or argument to rebut the PSR's assertions. The record shows no attempt by counsel to dispute the coercion enhancement, clarify the scope of the conviction, or advocate for mitigating factors such as Armstead's nonviolent background, family support, or post-arrest rehabilitation. Counsel's silence effectively allowed the probation office's untested conclusions to dictate the final sentence.

36

Zucker also failed to object to the government's submission of a victim impact statement that was drafted not by the actual victim but by the victim's attorney. This substitution violated Armstead's right for a fair trial and sentencing when they did not give the defendant the opportunity to review and comment on any factual material relied upon by the court at sentencing. The record reflects that one of the alleged victims declined to personally write a statement, but the government nevertheless introduced a version authored by her attorney that contradicted the victim's own prior statement. Despite this clear irregularity, counsel raised no objection and allowed the court to consider a statement of uncertain authorship and questionable reliability. This failure denied Armstead his right to challenge false or misleading sentencing information and allowed improper hearsay to influence the court's perception of the alleged harm.

Zucker's inaction rendered the sentencing hearing one-sided, depriving Armstead of the adversarial process required by the Sixth Amendment. This omission was both professionally unreasonable and prejudicial. The D.C. Circuit recognizes that sentencing determinations must rest on reliable and verified information, and that counsel must object to any materially false or disputed facts in the record. See *United States v. Bras*, 483 F.3d 103, 110 (D.C. Cir. 2007) (sentencing based on unsubstantiated or unreliable statements violates due process); *United States v. Horne*,

987 F.2d 833, 836 (D.C. Cir. 1993).* Competent counsel would have demanded that the court exclude or disregard the attorney-written statement, or at minimum, request an evidentiary hearing to verify its authenticity and consistency with the victim's own words. By failing to do so, Zucker permitted the introduction of inflammatory and unverified claims that likely influenced the court's view of Armstead's conduct and character. This unchallenged statement, presented as though it reflected the victim's personal account, unfairly amplified the perceived severity of the offense and contributed to the imposition of a 276-month sentence, depriving Armstead of a fair and reliable sentencing proceeding. Zucker would have objected to the coercion and obstruction enhancements, argued that the jury's verdict did not establish those elements beyond a reasonable doubt, and requested a downward variance based on Armstead's history and the statutory minimum of fifteen years. Zucker also failed to present mitigating information such as evidence of community support or acceptance of responsibility that could have persuaded the court to impose a sentence closer to the mandatory minimum. His complete failure to object or advocate resulted in the court adopting the PSR's findings without challenge, leading to a substantially higher sentence than was legally and factually justified. Had Zucker been prepared and properly argued objections to the PSR, there is a reasonable that Armstead would have received a less harsh sentence.

38

**D.** **Appellate Counsel's Failure To: (1) Communicate with Armstead About His Direct Appeal; (2) Inform Him of the Issues He Intended to Raise on Appeal; (3) Provide Him with the Case File to Review and Allow Him to Participate in His Appeal; and (4) Raise Other Meritorious Issues Which Armstead Wanted to Be Raised on Direct Review Deprived Armstead of Effective Assistance of Appellate Counsel, and A Fair and Meaningful Appellate Review.**

Following Armstead's conviction and sentencing, Zucker failed to fulfill his continuing duty to consult with his client regarding appellate rights and review. Without meeting or corresponding with Armstead, Zucker filed a notice of appeal and submitted the appellate brief without providing Armstead the opportunity to review or contribute to its content. These actions deprived Armstead of his constitutional right to participate in his own defense and to make informed decisions regarding the issues to be raised on appeal. Moreover, Zucker's refusal to file a Petition for Writ of Certiorari—despite Armstead's express request—violated his continuing professional obligation to represent his client through all stages of direct review.

Competent appellate counsel has a duty to consult with the defendant about potential appeal issues, explain the advantages and disadvantages of each claim, and file additional petitions when requested. The Supreme Court has made clear that failure to consult about or file an appeal constitutes ineffective assistance when there is reason to believe the defendant would have pursued one. *Roe v. Flores-Ortega*, 528 U.S. 470,

478 (2000);* *Wilkins v. United States*, 441 F.2d 956, 957 (D.C. Cir. 1970).* Zucker could have — and should have — met with Armstead to discuss viable issues, such as counsel's lack of trial preparation, prosecutorial misconduct, and juror irregularities, and ensured that these claims were preserved for review. He should also have filed a Petition for Writ of Certiorari to the Supreme Court once the appeal was denied, as Armstead explicitly requested. Instead, Zucker unilaterally closed the case, preventing further review and leaving substantial constitutional claims unraised. His failure to consult, communicate, and follow instructions deprived Armstead of his right to effective assistance on direct appeal and meaningful access to higher judicial review.

Accordingly, the Court should hold an evidentiary hearing to expand an incomplete record and resolve this matter.

## VI. CONCLUSION

In light of the foregoing, it is evident that Armstead was deprived of his constitutional right to effective assistance of counsel from pretrial to appeal phases of his case. Counsel's failure to adequately inform Armstead of the implications of a plea, properly object to inaccuracies in the PSR, advocate for a fair trial, and just sentence and appeal constitute deficient performance under the standards established by *Strickland*, and its progeny. These errors prejudiced Armstead, resulting in a significantly harsher sentence than he otherwise would have received had counsel

40

performed competently.

The U. S. Supreme Court has consistently held that a defendant is entitled to effective legal representation at every critical stage of a criminal proceeding, including plea negotiations and sentencing. See *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Here, the failures of Armstead's counsel not only undermined the fairness of the proceedings but also led to a fundamentally unjust outcome.

Had Armstead been properly informed, represented, and advocated for, there is a reasonable probability that he would have either proceeded to trial or received a substantially lower sentence at sentencing. These failures deprived him of his rights under the Sixth Amendment, warranting the vacatur of his conviction and sentence.

For these reasons, Armstead respectfully requests that the Court grant his § 2255 Motion, vacate his conviction and sentence, and order appropriate relief, including but not limited to resentencing or an evidentiary hearing to fully assess counsel's deficiencies, resolve facts in dispute between the parties and their prejudicial impact on his case, and to expand an incomplete record.

Respectfully submitted,

Dated: October 31, 2025

TERRELL ARMSTEAD
REG. NO. 91040-007
USP HAZELTON
U.S. PENITENTIARY
P.O. BOX 2000
BRUCETON MILLS, WV 26525
Appearing *Pro Se*

42