**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 19-CR-369 (APM)** |
| **v.** | : | |
| | : | |
| **TERRELL ARMSTEAD** | : | **Closed Case** |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S *PRO SE* MOTION UNDER**
**28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE**

The United States, by and through its attorney, the United States Attorney for the District of

Columbia, respectfully submits this Opposition to defendant's *pro se* Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct his Sentence, which was filed on November 18, 2025. ECF

No. 164. Due to the onset of the COVID-19 pandemic in March 2020, defendant's trial ended

abruptly with a mistrial before the jury was able to finish deliberating on several serious counts.

Defendant benefited from the onset of the pandemic, as the government ultimately moved to dismiss

several serious charges instead of retrying the case. Although he faced other serious charges,

defendant was only convicted and sentenced on one count of Sex Trafficking by Force, Fraud and

Coercion, to a total sentence of 23 years of incarceration. He now attacks this sentence, arguing that

his attorney, Jonathan Zucker, Esq., was constitutionally ineffective in his representation at several

stages of his case: pretrial, trial, presentencing, and during the appeal. While his ineffective

assistance of counsel claim is properly before this Court, as it is timely and is not procedurally barred,

defendant's allegations are vague and conclusory, are refuted by the record, and do not even come

1

close to establishing any prejudice. The Court should therefore summarily deny his motion for relief.[1]

## FACTUAL BACKGROUND[2]

Defendant, a prolific sex-trafficker who went by nicknames "Rellz" and "Supreme," got his start as a pimp in March 2015, under the tutelage of a more experienced pimp named Anthony Grey. 2/26/20 PM Tr. 87, 93-94. Initially, defendant and Grey convinced S.B., a 16-year-old high-school dropout from Lusby, Maryland, and M., a young woman from the same town, to travel with them to a motel in Alexandria, Virginia. *Id.* 83, 85-86, 99-100.[3] Once at the hotel, defendant and Grey photographed S.B. and M. posing provocatively in their underwear, then advertised their availability for commercial sex on Backpage.com. *Id.* 106-110. Defendant kept half the money that S.B. and M. earned from prostitution. *Id.* at 101, 123-25. Defendant and Grey brought S.B. and M. back to the motel during several following weekends to engage in prostitution. *Id.* 127-29.

During trial, the jury heard testimony from five women who were sexually exploited by defendant between 2015 and 2019: S.B., M., J., E., and O.S. (2/26/20 PM Tr. 81 (M.); 2/27/20 PM Tr. 78 (J.); 2/28/20 AM Tr. 125 (E.); 2/28/20 PM Tr. 61 (O.S.); 3/3/20 PM Tr. 3 (S.B.)). Defendant

---

[1] Although the government's primary position is that defendant's allegations are vague and conclusory and fail to set out sufficient facts to establish deficiency or prejudice, the government understands that the Court may allow defendant to further develop some of his allegations. To the extent the Court permits defendant to further develop certain allegations, by evidentiary hearing or by further briefing, the government is not opposed to the appointment of counsel. If defendant supplements his § 2255 motion through counsel, the government requests an opportunity to respond.

[2] The Court presided over this eight-day trial in early 2020. Given the Court's familiarity with this case, we provide a brief factual background that we provided in our May 1, 2023 appellate brief.

[3] We refer to the victims by their initials. Because the record does not include the last names of three of the victims, we refer to those persons by their first initial only, i.e., "M.," "J.," and "E."

recruited especially vulnerable young women to work on his behalf in commercial sex; as noted, S.B. was a minor when defendant began exploiting her. 2/26/20 PM Tr. 85-86. Later, defendant used S.B. to contact E., S.B.'s 19-year-old friend, on Mother's Day 2017, just a few months after E.'s mother died and while E. was struggling with her own drug addiction and depression. 2/28/20 AM 132-35. While S.B. ostensibly reconnected with E. to say she "missed" her and "wanted to hang out," the real purpose was to recruit her as a prostitute for defendant—who bought S.B. and E. lingerie and transported them to the motel in Alexandria to engage in prostitution. *Id.* 134-50. Defendant enticed O.S., an 18-year-old in a "bad situation" with another pimp in Ohio, to travel to Maryland and work as a prostitute for him, promising her "nice things" and "a better life" with "everything [she] wanted." 2/28/2020 PM Tr. 62-70.

Although defendant sought to characterize his "relationship" with his victims as "employer/employee." 3/6/20 PM Tr. 92 (closing), his treatment of these young women bore all the hallmarks of exploitation. Defendant branded the women with "Rellz" and "Supreme" tattoos to show that they were his "property." 2/28/20 AM Tr. 131-32; 3/2/2020 AM Tr. 59. He imposed "rules," including that the women had to walk behind him in public, were "not to look at any black m[e]n or talk to them," should not "question what he says," and "just do what he says, because he knows best." 2/26/2020 PM Tr. 141, 2/28/2020 Tr. 11-12. Defendant forbid the young women from going anywhere on their own without defendant's explicit permission. He made the women clean his house, cook for him, and take care of his kids and dog. They were required to give all the money they made to him and were forbidden from keeping any of it themselves.

Count Two—defendant's conviction for sex trafficking by force, fraud, and coercion— involved O.S., the 18-year-old from Ohio. At defendant's behest in June 2018, O.S. drove by herself to Maryland, where she joined S.B. at defendant's house. 2/28/2020 PM Tr. 65. Upon her

arrival, defendant took O.S.'s car keys and Social Security card, and sent her to work at Washington, D.C. strip clubs, where she propositioned customers and met them for commercial sex "dates" after her shift. Initially, when O.S. broke any of defendant's "rules," he would react angrily and give her warnings, but would not physically harm her. Soon, however, defendant became violent: on one occasion, he choked O.S. until she nearly passed out; on another, he held her down and left a bruise on her arm; on a third, he slapped her because she was not making enough money for him. *Id.* 78-82. O.S. also witnessed defendant being "a lot more physical with" S.B., including "multiple events of him choking her and punching her in the legs," and "slam[ming] her on down on the bed or the couch." *Id.* 83. O.S. tried her best to follow defendant's rules because she "didn't want to get hurt." At one point, O.S. fractured a rib and asked defendant to go to the hospital because it hurt to breathe; but defendant instead gave her a Percocet, which made her vomit up blood. O.S. nevertheless waited until the next day to ask defendant again— who finally relented and allowed her to go to the hospital. *Id.* 120-39.

Despite being a convicted felon, defendant kept several guns in his house, including two .22-caliber long rifles he nicknamed the "Russian twins." 2/28/20 AM Tr. 22. Defendant repeatedly pointed guns at O.S. and S.B. During trial, O.S. recalled lying in bed with S.B. when defendant came into the bedroom, pointed a gun at them, and made "an impression that he was going to shoot" them. On at least two other occasions, defendant pointed guns at O.S. and S.B. while they were downstairs watching television. Defendant even forced a gun into S.B.'s mouth during sex, while O.S. was in the room with them. Both O.S. and S.B. recounted this event.

After three months with defendant, O.S. "found a way out" after telling a man she met at a strip club about her situation. Although defendant "would constantly move [her keys] around," O.S. ultimately found the keys and her Social Security card, packed her other possessions, and told

4

defendant she was leaving. Defendant was "angry and confused" because he thought she was leaving him for another pimp. With one of the "Russian twins" guns in hand, defendant began pacing and nervously looking out the window, which made O.S. "really, really scared." Eventually, defendant let O.S. leave, after defendant and S.B., together, searched her belongings for money and took back every item defendant had previously given to O.S.

In 2019, after being charged in this case and detained pending trial, defendant repeatedly called S.B. from jail to attempt to obstruct and interfere with the prosecution. 3/4/20 AM Tr. 90. S.B. initially repeated the false statements defendant fed her to investigators, leading to her own arrest and detention on charges of obstruction and conspiracy. *Id.* at 96-97, 104. Defendant arranged daily third-party jail calls with S.B. through his mother, in an unsuccessful effort to persuade S.B. not to testify against him. *Id.* 108. After the jail restricted defendant's phone access, he began sending S.B. messages via the jail's commissary kiosk. *Id.* 113. These messages turned threatening, and in the weeks leading up to trial, defendant told S.B. to "[s]top fucking playing with" him. *Id.* 115.

## PROCEDURAL BACKGROUND

Defendant was arrested on May 2, 2019. During that time, defendant was already facing charges in another case before this Court, that is Case No. 18-cr-357 (APM) (his "firearms case"). Defendant was represented by Jonathan Zucker, Esq., in the firearms case, and on May 6, 2019, Mr. Zucker entered his appearance in the instant sex trafficking case. The detention hearing and preliminary hearing were delayed several times while the government and defendant engaged in plea negotiations. *See* Docket. Eventually, defendant conceded pretrial detention on October 10, 2019.

In the instant case, on November 1, 2019, defendant was charged by indictment with two counts of sex trafficking by force, fraud, and coercion, 18 U.S.C. § 1591(a)(1)-(2), (b)(1); sex trafficking of a minor, 18 U.S.C. § 1591(a)(1)-(2), (b)(2); conspiracy to sex traffic a minor, 18 U.S.C. § 1594(c); coercion and enticement, 18 U.S.C. § 2422(a); interstate transportation, 18 U.S.C. § 2421(a); interstate travel and transportation in aid of racketeering, 18 U.S.C. § 1952(a)(3)(A); and obstruction of enforcement of Title 18 U.S.C. Section 1591, 18 U.S.C. § 1591(d). ECF No. 23. On November 8, 2019, during a hearing before this Court, the government noted, "[T]he parties have attempted to reach a resolution. Mr. Armstead has made an offer to plea, frankly, to ten years, and the government said they cannot accept that, and so we have no choice but to set a trial date." 11/8/2019 Tr. at 6. During this hearing, the Court confirmed that defendant was facing 10-year and 15-year mandatory minimums on the charges he was facing. Also, during the November 8, 2019 hearing, the government confirmed that defendant had rejected a global plea offer in his two pending cases:

> [T]he offer was for the defendant to plead to one count of sex trafficking by force, fraud, and coercion, which is a 15-year mandatory minimum offense, as well as one count of conspiracy, in violation of 18 U.S.C. § 371, and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). And that plea was rejected by Mr. Armstead. He did make a counteroffer to the government that the government did not accept. And so as of the government's rejection of that counter-offer, the plea negotiations have been completed.

*Id.* at 22.[4]

---

[4] On September 13, 2019, during a hearing in the firearms case (Case No. 18-CR-357), Mr. Zucker, noted, "In that case [the trafficking case, Case No. 19-CR-369], we have been lobbying hard for consolidated disposition to deal with both cases or at least an offer in that case, that we can get rid of that case. We've made an offer to plea to 10 years concurrent with this, and we cannot get a plea offer from the prosecutors in this case." Case No. 18-CR-357, 9/13/2019 Tr. at 4. Defendant went on to reject the plea offer in which his sentences would run concurrent to each other (in both

Although Mr. Zucker attempted to negotiate with the government, the government was never willing to extend an offer in which it would cap its allocution at 15 years of incarceration. The Court has never indicated it would have accepted a 15-year plea pursuant to Fed. R. Crim. P. 11(c)(1)(C). The government was never willing to extend an offer to any charge less than Sex Trafficking by Fraud, Force, or Coercion, in violation of 18 U.S.C. §1591(b)(1), which carries a 15-year mandatory minimum sentence. The government has always believed a higher sentence was appropriate in light of defendant's criminal conduct that included trafficking a 16-year-old girl in commercial sex and trafficking many other young and vulnerable women in commercial sex. The government has consistently advocated for a sentence lengthier than what was actually imposed in this case. After defendant rejected the plea offer, a trial date was set.

On February 23, 2020, just before trial was set to begin, Mr. Zucker requested additional time to prepare for trial since he had not yet reviewed all of the discovery. ECF No. 74. Mr. Zucker told the Court that his "decision [to request a continuance] was not made in consultation with Mr. Armstead . . . this is strictly my concern about being ineffective." 2/24/2020 Tr. at 7. Per Mr. Zucker's explanation and request, this Court continued the trial for two days so that Mr. Zucker could effectively review additional discovery and continue preparing for trial.

A jury trial before the Honorable Amit P. Mehta began on February 26, 2020. Following eight days of trial and four and a half days of jury deliberations, the jury returned a verdict on the morning of March 16, 2020, convicting defendant of one count of sex trafficking by force, fraud and coercion (Count Two). The deliberations occurred as the COVID-19 pandemic had begun to cause chaos and uncertainty. Ultimately, the Court had to stop deliberations and accepted a partial

_____

of his pending cases). He then went on to confirm, on the record, that he was satisfied with Mr. Zucker's representation. *Id.* at 13.

verdict. The jury was unable to reach a verdict on the remaining seven counts, as to which the district court declared a mistrial. The government initially intended to retry the remaining counts; however, on March 7, 2022, the parties informed the district court that they wished to proceed to sentencing on the sole count of conviction and that the government would dismiss the remaining counts at sentencing.

On July 7, 2022, Mr. Zucker filed a sentencing memorandum, ECF No. 148, which he also supplemented.[5] Mr. Zucker advocated for a mandatory minimum sentence of 15 years of incarceration on the sole conviction count. The government asked for a 30-year sentence. Mr. Zucker noted several objections and disagreements with the Presentence Report (PSR) writer, which were addressed by the Court at the time of sentencing.

On July 15, 2022, the Court held the sentencing hearing. During the hearing, the defendant directly indicated to the Court that he had had sufficient time to discuss everything with his attorney, Mr. Zucker, and that he was ready to proceed to sentencing. *See* 7/15/2022 Tr. at 4. The sentencing was lengthy,[6] as the Court addressed many defense objections and heard additional argument from the parties. Ultimately, the Court sentenced defendant to 276 months (23 years) in prison,[7] to be followed by 20 years of supervised release and ordered him to pay $28,644 restitution to the victim and a $300 special assessment.[8] Defendant appealed, and the D.C. Circuit affirmed his conviction. *United States v. Armstead*, 116 F.4th 516 (D.C. Cir. 2024).

---

[5] Mr. Zucker filed one supplement in the instant case, as well as two supplements in the firearms case. ECF No. 149; *see also* Case No. 18-CR-357, ECF Nos. 107, 108.

[6] *See* 7/15/2022 Tr. (92 pages).

[7] The government had requested a sentence of 360 months of incarceration. ECF No. 146.

[8] In a separate gun-trafficking case, 18-cr-357 (APM), defendant pled guilty to conspiracy, 18 U.S.C. § 371, and unlawful possession of a firearm (prior felony conviction), 18 U.S.C.

On November 18, 2025, defendant filed the instant § 2255 Motion. ECF No. 164. Defendant alleges that his counsel, Jonathan Zucker, Esq., was ineffective at several different stages of his case. The government will address his allegations as: 1) Pretrial; 2) Trial; 3) Sentencing, and 4) Appeal.

**LEGAL PRINCIPLES**

Although it is somewhat unclear what relief defendant now seeks, it appears that defendant is asking this Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. As explained below, § 2255, which is designed to supplement rather than supplant trial and direct appellate review, demands a showing of a fundamental violation to merit relief. Untimely or procedurally-barred claims—as well as vague, conclusory, or palpably incredible claims—warrant summary denial under § 2255.

### A. Standard for Relief

Relief on collateral attack is limited to cases involving a jurisdictional error, a constitutional error, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). As a result, the relief permitted under 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Instead, a court may vacate, set aside, or correct a sentence only if the sentence was imposed "in violation of the Constitution or laws of the United States," "the court was without

---

§ 924(g)(1), and was sentenced during the same July 15, 2022 proceeding to 60 months in prison and three years of supervised release on each of those counts, to be served concurrently with each other and his sex-trafficking sentence in this case.

jurisdiction to impose such sentence," "the sentence was in excess of the maximum authorized by law," or the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255.

The Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). Thus, it is "well-settled" that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Id.* at 166. Indeed, "in a § 2255 collateral challenge, [a defendant], in order to gain relief under *any* claim, is obliged to show a good deal more than would be sufficient on direct appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (emphasis in original); *see also United States v. Burwell*, 160 F.Supp.3d 301, 308 (D.D.C. 2016) ("The circumstances under which such a motion will be granted . . . are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal.").

The defendant, of course, bears the burden of demonstrating that he is entitled to relief under § 2255. *See Pollard*, 959 F.2d at 1020; *United States v. Burnett*, 316 F. Supp. 3d 424 (D.D.C. 2018). He must prove his claims by a preponderance of the evidence to prevail on the motion. *United States v. Cooper*, 610 F. Supp. 3d 184, 189 (D.D.C. 2022) (citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973)).

## B. <u>The Timeliness Bar</u>

Before proceeding to the merits of a habeas petition, the Court must determine whether the motion is timely. *See United States v. Cicero*, 214 F.3d 199, 202 (D.C. Cir. 2000) (reviewing the timeliness requirement under § 2255). For a court to have jurisdiction over a § 2255 motion, the motion must be filed within one year of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).[9]

"In most cases, . . . 'the date on which the judgment of conviction becomes final'" comprises the operative date (*i.e.,* the date on which the limitation period begins to run). *Dodd v. United States*, 545 U.S. 353, 357 (2005) (quoting what is now 28 U.S.C. § 2255(f)). Accordingly, as long as none of the exceptions outlined in § 2255(f)(2) through (4) are applicable, a § 2255 petition must be filed within one year of the final judgment. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

For purposes of collateral review under Section 2255, a judgment becomes final "if a prisoner petitions for certiorari, . . . when the Supreme Court either denies the writ or issues a decision on the merits." *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002) (citing *Washington v. United States*, 243 F.3d 1299, 1300-01 (11th Cir.2001)). If a prisoner does not file

---

[9] This one-year limitation period was implemented as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). As the Supreme Court has observed, "In enacting AEDPA in 1996, Congress imposed for the first time a fixed time limit for collateral attacks in federal court on a judgment of conviction." *Mayle v. Felix*, 545 U.S. 644, 654 (2005). Congress specifically "adopted a tight time line, a one-year limitation period," in order to "advance the finality of criminal convictions." *Id.* at 662.

11

a petition for a writ of certiorari, judgment becomes final when the time for filing a petition for a writ of certiorari expires, 90 days after the entry of a judgment or decree. *See Clay v. United States*, 537 U.S. 522, 527 (2003); 28 U.S.C. § 2101(c).

The D.C. Circuit judgment was entered on September 3, 2024. ECF No. 163. The judgment thus became final 90 days later, on December 2, 2024. Defendant filed his *pro se* motion pursuant to § 2255 on November 18, 2025, which was within one year of December 2, 2024. Thus, the government concedes that the § 2255 Motion is timely.

## C. **Procedural Bars**

In addition to meeting the timeliness requirement to obtain substantive review of a claim in § 2255 proceedings, a defendant must satisfy multiple strict procedural bars before a court can consider the merits of the claim. The most important procedural bars in the current case prohibit a defendant from raising a claim that he already raised, or unjustifiably failed to raise, on direct appeal.

If a defendant fails to raise a claim on direct appeal when he was (or should have been) aware of that issue, he is procedurally barred from raising the claim in a collateral attack. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (noting the general rule that claims not raised on direct appeal may not be raised on collateral review); *Murray v. Carrier*, 477 U.S. at 490-92 (1986) (same); *Bousley v. United States*, 523 U.S. 614, 622 (1998) (same); *United States v. Rashad*, 331 F.3d 908, 909-11 (D.C. Cir. 2003) (same). However, ineffective-assistance-of-counsel claims comprise an exception to this rule. Such claims may be raised following direct appeal regardless of whether the defendant could have previously raised the claim on appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

12

Because defendant only raises an ineffective-assistance-of-counsel claim, the government concedes that no procedural bars apply to this § 2255 Motion.

### D. Ineffective Assistance of Counsel Claims

In the context of a § 2255 motion, assuming the claim is not procedurally barred and is timely, to succeed in the ineffective-assistance-of-trial-counsel, a defendant must establish both that his trial counsel's performance was constitutionally deficient and that he suffered prejudice from the deficient performance. *Strickland v. Washington,* 466 U.S. 668 (1984). This standard, although not insurmountable, "is highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986); *see also Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("surmounting *Strickland*'s high bar is never easy").

A defendant bears the burden of demonstrating both of the above elements under the *Strickland* test. *Weaver v. Massachusetts*, 582 U.S. 286, 300 (2017). Failure on either prong of the *Strickland* inquiry precludes relief. *Strickland*, 466 U.S. at 700 ("Failure to make the required showing of *either* deficient performance or sufficient prejudice defeats the ineffectiveness claim.") (emphasis added). Thus, the Court need not even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

In order to satisfy the deficiency requirement, a defendant must establish that his trial counsel "made errors so serious that [they were] not functioning as the 'counsel' guaranteed [to defendant] by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Weaver*, 582 U.S. at 300 ("[A] defendant has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'") (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006));

*Premo v. Moore*, 562 U.S. 115, 124 (2011) (the relevant question is whether "no competent" attorney would have done what defendant's counsel did) (citations omitted). To make this showing, defendant must prove that his trial counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) ("As a general matter, the bar of objective reasonableness is set rather low.").

A defendant must also overcome the "strong presumption that [his counsel's] conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Furthermore, he "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks and citation omitted). Indeed, the Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689 (citation omitted); *see also United States v. Morrison*, 98 F.3d 619, 623 (D.C. Cir. 1996) (emphasizing that there are "countless ways to provide effective assistance in any given case") (citing *Strickland*, 466 U.S. at 689-90). The Supreme Court noted, in particular, that the reasonableness of counsel's actions often depends on "informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

To conduct a fair assessment of an attorney's performance, this Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In other words, the Court must "judge the reasonableness of counsel's

14

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689.

In addition to establishing deficiency, a defendant must prove that he was prejudiced by his trial counsel's objectively unreasonable representation. *Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. This prejudice must be "so serious as to deprive the defendant of fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

Importantly, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694. As the Supreme Court has elaborated, "[T]he difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Harrington v. Richter*, 562 U.S. 86, 112 (quoting *Strickland*, 466 U.S. at 697).

### E.  Vague, Conclusory, or Incredible Claims

District courts are empowered to—and should—summarily deny not only claims that the record establishes lack merit, but also claims that are vague, conclusory, or incredible. "A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when

15

'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255). Moreover, "even if the files and records of the case do not clearly rebut the allegations of the prisoner, no hearing is required where his claims are 'vague, conclusory, or palpably incredible.'"[10] *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

## ARGUMENT[11]

Defendant argues that Mr. Zucker was ineffective during the pretrial, trial, sentencing, and appellate stages while representing him in this case. Defendant raises numerous vague and conclusory allegations. Defendant also raises confusing, palpably incredible allegations that are

---

[10] *See also United States v. Sitzmann*, 893 F.3d 811, 832 (D.C. Cir. 2018) (per curiam) (stating that summary denial is generally appropriate for ineffective-assistance-of-counsel claims that are vague, conclusory, or insubstantial); *United States v. Taylor*, 139 F.3d 924, 932-33 (D.C. Cir. 1998) (stating that "some claims of ineffective assistance of counsel can be resolved on the basis of the trial transcripts and pleadings alone," such as where "the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion" or "the motion [fails] to allege facts or circumstances upon which the elements of constitutionally deficient performance might properly be found") (internal quotation marks and citation omitted); *United States v. Smith*, 172 F.3d 922, 1998 WL 939501, at *2 (D.C. Cir. Dec. 14, 1998) (upholding summary denial of § 2255 claims because the claims were conclusory and lacked "any factual predicate"); *Mitchell v. United States*, 841 F. Supp. 2d 322, 328 (D.D.C. 2012) ("district courts have the power to deny § 2255 motions on the grounds that they offer only bald legal conclusions with no supporting factual allegations"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (noting that although a defendant's *pro se* allegations must be liberally construed, a court is "not required to fashion [a defendant's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments").

[11] The government attempts to liberally construe and address all allegations noted by defendant in his *pro se* § 2255 Motion. To the extent the Court believes the government has failed to address any particular allegations, the government requests an additional opportunity to address and brief those arguments. If the Court decides that an evidentiary hearing is appropriate to allow defendant to further develop some of his allegations of ineffective assistance of counsel, it may be appropriate for counsel to be appointed in order to narrow the issues and streamline the hearing process.

16

conclusively refuted by the record. In other words, many of his allegations can be summarily denied because he fails to adequately allege deficiency. Moreover, defendant's allegations do not even come close to establishing prejudice, as required by *Strickland*. Contrary to defendant's claim, the record establishes that Mr. Zucker was an effective advocate who, together with the timing of the onset of the COVID-19 pandemic, ultimately obtained a *very* favorable result for defendant. Put simply, defendant lucked out. For all of these reasons, the Court should deny the defendant's § 2255 Motion.

## A. Defendant's Pretrial Allegations

In his § 2255 Motion, defendant alleges that Mr. Zucker was ineffective during the "pretrial" stages of his case. Specifically, defendant alleges Mr. Zucker was ineffective when he:

1. Failed to obtain a favorable 15-year plea deal for defendant;

2. Failed to conduct an adequate pretrial investigation; and,

3. Failed to inform defendant of the relevant evidence and likely consequences of going to trial versus accepting a 15-year plea.

The allegations involving defendant's wish for a 15-year plea are palpably incredible and must be rejected as such. *United States v. James*, 737 F. Supp. 2d 1, 8 (D.D.C. 2010) (citing *United States v. Geraldo,* 523 F.Supp.2d 14, 21 (D.D.C.2007)) (palpably incredible claims must be rejected as such). As noted in the record, Mr. Zucker did attempt to negotiate for a 15-year plea (and an even lower sentence). During several pretrial hearings, the government and Mr. Zucker both mentioned that the defense had been requesting a plea deal with a 10-year sentence. Also as noted in the record, the government was never willing to extend such a plea offer. Defendant does not argue that he was ever willing to accept the plea offers that were actually available to him. The government was never willing to cap its allocution at 15 years of incarceration, and the government

17

has never been willing to extend such a plea offer. A Court is not involved in the plea bargaining in any case, including defendant's.[12] Simply put, the option defendant now alleges he should have had was never on the table. To allege ineffective assistance of counsel when Mr. Zucker could not have done anything differently to obtain a 15-year plea is nonsensical.

Additionally, this Court sentenced defendant to 23 years of incarceration, which is less than the 27-year plea he acknowledges rejecting in his motion. Thus, defendant does not come close to establishing prejudice, as he cannot show that the government ever would have agreed to a 15-year sentence, nor can he show that the Court would have been willing to sentence defendant to a sentence of 15 years. This allegation must be denied summarily.

To the extent defendant claims Mr. Zucker guaranteed him an acquittal on Count 2, defendant's claim is vague and conclusory and fails to establish any prejudice. Defendant does not specify how his trial and/or sentence was affected by this purported deficiency. Defendant alleges no prejudice whatsoever – he does not even attempt to establish how Mr. Zucker's guarantee of an acquittal was detrimental to how defendant ultimately proceeded in his case. *If* defendant had accepted the government's 27-year plea instead of going to trial, he would have received a sentence lengthier than what was actually imposed in this case. The relief defendant appears to be seeking – a 15-year plea – was never an option. Thus, defendant does not meaningfully allege, and certainly does not establish, any prejudice as to this allegation. It should be denied summarily as vague and conclusory.

In terms of conducting pretrial investigation, the allegation is vague and conclusory. Defendant does not assert what Mr. Zucker should have done, what the evidence that a different

---

[12] Rule 11(c)(1) instructs that "[t]he court must not participate in [plea] discussions." *United States v. Davila*, 569 U.S. 597, 597 (2013).

pretrial investigation would have produced, or what effect it would have had on the outcome of the proceedings. Defendant concedes that he rejected a 27-year plea, and he acknowledges that he was ultimately sentenced to a lesser sentence of 23 years. He suffered no prejudice whatsoever by proceeding to trial with Mr. Zucker as his counsel. Defendant's pretrial allegation regarding investigation must be summarily denied as vague and conclusory, as this allegation does not come close to sufficiently alleging any deficiency or prejudice.

## B. Defendant's Trial Allegations

In his motion, defendant alleges that Mr. Zucker was ineffective at trial because he:

1. Failed to convey his trial strategy and inform defendant of defenses;

2. Failed to prepare for trial and research applicable law and discovery;

3. Failed to subpoena or call witnesses on defendant's behalf;

4. Failed to properly cross-examine the government witnesses, particularly O.S.; and

5. Failed to lodge proper objections.

Defendant's trial allegations are vague and conclusory. He does not assert and describe what Mr. Zucker's trial strategy should have been, what law and discovery Mr. Zucker should have focused on, what additional defense witnesses would have testified to, how government witnesses should have been cross-examined, or what objections should have been made. He does not set forth sufficient factual allegations, much less citations to the record or any sort of legal analysis, to establish any colorable claim that his trial counsel was ineffective at trial. The Court should therefore summarily deny these allegations as vague and conclusory.

To the extent the Court wishes to further address the allegations, the record clearly refutes defendant's trial allegations. The record shows that Mr. Zucker had a clear defense strategy. In his § 2255 motion, defendant acknowledges this defense strategy and admits that he was involved in

prostituting women who willingly worked on his behalf. In fact, in his § 2255 Motion, defendant now argues and wishes that more of his "employee" women (*i.e.*, prostitutes) testified on his behalf at trial. Def. § 2255 Motion at 22-23. In making this argument, he acknowledges the trial strategy and defense presented by Mr. Zucker.

In addition, the record establishes that Mr. Zucker was fully engaged during trial. Mr. Zucker engaged with the Court and the government extensively. Overall, Mr. Zucker conducted lengthy and effective cross-examinations, and he lodged *many* objections during the trial.[13] As related to the sole count of conviction in this case, Mr. Zucker cross-examined O.S. extensively. O.S. was cross-examined over the course of two days, and the cross-examination spanned more than 80 pages of trial transcript. *See* 2/28/2020 PM Tr. 140-76, 3/2/2020 Tr. 9-58. During Mr. Zucker's cross-examination, O.S. became emotionally distraught, and the Court had to break so she could collect herself. 3/2/2020 AM Tr. 13. O.S. was impeached repeatedly by Mr. Zucker during the cross-examination, and O.S. clearly and importantly admitted that defendant "never used violence or force to force [her] to commit prostitution acts." 3/2/2020 AM Tr. 11. This testimony was quite beneficial to defendant.

Defendant's trial allegations should be denied as vague and conclusory. He fails to allege what should have been done differently, and he fails to establish that he would have reached a different result, that is, an acquittal on all counts, at trial. His vague and conclusory assertions must be summarily denied. To the extent the Court wishes to further address the allegations, defendant's

---

[13] *See e.g., United States v. Islam*, 932 F.3d 957, 964 (D.C. Cir. 2019) ("The failure to raise a meritless objection is not deficient performance."); *United States v. Watson*, 717 F.3d 196, 198 (D.C. Cir. 2013) ("counsel does not perform deficiently by declining to pursue a losing argument"); *United States v. Kelly*, 552 F.3d 824, 831 (D.C. Cir. 2009) (counsel was not deficient because "counsel was not obliged to raise a meritless defense").

allegations about Mr. Zucker's failure to develop and convey a trial strategy, as well as his allegations regarding ineffective cross-examinations and failure to lodge objections, are refuted by the trial record.

### C. Defendant's Sentencing Allegations

In his § 2255 Motion, defendant alleges that Mr. Zucker:

1. Failed to review, discuss, and explain the Presentence Report (PSR) to defendant prior to sentencing; and,

2. Failed to raise and file objections to the PSR.

Defendant's presentence allegations are refuted by the record and are palpably incredible and should be rejected for that reason. *Pollard*, 959 F.2d at 1031. The sentencing in this case occurred more than two years after the jury returned its verdict. The delay was due to the COVID-19 pandemic, as well as many additional delays as the government decided how to handle the remaining charges against defendant. Ultimately, and to his major benefit, those remaining charges were dismissed, and the parties proceeded to sentencing in July 2022. Mr. Zucker filed a sentencing memorandum, as well as several supplements to that memorandum. *See* ECF Nos. 148, 149; *see also* Case No. 18-CR-357, ECF Nos. 105, 106, 107, 108. Prior to the sentencing hearing, the Court directly asked defendant if he had had enough time to discuss the sentencing and PSR with Mr. Zucker; Mr. Zucker, directly next to defendant, responded, "He's shaking his head yes . . . we've had sufficient time to talk." 7/15/2022 Tr. 4. Defendant directly acknowledged to this Court that he had discussed the presentencing materials with Mr. Zucker and that they were in fact ready to proceed to sentencing.

This Court then went on to conduct a lengthy sentencing hearing, during which Mr. Zucker made several objections to the PSR. Mr. Zucker objected to several facts described in the PSR, as

well as sentencing enhancements. This Court ultimately sided with Mr. Zucker on several issues; for example, the Court did *not* apply the vulnerable victim enhancement the government was advocating for. *Id.* at 12. After hearing extensive argument from Mr. Zucker as well as from the government, which requested a sentence of 30 years of incarceration, the Court sentenced defendant to 23 years of incarceration. ECF No. 155.

In addition to being refuted by the record, defendant does not meaningfully allege any prejudice related to the sentencing allegations. He has not even attempted to argue that had Mr. Zucker handled the sentencing differently, he would have received a sentence of less than 23 years of incarceration. Indeed, the sentence imposed was significantly less than the 27-year sentence that had been available to defendant pursuant to a plea offer.

With regard to O.S., the victim in the sole count of conviction, the Court noted during the sentencing hearing that "I've never seen a witness as hollowed out as she was. And that's the only way I can describe her. She was hollowed out. She had flat affect. She was -- couldn't answer simple questions. I mean, she was a shell of a human being." *Id.* 51. Defendant does not specify what Mr. Zucker could have done to change the Court's perception of O.S., and defendant cannot now show any prejudice. The Court should therefore deny the sentencing allegations on that basis.

D. **Defendant's Appellate Allegations**

Defendant alleges that Mr. Zucker was ineffective in his appellate representation because he:

1. Failed to communicate with defendant about his direct appeal;

2. Failed to inform defendant of issues he intended to raise on appeal;

3. Failed to provide defendant with the case file so defendant could review and participate in his own appeal; and

22

4.  Failed to raise additional meritorious issues on appeal.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014). Thus, to succeed in this claim, defendant must establish both that his appellate counsel was constitutionally deficient and that he suffered prejudice from appellate counsel's deficient representation.

With respect to deficiency, *Strickland*'s presumption in favor of reasonableness similarly applies to appellate counsel. As the Supreme Court has explained, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Indeed, "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). As Chief Justice Burger pointed out long ago, an appellate brief that "raise[s] every colorable issue runs the risk of burying good arguments." *Id*. at 753. Accordingly, "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Smith*, 528 U.S. at 288. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Even if a defendant makes the difficult showing that appellate counsel was objectively unreasonable, the defendant must also establish prejudice. In the appellate context, prejudice turns on whether the defendant would have won his appeal if not for appellate counsel's errors. *Smith*, 528 U.S. at 285 (2000). Thus, defendant must "show a reasonable probability that, but for his

counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." *Id.*

Defendant's appellate allegations are patently vague and conclusory. He does not allege a single fact, or set forth a whit of reasoning, in support of his claim that his appellate counsel was ineffective. Defendant does not even attempt to argue that he suffered any prejudice with regard to his appellate allegations against Mr. Zucker. Defendant does not point to any additional issues that he now believes should have been raised on appeal, nor can he establish that there were any meritorious issues that Mr. Zucker failed to raise. Thus, he cannot establish prejudice, and his allegations are vague and conclusory. The claim must be denied summarily on that basis.

## EVIDENTIARY HEARING

Defendant's ineffective assistance of counsel allegations are vague and conclusory, refuted by the lengthy trial record in this case, palpably incredible, or a combination thereof. With regard to at least several of his allegations, defendant appears to be arguing that he should have received a 15-year plea that he was never entitled to. To the extent that he alleges prejudice because he did not receive a 15-year plea, that was never an option. Thus, he cannot establish any prejudice to prevail on his motion.

Defendant's § 2255 motion should be summarily denied. Defendant is not entitled to an evidentiary hearing.[14] An evidentiary hearing is not necessary in a case like this one, where the record conclusively shows that the attorney was not deficient or that there was no prejudice, or where the allegations are vague and conclusory. *Sitzmann*, 893 F.3d at 832.

---

[14] If the Court disagrees with the government and determines that an evidentiary hearing is appropriate, the government does not oppose the appointment of counsel. If the Court does appoint counsel, the government requests the opportunity to respond to any supplemental filings.

## CONCLUSION

For the reasons herein, the Court should summarily deny defendant's *pro se* motion filed pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentences.

Respectfully submitted,

JEANINE PIRRO
United States Attorney

KACIE WESTON
Chief, Special Proceedings Division

THOMAS STUTSMAN
Deputy Chief, Special Proceedings Division

*/s/ Rachel Forman*
RACHEL FORMAN
Assistant United States Attorney
VA Bar No. 89169
Special Proceedings Division
601 D Street NW
Washington, D.C. 20530
(202) 252-7278
Rachel.forman2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused service of the foregoing to be made through the Court's ECF system on April 20, 2026. I further certify that I caused a copy of the foregoing to be posted for first-class delivery to Terrell Armstead through the U.S. mails on April 20, 2026. I addressed this mailing to the following address:

Terrell Armstead
Reg. No. 91040-007
USP Pollock
U.S. Penitentiary
P.O. Box 2099
Pollock, LA  71467

*/s/ Rachel Forman*
RACHEL FORMAN
Assistant United States Attorney

25